# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**     **2. PLEASE TYPE OR PRINT**     **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| BLACK LOVE RESISTS IN THE RUST by and through its Co-Directors Natasha Soto and Shaketa Redden and on behalf of its members; DORETHEA FRANKLIN; TANIQUA SIMMONS; DE'JON HALL; JOSEPH BONDS; CHARLES PALMER; SHIRLEY SARMIENTO; EBONY YELDON; and JANE DOE, individually and on behalf of a class of all others similarly situated;  Plaintiffs,  v.  CITY OF BUFFALO, NY; BYRON B. BROWN, Mayor of the City of Buffalo, in his individual and official capacities; BYRON C. LOCKWOOD, Commissioner of the Buffalo Police Department, in his individual and official capacities; DANIEL DERENDA, former Commissioner of the Buffalo Police Department, in his individual capacity; AARON YOUNG, KEVIN BRINKWORTH, PHILIP SERAFINI, ROBBIN THOMAS, UNKNOWN SUPERVISORY PERSONNEL 1-10, UNKNOWN OFFICERS 1-20, each officers of the Buffalo Police Department, in their individual capacities.  Defendants. | | |
| | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? ☐ Yes   ☐ No |

| Attorney(s) for Appellant(s): ☐ Plaintiff ☐ Defendant | Counsel's Name: Hodgson Russ LLP Hugh M. Russ Peter A. Sahasrabudhe Cheyenne N. Freely | Address: 140 Pearl Street Buffalo, New York 14202 | Telephone No.: (716) 856-4000 | Fax No.: | E-mail: hruss@hodgsonruss.com psahasra@hodgsonruss.com cfreely@hodgsonruss.com |
|---|---|---|---|---|---|
| **Attorney(s) for Appellee(s):** ☐ Plaintiff ☐ Defendant | Counsel's Name: Andrea Chinyere Ezie Claudia Wilner Matthew A. Parham Jordan Joachim | Address: see attached for full address/info | Telephone No.: | Fax No.: | E-mail: cezie@ccrjustice.org cewilner@gmail.com, wilner@nclej.org map298@gmail.com, mparham@wnylc.com jjoachim@cov.com |

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously?   ☐ Yes   ☐ No  If Yes, provide the following:  Case Name:  2d Cir. Docket No.:          Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

***ADDENDUM "A"*:  COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION;  (2) THE RESULT BELOW;  (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND  (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

***ADDENDUM "B"*:  COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

### PART A:  JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party          ☐ Diversity  ☐ Federal question      ☐ Other (specify): (U.S. not a party) _____ | ☐ Final Decision          ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b))  ☐ Interlocutory Decision Appealable As of Right    ☐ Other (specify): _____ |

## IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.

**FORM C** (Rev. October 2016)

**PART B:  DISTRICT  COURT DISPOSITION    (Check as many as apply)**

**1. Stage of Proceedings**

☐  Pre-trial
☐  During trial
☐  After trial

**2. Type of Judgment/Order Appealed**

☐  Default judgment
☐  Dismissal/FRCP 12(b)(1)
    lack of subject matter juris.
☐  Dismissal/FRCP 12(b)(6)
    failure to state a claim
☐  Dismissal/28 U.S.C. § 1915(e)(2)
    frivolous complaint
☐  Dismissal/28 U.S.C. § 1915(e)(2)
    other dismissal

☐  Dismissal/other jurisdiction
☐  Dismissal/merit
☐  Judgment / Decision of the Court
☐  Summary judgment
☐  Declaratory judgment
☐  Jury verdict
☐  Judgment NOV
☐  Directed verdict
☐  Other (specify): Class Certification

**3.  Relief**

☐  Damages:

___ Sought: $ _____
___ Granted: $ _____
___ Denied: $ _____

☐  Injunctions:

☐  Preliminary
☐  Permanent
☐  Denied

---

**PART C:  NATURE OF SUIT   (Check as many as apply)**

**1.  Federal Statutes**

☐  Antitrust
☐  Bankruptcy
☐  Banks/Banking
☐  Civil Rights
☐  Commerce
☐  Energy
☐  Commodities
☐  Other (specify): _____

☐  Communications
☐  Consumer Protection
☐  Copyright / Patent
☐  Trademark
☐  Election
☐  Soc. Security
☐  Environmental

☐  Freedom of Information Act
☐  Immigration
☐  Labor
☐  OSHA
☐  Securities
☐  Tax

**2.  Torts**

☐  Admiralty/
   Maritime
☐  Assault /
   Defamation
☐  FELA
☐  Products Liability
☐  Other (Specify):

**3.  Contracts**

☐  Admiralty/
   Maritime
☐  Arbitration
☐  Commercial
☐  Employment
☐  Insurance
☐  Negotiable
   Instruments
☐  Other Specify

**4.  Prisoner Petitions**

☐  Civil Rights
☐  Habeas Corpus
☐  Mandamus
☐  Parole
☐  Vacate Sentence
☐  Other

**5.  Other**

☐  Hague Int'l Child Custody Conv.
☐  Forfeiture/Penalty
☐  Real Property
☐  Treaty (specify): _____
☐  Other (specify): _____

**6.  General**

☐  Arbitration
☐  Attorney Disqualification
☐  Class Action
☐  Counsel Fees
☐  Shareholder Derivative
☐  Transfer

**7.** Will appeal raise constitutional issue(s)?
☐  Yes          ☐  No

Will appeal raise a matter of first impression?

☐  Yes          ☐  No

---

1.  Is any matter relative to this appeal still pending below?   ☐ Yes, specify: _____   ☐ No

2.  To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)   Arises from substantially the same case or controversy as this appeal?          ☐ Yes          ☐ No

    (B)   Involves an issue that is substantially similar or related to an issue in this appeal?          ☐ Yes          ☐ No

If yes, state whether  ☐ "A," or  ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|

| Name of Appellant: |
|---|

| Date: | Signature of Counsel of Record: |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C**  (Rev. December 2016)

Attorney(s) for Appellee(s):

| Name | Address | Phone | Email |
|---|---|---|---|
| Andrea Chinyere Ezie | Center for Constitutional Rights<br>666 Broadway Floor 7<br>New York, NY 10012 | 212-614-6467 | cezie@ccrjustice.org |
| Claudia Wilner | National Center for Law and Economic Justice<br>50 Broadway<br>Suite 1500<br>New York, NY 10004-3821 | 212-633-6967 | cewilner@gmail.com,<br>wilner@nclej.org |
| Matthew A. Parham | Western New York Law Center, Inc.<br>37 Franklin Street<br>2nd Floor, Suite 210<br>Buffalo, NY 14203 | 716-855-0203 | map298@gmail.com,<br>mparham@wnylc.com |
| Jordan Joachim | Covington & Burling, LLP (NY)<br>620 Eighth Avenue<br>Suite 4029<br>New York, NY 10018 | 212 841-1000 | jjoachim@cov.com |

## Addendum A

### Part 1 and 2

This is a Section 1983 action stemming from what Plaintiffs allege to be discriminatory traffic enforcement against Black and Latino drivers in the City of Buffalo. Plaintiffs-Respondents make four claims against the Defendants-Appellants: (1) violation of the Fourth Amendment; (2) violation of the equal protection clause of the Fourteenth Amendment; (3) violation of the due process clause of the Fourteenth Amendment and (4) violation of Title VI of the Civil Rights Act of 1964.

On May 29, 2024, Plaintiffs-Respondents filed a Motion for Class Certification seeking to certify three proposed classes: (1) the Checkpoint Class; (2) the Tinted Windows Class; and (3) the Traffic Enforcement Class. The Checkpoint and Tinted Windows Classes demand damages pursuant to Fed. R. Civ. P. 23(b)(3) (the "Damages Classes"). The Traffic Enforcement Class seeks injunctive relief. On April 22, 2025, the District Court issued an order certifying the Damages Classes and denying certification of the Traffic Enforcement Class. It found, in relevant part, that the Damages Classes satisfied the commonality and predominance requirements of Rules 23(a)(2) and 23(b)(3), respectively.

This appeal seeks to overturn the District Court's certification of the Damages Classes, as Defendants-Appellants contend that the classes failed to satisfy commonality and predominance.

UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

BLACK LOVE RESISTS IN THE RUST,           )
DORETHEA FRANKLIN, TANIQUA                )
SIMMONS, DE'JON HALL, JANE DOE,           )
Individually and on behalf of a class of  )
Others similarly situated, SHIRLEY        )
SARMIENTO, EBONY YELDON,                  )
CHARLES PALMER, SHAKETA                   )
REDDEN, and JOSEPH BONDS,                 )
                                          )
            Plaintiffs,                   )
                                          )
        v.                                )
                                          )        Case No. 1:18-cv-00719
CITY OF BUFFALO, N.Y., BYRON B.           )
BROWN, Mayor of the City of Buffalo, in his )
individual and official capacities, BYRON )
C. LOCKWOOD, Commissioner of the          )
Buffalo Police Department, in his individual )
capacity, DANIEL DERENDA, former          )
Commissioner of the Buffalo Police        )
Department, in his individual capacity,   )
AARON YOUNG, officer of the Buffalo       )
Police Department, in his individual capacity, )
KEVIN BRINKWORTH, PHILIP SERAFINI,        )
officer of the Buffalo Police Department, in )
his individual capacity, ROBBIN THOMAS,   )
officer of the Buffalo Police Department, in )
his individual capacity, UNKNOWN          )
SUPERVISORY PERSONNEL 1-10, officers      )
of the Buffalo Police Department, in their )
individual capacities, UNKNOWN OFFICERS   )
1-20, officers of the Buffalo Police Department, )
in their individual capacities, and ERIE  )
COUNTY DISTRICT ATTORNEY'S                )
OFFICE,                                   )
                                          )
            Defendants.                   )
                                          )

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO CERTIFY CLASS
### (Doc. 202)

Plaintiffs Shaketa Redden, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Joseph Bonds, Charles Palmer, Shirley Sarmiento, Ebony Yeldon, and Jasmine Evans bring this action against the City of Buffalo, New York (the "City"); City of Buffalo Mayor Byron B. Brown; Buffalo Police Department ("BPD") Commissioner Byron C. Lockwood; former BPD Commissioner Daniel Derenda; Aaron Young; Kevin Brinkworth; Philip Serafini; Robbin Thomas; and 1-10 unknown supervisory officers and 1-20 unknown officers (collectively, "Defendants") on behalf of themselves and other Black and Latino motorists in the City.

Plaintiffs claim that the City has unlawfully targeted Black and Latino motorists through the use of administrative traffic checkpoints (the "Checkpoints"). Even after the Checkpoints were discontinued, they assert City police officers, in accordance with an implicit quota system, continue to systematically target Black and Latino motorists for traffic enforcement, fines, and penalties. Plaintiffs seek to certify three distinct classes: (1) a "Checkpoint Class";[1] (2) a "Tinted Windows Class";[2] and (3) a "Traffic Enforcement Class."[3] (Doc. 211 at 3.)

The Checkpoint Class, represented by Plaintiffs Bonds, Evans, and Redden, asserts claims for: (1) a violation of the Fourth Amendment; (2) a violation of the Fourteenth Amendment Due Process Clause; (3) a violation of the Fourteenth

---

[1] Plaintiffs define the Checkpoint Class as: "All individuals who received a ticket or were arrested at a BPD 'traffic safety' vehicle checkpoint on or after June 28, 2015." (Doc. 211 at 12.)

[2] Plaintiffs define the Tinted Windows Class as: "All Black and/or Latino individuals who received multiple tinted windows tickets from the BPD in a single traffic stop on or after June 28, 2015." Id.

[3] Plaintiffs define the Traffic Enforcement Class as: "All Black and/or Latino individuals who have been or will be subjected to traffic stops, traffic tickets, and 'traffic safety' vehicle checkpoints by the BPD." Id.

Amendment Equal Protection Clause; and (4) a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d).

The Tinted Windows and Traffic Enforcement Classes assert claims for: (1) a violation of the Fourteenth Amendment Equal Protection Clause; (2) a violation of the Fourteenth Amendment Due Process Clause; and (3) a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d). Plaintiffs Franklin, Palmer, and Yeldon are the proposed class representatives for the Tinted Windows Class. All individual Plaintiffs in the suit will serve as class representatives for the Traffic Enforcement Class.

Plaintiffs seek a declaration that Defendants have violated Plaintiffs' constitutional rights and a class-wide injunction mandating significant changes in Defendants' policies, practices, and customs, as well as an award of compensatory and punitive damages, attorney's fees, and costs.

Plaintiffs seek class certification under Fed. R. Civ. P. 23(a) and 23(b)(3) for the Checkpoint and Tinted Windows Classes, and class certification under Fed. R. Civ. P. 23(a) and 23(b)(2) for the Traffic Enforcement Class. In their supplemental submission in support of class certification, they advised that "the Checkpoint and Tinted Windows Classes will not seek to recover damages for consequential harms, such as emotional distress and lost wages[.]" (Doc. 241 at 1) (emphasis in original). For these classes, Plaintiffs intend to pursue "(1) general damages in an amount determined by the jury;[] (2) punitive damages in an amount determined by the jury; (3) direct economic damages, consisting of the fines and fees that class members paid in connection with tickets and impounds; and (4) equitable disgorgement of the same." *Id.* at 2.

Plaintiffs are represented by Claudia Wilner, Esq., Andrea Chinyere Ezie, Esq., Andrew J. Timmick, Esq., Anjana Malhotra, Esq., Baher Azmy, Esq., Christine Adrienne Nelson, Esq., Edward Krugman, Esq., Joseph A. Kelemen, Esq., Matthew Alan Parham, Esq., Philip A. Irwin, Esq., Jordan Scott Joachim, Esq. Defendants are represented by Peter A. Sahasrabudhe, Esq., Robert Emmet Quinn, Esq., Cheyenne Nicole Freely, Esq., and Hugh M. Russ, III, Esq.

I.     **Plaintiffs' Factual Allegations.**

The following facts are derived from Plaintiffs' Amended Complaint and the parties' briefing.

A.     **The Strike Force Checkpoints.**

In 2012, Mayor Brown and former Police Commissioner Derenda created "a mobile unit that targeted supposed crime hotspots to reduce guns, drugs, and gang activity[]" (the "Strike Force"). (Doc. 63 at 10, ¶ 35.) The Strike Force operated through the Checkpoints and required any vehicle approaching to be stopped, regardless of whether BPD Officers had "probable cause or reasonable, articulable suspicion that the driver ha[d] violated any criminal or traffic laws." *Id.* at 11, 15, ¶¶ 36, 61. Plaintiffs assert that the Checkpoints were often established on one-way streets and were not marked in any way to alert approaching motorists. BPD officers or their supervisors determined the Checkpoint locations.

Based upon statistical analyses, Plaintiffs allege that a neighborhood's racial composition was a significant factor in determining Checkpoint locations because a majority of the Checkpoints were established in overwhelmingly Black or Latino neighborhoods. BPD Checkpoint data, through June 30, 2017, allegedly reveals that "BPD conducted nearly 40% of all Checkpoints . . . in just three of Buffalo's 77 Census tracts. In each of those three tracts, the Black or Latino population exceeded 86%." *Id.* at 18, ¶ 83. BPD also considered the number of reported crimes in a particular area in determining Checkpoint locations. Plaintiffs contend, however, that crime statistics played only a minor role in designating a Checkpoint, and that the Checkpoint locations were unrelated to traffic safety concerns.

BPD Officers conducted Checkpoints in stages. During the first stage, vehicles passing through the Checkpoint were subject to automatic license plate readings, with BPD Officers checking for "valid licenses, registration, inspection stickers, seatbelts, and anything suspicious in plain view." *Id.* at 11, ¶ 41. At this stage, BPD Officers asked motorists questions such as "Where are you going?" and "Where are you coming from?" *Id.* at ¶ 42 (internal quotation marks omitted). Depending on the outcome of the first

stage, BPD Officers directed some motorists to pull over for a second stage, during which
motorists were subjected to longer detentions and questioning.

Plaintiffs contend that Strike Force and Housing Unit Officers "conducted the
Checkpoints in a uniform manner in accordance with" BPD's policy, (Doc. 211 at 14),
which failed to constrain officer discretion, because it was allegedly devoid of "written
rules, standards, or guidelines" regarding when officers should direct motorists to
secondary stops. (Doc. 63 at 12, ¶ 45.) Plaintiffs assert BPD leadership "do[es] not gather
and review statistical information" regarding Checkpoints that would reveal whether they
are conducted pursuant to racially discriminatory practices. *Id.* at 38, ¶ 201.

BPD Officers conducting Checkpoints were instructed to complete a Checkpoint
Directive, although they did not always comply with this requirement, and some
Checkpoints were undocumented as evidenced by ticketing data that reveals citations on
dates with no Checkpoint Directives. Plaintiffs contend that these undocumented
Checkpoints were operated "as a common practice over a period of years . . . and with the
knowledge and approval of senior officers." *Id.* at 14, ¶ 59.

The Strike Force partnered with the BPD Housing Unit to implement Checkpoints
near housing complexes operated by the Buffalo Municipal Housing Authority
("BMHA"). These joint Checkpoints were allegedly conducted "to suppress blatant
drug/weapons activity and to show a high level of enforcement and visibility." *Id.* at 17,
¶ 74 (internal quotation marks omitted). Plaintiffs allege the Housing Unit focused on
patrolling three BMHA properties, all of which have a significant majority of either
Black or Latino residents. When concerns arose that Checkpoints were being conducted
in a racially discriminatory manner in 2015, BPD "began to conduct Checkpoints in
white neighborhoods that had never previously experienced Checkpoints . . . in an effort
to demonstrate to the public that it did not conduct Checkpoints in a discriminatory
manner." *Id.* at 36, ¶ 184.

The Strike Force and BPD Housing Unit conducted Checkpoints through January
2018. The Strike Force was dissolved in February 2018, and Strike Force officers were
transferred to the Division of Traffic Enforcement. Plaintiffs allege that, although

Checkpoints are no longer conducted, there is "no formal policy ending the Checkpoint program" and BPD leadership "could direct BPD Officers to resume operating Checkpoints at any time." *Id.* at 38, ¶ 199.

### B.    The BPD's Ticketing Practices.

In certain circumstances, BPD Officers have the discretion to issue multiple traffic citations for a tinted windows violation on a single vehicle. Plaintiffs contend that "non-White motorists are much more likely to be ticketed by the BPD than are White motorists[,]" (Doc. 63 at 24, ¶ 110), and that a motorist's race is a strong predictor of whether BPD Officers exercise their discretion to issue a single tinted-window citation, or multiple tinted-window citations during a stop. Plaintiffs argue BPD leadership "do[es] not gather and review statistical information about traffic stops outside Checkpoints[]" to determine racially discriminatory traffic law enforcement. *Id.* at 38, ¶ 202.

Plaintiffs allege that BPD's aggressive enforcement of traffic laws is a product of the City's "custom, policy, or practice of generating revenue through traffic enforcement[.]" *Id.* at 25, ¶ 120. Although historically New York State received traffic enforcement proceeds, in 2014, the Buffalo Common Council and New York State legislature established the Buffalo Traffic Violations Agency ("BTVA"), an agency responsible for adjudicating non-misdemeanor traffic violations. Creation of the BTVA allowed the City to retain the revenues generated from traffic law enforcement.

Plaintiffs allege there was a marked increase in the number of citations issued after the BTVA was created. As a result of increased revenues, the City appropriated more money for the BPD, and in turn, the BPD increased spending on overtime for Strike Force officers which substantially increased their pay. The City allegedly has continued this practice, notwithstanding the cessation of Checkpoints and the dissolution of the Strike Force.

6

## II.   Legal Conclusions and Analysis.

### A.   Whether Plaintiffs' Requested Injunctive Relief Would Merely Require Defendants to Obey the Law.

In their Amended Complaint, on behalf of the Traffic Enforcement Class, Plaintiffs seek to preliminarily and permanently enjoin Defendants:

    (a)    From continuing the policy, practice, and custom of conducting vehicle Checkpoints for the purpose of general crime control;

    (b)    From continuing the policy, practice, and custom of conducting traffic stops and vehicle Checkpoints in a manner that targets Buffalo residents on the basis of their race and ethnicity;

    (c)    From continuing the policy, practice, and custom of conducting traffic stops and vehicle Checkpoints for improper pecuniary purposes;

    (d)    From continuing to enforce and assess any of the 13 BTVA fees enumerated in § 175-1 of Buffalo Municipal Code Chapter 175[;]

    (e)    To institute and implement policies and programs with respect to training, supervision, and discipline that will eliminate the policy, pattern, practice, and custom of:

        i.    conducting vehicle Checkpoints for the purpose of general crime control;

        ii.    enforcing traffic laws in a manner that targets Buffalo residents on the basis of their race and ethnicity or that reflects an improper pecuniary motive[;]

    (f)    To institute and implement appropriate and adequate supervision and discipline of BPD officers and personnel who conduct vehicle Checkpoints;

    (g)    To implement appropriate measures to ensure that BPD officers and personnel document all traffic stops and vehicle Checkpoints in sufficient detail as to permit supervisory review for compliance with the Fourth and Fourteenth Amendments and Title VI of the Civil Rights Act; [and]

(h) To implement appropriate measures to ensure that
documentation of all traffic stops and vehicle Checkpoints is
retained in a single, up-to-date computerized database[.]

*Id.* at 73-74.

Defendants challenge Plaintiffs' proposed injunctive relief as requesting an "obey the law" injunction. Plaintiffs counter that they seek injunctive relief in the form of "a single, class-wide order directing the City to modify its policies and procedures to prevent the BPD from engaging in racially motivated traffic stops and ticketing and retaining jurisdiction until such time as the City can establish compliance[.]" (Doc. 241 at 4.)

"Under Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law." *Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, 60 F.4th 16, 22 (2d Cir. 2023) (alteration and internal quotation marks omitted) (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001)). It must instead "'state its terms specifically' and 'describe in reasonable detail . . . the act or acts restrained or required[.]'" *Poor v. Amazon.com Servs. LLC*, 104 F.4th 433, 441 n.8 (2d Cir. 2024) (quoting Fed. R. Civ. P. 65(d)).

Although Plaintiffs provide examples of remedies that they may request,[4] and which may narrow and further define the scope of the requested injunctive relief, their Amended Complaint cannot be amended by their briefing. *See Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810 F. App'x 17, 20 (2d Cir. 2020) ("[A] complaint may not be amended by . . . an opposition brief wholly unsupported by factual allegations in the complaint.") (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)); *In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 541 (S.D.N.Y. 2021) ("[A] plaintiff may not raise new facts in opposing dismissal and ask the [c]ourt to rely

---

[4] Plaintiffs' examples of appropriate relief include: "[c]essation of BPD policies and practices contributing to racially biased traffic enforcement[]"; "[r]eforms to supervision and officer performance evaluation criteria"; "[r]eforms to the Internal Affairs Department"; and "[a] mechanism overseen by a court-appointed monitor[.]" (Doc. 241 at 11.)

on those facts in determining whether he or she has stated a claim.") (quoting *Wright*, 152
F.3d at 178).

To the extent Plaintiffs' injunctive relief requests "obey the law" relief, it is not
available under Rule 65(d). *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d
114, 144 (2d Cir. 2011) (alteration adopted) (finding that injunctions that "impose[d] on
defendants an obligation to act 'in full conformity with applicable laws pertaining to
firearms,' and to 'adopt appropriate prophylactic measures to prevent violation' of those
laws[]" failed under Rule 65(d)); *Wakefield v. Scott*, 2021 WL 10342467, at *4 (D. Vt.
June 24, 2021) (noting plaintiff's claims for injunctive relief failed "because her request
for a command to 'direct defendants from violating the law' did not comply with Federal
Rule of Civil Procedure 65(d) and Second Circuit precedent requiring that an injunction
be more specific than a simple command that the defendant obey the law[]") (citation
omitted)).

**B.    Whether the Traffic Enforcement Class has Standing.**

Plaintiffs seek injunctive relief for the Traffic Enforcement Class consisting of
"[a]ll Black and/or Latino individuals who have been or will be subjected to traffic stops,
traffic tickets, and 'traffic safety' vehicle checkpoints by the BPD." (Doc. 211 at 12.) The
Traffic Enforcement Class is virtually limitless because it does not specify a time period
for class membership or specify a future duration for the proposed injunction. Plaintiffs
concede that BPD leadership "do[es] not gather and review statistical information"
regarding traffic stops outside Checkpoints. (Doc. 63 at 38, ¶ 201.)

Although Plaintiffs are correct that the inclusion of future members does not
defeat class certification,[5] for purposes of standing, Plaintiffs' proposed relief requires the
court to forecast the likelihood of future constitutional violations.

---

[5] *See, e.g.*, *Barrows v. Becerra*, 24 F.4th 116, 130 n.54 (2d Cir. 2022) ("The final class certified
by the district court includes[ a]ll Medicare beneficiaries who, on or after January 1, 2009 . . . .");
*Sykes v. Mel S. Harris & Assocs.*, 780 F.3d 70, 79 (2d Cir. 2015) (affirming district court's
certification of a class that comprised "all persons who have been or will be sued by the Mel
Harris defendants as counsel for the Leucadia defendants"); *Marisol A. v. Giuliani*, 126 F.3d
372, 378 (2d Cir. 1997) (involving certified class comprised of "children who are or will be in

Defendants argue that, because the City ceased using Checkpoints as of January 2018 and disbanded the Strike Force, the Traffic Enforcement Class lacks standing to pursue injunctive relief as any future injury is purely speculative. Plaintiffs respond that Defendants have not disavowed the Checkpoints, which could resume at any time, and that the potential for their revival poses a non-speculative threat of constitutional violations.

In a class action, "[s]tanding is satisfied so long as at least one named plaintiff can demonstrate the requisite injury." *Hyland v. Navient Corp.*, 48 F.4th 110, 117-18 (2d Cir. 2022) (citing *Dep't of Com. v. New York*, 588 U.S. 752, 766 (2019)); *see also Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) ("[W]hen there are multiple plaintiffs[,] [a]t least one plaintiff must have standing[.]"). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61).

When seeking injunctive relief, "[a plaintiff] must carry the burden of establishing that 'he [or she] has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). In meeting his or her burden, a plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he [or she] . . . will be injured in the future." *Id.* (internal quotation marks omitted) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)). A showing of an "abstract injury is not enough; rather, '[t]he injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

---

the custody of the New York City Administration for Children's Services") (internal quotation marks omitted).

At the pleading stage, the burden to establish standing is minimal. As a case progresses, and certainly at class certification, the evidence necessary to satisfy standing increases. *See Carter v. HealthPort Techs. LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ("[T]he showing that must be made in order to withstand a dismissal for lack of standing increases as the suit proceeds."). The Supreme Court has explained:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

*Lujan*, 504 U.S. at 561 (alteration adopted) (internal citations and quotation marks omitted).

Although Plaintiffs assert there is "no formal policy ending the Checkpoint program[,]" (Doc. 63 at 38, ¶ 199), they cite no evidence that BPD has taken steps to resume them. Several individual Plaintiffs in the Traffic Enforcement Class attest to having received multiple traffic citations unrelated to Checkpoints. Plaintiff Bonds declared "[i]n 2019, I received so many tickets while my car was not in use and parked at my BMHA residence that I eventually had to sell my car because I could not afford to pay for the tickets or to keep my car in a private garage to avoid getting more tickets." (Doc. 202-1 at 2-3, ¶ 12.) Plaintiff Yeldon declared that:

> In December 2017[,] I was driving my taxi in a predominantly white neighborhood on the South Side of Buffalo, when BPD Officer Michael Healy pulled me over and issued me two tickets for tinted windows and one ticket for driving without insurance (even though the car belonged to my employer, and I had insurance at the time). In the summer of 2022 BPD ticketed my car while it was parked in the BMHA-owned parking lot of the Ferry Grider Apartments . . . . When I went to court, the ticket was dismissed.

(Doc. 202-9 at 1-2, ¶¶ 6-7.) All of these incidents refer to past harm.

In *Floyd v. City of New York*, 283 F.R.D. 153, 169-70 (S.D.N.Y. 2012), the court found a plaintiff seeking an injunction mandating changes to New York City's stop and frisk program had standing because (1) the plaintiff had been stopped and frisked four separate times; (2) the plaintiff's "future injury does not depend on his being arrested for unlawful conduct and so he cannot avoid that injury by following the law"; and (3) "the frequency of alleged injuries inflicted by the practices at issue here creates a likelihood of future injury[.]"[6] The challenged governmental policy at issue in *Floyd* was ongoing at the time of the lawsuit.

Unlike in *Floyd*, the Checkpoints at issue in this case ceased in 2018, the Strike Force disbanded, and none of the Plaintiffs' attestations pertain to Checkpoints that took place in the past two years. Instead, Plaintiffs rely on the speculative possibility that, at some uncertain date in the future, the Checkpoints may resume. This will not suffice for standing for injunctive relief.

To the extent Plaintiffs rely on evidence that non-white motorists are statistically more likely to receive a traffic infraction ticket than white motorists, and to receive multiple tickets if cited, *see* Doc. 63 at 24, ¶ 110, this evidence also reflects past alleged harms. Although Plaintiffs contend the "frequency of alleged injuries . . . creates a likelihood of future injury[,]" *Floyd*, 283 F.R.D. at 170, it does not rise to a "real and immediate threat of future injury[.]" *Shain*, 356 F.3d at 215; *see also Lyons*, 461 U.S. at 111 ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a

---

[6] The district court had previously "declar[ed] the Street Crime Unit's ('SCU') practice and/or custom of suspicionless stops and frisks to be unconstitutional." *Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 75 F. Supp. 2d 154, 158 (S.D.N.Y. 1999). The court found the individual plaintiffs had established standing because: (1) "there is [a] difference in the number of alleged constitutional violations resulting from the challenged policies"; (2) the victims "claim they have been victimized by [the] unconstitutional practices repeatedly"; and (3) "there is no chain of contingencies making the threat of future harm speculative. . . . [P]laintiffs do not have to break the law to be exposed to the alleged constitutional violations." *Id.* at 161.

federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional.").[7]

Because no Plaintiff has established that he or she is "immediately in danger of sustaining some direct injury as the result of the challenged official conduct[,]" *Shain*, 356 F.3d at 215 (internal quotation marks omitted) (quoting *Lyons*, 461 U.S. at 101-02), Plaintiffs have failed to establish that the members of the Traffic Enforcement Class have standing. For this reason, the Traffic Enforcement Class's request for class certification DENIED. *See MacNamara v. City of New York*, 275 F.R.D. 125, 132, 140 (S.D.N.Y. 2011) (finding individuals arrested by the NYPD for their protests during the 2004 Republican National Convention did not have standing because they failed to establish the likelihood of a future encounter with the police that would result in unconstitutional arrests and detentions).

C.    **Whether the Remaining Proposed Classes Satisfy Fed. R. Civ. P. 23.**

Plaintiffs seek damages on behalf of the Checkpoint Class and the Tinted Windows Class and request class certification to establish the alleged constitutional violations that give rise to their damages claims. "Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) ("*Wal-Mart*"). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Under Rule 23(a), the party seeking certification must establish:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

---

[7] Part of the standing inquiry is to ensure that the party seeking injunctive relief faces a threatened injury separate and distinct from the public at large. *Israel v. United Nations*, 2025 WL 641566, at *2 (S.D.N.Y. Feb. 26, 2025) ("A litigant raising only a generally available grievance . . . and seeking relief that no more directly and tangibly benefits him than it does the public at large . . . does not state an Article III case or controversy.") (internal quotation marks omitted) (ellipses in original) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013)).

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

*Wal-Mart*, 564 U.S. at 345 (internal quotation marks omitted). These requirements are referred to as "numerosity, commonality, typicality, and adequacy." *Davis v. City of New York*, 296 F.R.D. 158, 163 (S.D.N.Y. 2013).

In determining whether class certification is appropriate, "[i]t is proper for a district court to accept the complaint allegations as true[,]" *Johnson v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2020 WL 2558160, at *1 (W.D.N.Y. May 19, 2020) (alteration adopted) (internal quotation marks omitted) (quoting *Waggoner v. Barclays PLC*, 875 F.3d 79, 85 n.5 (2d Cir. 2017)), and it may "consider material outside the pleadings . . . , including affidavits." *Id.* (internal quotation marks omitted) (quoting *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)).

While a district court must make factual determinations to ascertain whether the requirements of Fed. R. Civ. P. 23 have been met, "in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement[.]" *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

### 1.    Whether the Remaining Proposed Classes Meet the Numerosity Requirement.

A proposed class must be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible[,]" *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), it means joinder would be "expensive, time-consuming, and logistically unfeasible." *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 290 (2d Cir. 1992). In making this determination, "[c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux*, 987 F.2d at 935. Instead, district courts consider factors beyond "mere numbers . . . includ[ing] judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial

14

resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id.* at 936 (citation omitted).

Plaintiffs allege that the Checkpoint Class contains "at least 3,000 members[,]" and the Tinted Windows Class contains more than 6,000 members. (Doc. 211 at 33.) The total number of individuals in this case is thus estimated to be close to ten thousand. Defendants do not contest numerosity, and the court finds this requirement has been met.[8]

### 2. Whether the Remaining Proposed Classes Meet the Commonality Requirement.

Fed. R. Civ. P. 23(a)(2) requires that there be common questions of law or fact to the class. "[C]laims for relief need not be identical for them to be common." *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (internal quotation marks omitted). Instead, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Wal-Mart*, 564 U.S. at 349-50 (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 (1982)). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* at 350. "What matters to class certification . . . is . . . the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original) (internal quotation marks omitted).

"Plaintiffs seeking class certification based on challenges to a defendant's policies must show that the policies caused every class member's injury." *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1263 (9th Cir. 2024) (citing *Wal-Mart*, 564 U.S. at 353, 355); *see V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554, 573, 575 (N.D.N.Y. 2017) (finding commonality was met where plaintiffs alleged the defendants

---

[8] *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("A group [of hundreds of defendants] would make the joinder of individual members as named defendants impracticable. Because numerosity is presumed at a level of 40 members, whether viewed as 700 tax-collecting jurisdictions or 300 assessing jurisdictions, the number of defendants vastly exceeds this threshold.") (citation omitted); *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 290 (2d Cir. 1992) (finding numerosity satisfied for a class of "nearly 850 claimants").

"ha[d] applied a common course of unlawful conduct to the members of the class"). To
determine whether a proposed class meets the commonality requirement, "sometimes it
may be necessary for the court to probe behind the pleadings[,]" *Falcon*, 457 U.S. at 160,
which entails "some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351.

Defendants argue that none of the proposed classes satisfy the commonality
requirement because the determination of general and individualized damages, even with
Plaintiffs' narrowing of the relief sought, is ill-suited for class action litigation.
Commonality, however, may be satisfied by common questions of law and fact and need
not encompass every issue in the case. *See id.* at 359.

Here, commonality for the Checkpoint Class arises out of allegedly uniform and
unconstitutional BPD practices conducted at discrete and identifiable Checkpoints raising
a legal challenge common to all class members and all Defendants.[9] *See Floyd*, 283
F.R.D. at 173-74 (finding claims based on NYPD's stop-and-frisk policy met the
commonality requirement because they "generate[d] from a centralized source and
NYPD employs a hierarchical supervisory structure to effect and reinforce its
department-wide policies[]"); *Stinson v. City of New York*, 282 F.R.D. 360, 370
(S.D.N.Y. 2012) (finding commonality where plaintiffs allege "a specific policy
promulgated by [d]efendants, namely, that [d]efendants have established a practice by
which NYPD officers issue summonses without probable cause in order to meet a
summons quota[]"). Common questions of law include whether the initial stop was
lawful and, if so, whether the secondary stop was lawful as well. *See Plaintiffs #1-21 v.
Cnty. of Suffolk*, 2021 WL 1255011, at *14 (E.D.N.Y. Mar. 12, 2021) ("*Cnty. of Suffolk*")

---

[9] This type of commonality is particularly well-suited to class certification. *See, e.g., Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011) ("[C]ommonality in cases alleging racial profiling is satisfied when 'the injuries complained of by the named plaintiffs allegedly resulted from the same unconstitutional practice or policy that allegedly injured or will injure the proposed class members.'") (citing *Daniels v. City of New York*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001)).

("The putative class members' and named representatives' claims need not arise out of 'the same course of events' based on identical circumstances leading up to the stop, but rather the unconstitutional stops are due to the institutional practices that plaintiffs allege allowed for discriminatory policing.").

Common questions of fact include where and how the Checkpoints were located, who authorized them, the motive for establishing Checkpoints and whether it was the product of racial profiling, whether the officers' discretion was circumscribed and, if so, whether it was namely tailored to achieve a legitimate law enforcement objective, how the officers chose motorists for secondary inspections, how long detentions lasted at each stop and whether they were unreasonably prolonged, and how officers determined whether a motorist would be ticketed. Because Plaintiffs may seek nominal damages for the alleged constitutional violations, there is commonality for that type of relief as well. *See Luxenberg v. Vt. Dep't of Disabilities, Aging & Indep. Living*, 2024 WL 4894383, at *3 (D. Vt. Nov. 26, 2024) (stating "nominal damages are available when a constitutional violation is established[]") (citing *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021); *Farrar v. Hobby*, 506 U.S. 103, 113 (1992) ("A plaintiff may demand payment for nominal damages no less than he [or she] may demand payment for millions of dollars in compensatory damages.")).

Defendants are correct that individualized claims for economic damages based on the factual basis for each ticket issued require individualized inquiries and Plaintiffs have yet to "offer 'some glue holding the alleged reasons for all those decisions together.'" *Black Lives Matter L.A.*, 113 F.4th at 1263 (citing *Wal-Mart*, 564 U.S. at 352). The possibility of individualized damages, however, does not defeat commonality because the constitutional injury to all class members is the same insofar as it involves an unconstitutional detention. Individual fines and fees are the collateral consequences of that injury. Defendants' challenge regarding individualized damages is thus more properly considered in the context of predominance.

With regard to the Tinted Windows Class, Plaintiffs allege BPD discriminated against Black and Latino motorists and ticketed them to raise revenues which, in turn,

17

were paid in overtime to BPD Officers. Plaintiffs' statistical evidence allegedly reveals common trends documenting this practice despite a change in BPD leadership.[10] They allege that BPD leadership has been made aware of the issue, and has been unwilling or unable to remedy it. In addition, Plaintiffs allege that discriminatory practices emanated from uniform policies at the highest level of the City and the BPD. *See Cnty. of Suffolk,* 2021 WL 1255011, at *14 (finding commonality where plaintiffs "show[ed] that the types of policies, practices, and decisions at issue were made at high levels of the department[]"). These are common questions of fact which will benefit from class treatment.

Defendants nonetheless raise a legitimate concern regarding individualized damages inquiries. Plaintiffs have yet to propose a common methodology for awarding damages based on tinted windows violations. They, however, do not challenge the initial lawfulness of the tinted-window stops, only the racially motivated ticketing practices that resulted therefrom. In this respect, there remain common issues of law and fact such as whether Black and Latino motorists received a statistically greater number of tinted-window tickets than white motorists, whether a policy circumscribed officer discretion, and whether BPD was aware of racial discrepancies and nonetheless allowed them to persist. The court therefore addresses the issue of individualized damages inquiries in the context of predominance rather than commonality.

Because there are common questions of law and fact for both the Checkpoint Class and the Tinted Windows Class, Plaintiffs have established commonality.

### 3.    Whether the Remaining Proposed Classes Meet the Typicality Requirement.

Rule 23 requires that class representatives' claims or defenses must be "typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "This requirement 'is

---

[10] *See Morrow v. Washington,* 277 F.R.D. 172, 192 (E.D. Tex. 2011) (finding plaintiffs established commonality through statistical evidence that "there was a specific, city-wide policy in Tenaha of targeting racial and ethnic minorities for traffic stops and then illegally detaining and/or arresting them or conducting illegal searches and seizures of their property[]").

satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37 (citation omitted).

Plaintiffs claim a violation of the Fourth Amendment under *City of Indianapolis v. Edmond*, 531 U.S. 32, 47 (2000), which holds that "[w]hen law enforcement authorities pursue primarily general crime control purposes at [vehicle] checkpoints . . . , stops can only be justified by some quantum of individualized suspicion." Plaintiffs Bonds, Evans, and Redden are the putative class representatives for the Checkpoint Class and "are Black individuals who were stopped pursuant to the Checkpoint Policy, and all received tickets at those Checkpoints." (Doc. 211 at 39.)[11] All claims "arise[] from the same course of events[.]" *Brown*, 609 F.3d at 475; *see also Floyd*, 283 F.R.D. at 175 (finding "NYPD's centralized program of stops and frisks" constitutes "the same course of conduct"). Although the dates, times, and locations of the stops may be different, "minor variations in the fact patterns underlying individual claims" do not defeat typicality.[12] *Yeend v.*

---

[11] The lack of Latino Class representatives does not preclude a finding of typicality. *See, e.g., Floyd v. City of New York*, 283 F.R.D. 153, 175 (S.D.N.Y. 2016) (finding typicality despite defendants' argument that "because none of the named representatives are Latino, they cannot represent the alleged Latino class members who make race-based claims[]") (internal quotation marks omitted).

[12] *See, e.g., Ligon v. City of New York*, 288 F.R.D. 72, 82 (S.D.N.Y. 2013) (finding that where "plaintiffs and the putative class members were allegedly subjected to the same unlawful conduct by NYPD officers under the auspices of a single NYPD program: unjustified *Terry* stops, not supported by reasonable suspicion . . . the experiences of the named plaintiffs are identical to those of the proposed class, [and] the typicality requirement is . . . met"); *Daniels*, 198 F.R.D. at 418 (finding claims arising from suspicionless stop and frisks satisfied the typicality requirement because they challenged "the same unlawful conduct" and because "the named plaintiffs and the class members will allege that these stops were made in violation of the Fourth Amendment because the officers lacked reasonable suspicion to make a stop").

*Akima Glob. Servs., LLC*, 2025 WL 959968, at *12 (N.D.N.Y. Mar. 31, 2025) (quoting *Robidoux*, 987 F.2d at 936-37). Plaintiffs have therefore established typicality for the Checkpoint Class.

Plaintiffs Franklin, Palmer, and Yeldon seek to serve as the class representatives for the Tinted Windows Class and are "Black individuals who received multiple tinted-window tickets from BPD officers at a single traffic stop while driving in the City of Buffalo." (Doc. 211 at 39.) Their claims arise from BPD's allegedly unconstitutional practice of issuing multiple citations to Black and Latino motorists for tinted windows as a source of traffic enforcement revenue. This suffices to satisfy typicality because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant[s'] liability." *Brown*, 609 F.3d at 475. *See also Cnty. of Suffolk*, 2021 WL 1255011, at *14 (finding that different circumstances prompting a traffic stop do not defeat typicality because plaintiffs all claim that "the unconstitutional stops are due to the institutional practices that plaintiffs allege allowed for discriminatory policing[]").

Defendants argue that the Checkpoint Class and Tinted Windows Class lack typicality because some, but not all, Plaintiffs' individualized damages claims are barred by *Townes v. City of New York*. In *Townes*, the Second Circuit refused to adopt a "fruit of the poisonous tree" doctrine in § 1983 cases. 176 F.3d 138, 145 (2d Cir. 1999). This means a plaintiff seeking damages in a § 1983 action cannot argue that, because a detention or seizure was unconstitutional, all traffic enforcement that flowed from it was impermissible and is compensable by damages as the fruit of the unlawful activity. Defendants further contend that "[n]o matter how characterized, Plaintiffs' request for . . . damages . . . require individual determinations." (Doc. 245 at 8.) In so far as individualized damages are concerned, the court agrees. The court, however, treats this issue as a challenge to predominance. It remains true that the class representatives' claims are "typical of claims . . . of the class." Fed. R. Civ. P. 23(a)(3).

4.     **Whether the Remaining Proposed Classes Meet the Adequacy
       Requirement.**

Rule 23(a)'s adequacy requirement instructs that class representatives must fairly
and adequately protect the interests of the class. "Two factors generally inform [whether
class representatives satisfy the Rule 23(a)(4) requirement]: '(1) absence of conflict and
(2) assurance of vigorous prosecution.'" *Irvin v. Harris*, 944 F.3d 63, 71 (2d Cir. 2019)
(internal quotation marks and alteration omitted) (quoting *Robinson v. Metro-N.
Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001), *abrogated on other grounds by
Wal-Mart*, 564 U.S. 338 (2011)); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253,
268 (2d Cir. 2006) ("Adequacy is twofold: the proposed class representative must have
an interest in vigorously pursuing the claims of the class, and must have no interests
antagonistic to the interests of other class members."). This inquiry focuses on
"uncovering 'conflicts of interest between named parties and the class they seek to
represent.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)
("*Flag Telecom*") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Defendants argue that Plaintiffs fail to establish adequacy because "there is a
divergence between class representatives who are barred from damages and class
representatives and members who may be entitled to damages," purportedly rendering
"the class representatives . . . inadequate." (Doc. 220 at 36.) Plaintiffs, however, have
amended their requests and no longer seek individualized damages for emotional distress
and lost wages. *See* Doc. 241 at 1. For their remaining individual damages claims,
adequacy exists because there is no evidence the class representatives' claims conflict
with those of other classes or within the class. The fact that one class member may
receive greater damages than another is not dispositive provided those awards are not in
conflict. *See Allen v. Dairy Farmers of Am., Inc.*, 2012 WL 5844871, at *7 (D. Vt. Nov.
19, 2012) (finding that, although dairy farmers asserted individualized harms as a result
of defendants' alleged monopoly, adequacy was established).

A conflict must be "fundamental" to violate Rule 23(a)(4). *See id.*; *Pickett v. Iowa
Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) (quoting 7A Charles Alan Wright

& Arthur R. Miller, Federal Practice & Procedure § 1768 (2d ed. 1986) ("It is axiomatic that a putative representative cannot adequately protect the class if his [or her] interests are antagonistic to or in conflict with the objectives of those he [or she] purports to represent.")). In instances where a fundamental conflict does exist, the court may cure the conflict by dividing the class into separate "homogeneous subclasses . . . with separate representation to eliminate conflicting interests of counsel." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999); *see also In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249-50 (2d Cir. 2011) (same); *Allen v. Dairy Farmers of Am., Inc.*, 279 F.R.D. 257, 274 (D. Vt. 2011) (finding a fundamental conflict where "the interests of the class clearly diverge, and the proposed class representatives cannot adequately represent all members of the class[]"). Defendants fail to identify a conflict of this magnitude.

Plaintiffs are represented by three nonprofit civil rights organizations that frequently litigate civil rights cases and a law firm with extensive litigation experience. Defendants do not question the experience and adequacy of Plaintiffs' legal counsel, which are "qualified, experienced[,] and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

The proposed class representatives are similarly situated, if not identical, to the class members they seek to represent, have no antagonistic interests, and thus will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Because the proposed class representatives' and class members' interests align, and because the proposed class representatives do not have "any conflict of interest that would prevent them from serving as a class representative[,]" (Doc. 211 at 41), Plaintiffs have established adequacy.

### 5.     Whether the Remaining Proposed Classes are Ascertainable.

Plaintiffs assert that, because their purported class definitions "identify specific groups of people, subjected to specific acts, within a defined time period[,]" *id.* at 42, the proposed class definitions are based on objective criteria and are therefore ascertainable. The Second Circuit has "recognized an implied requirement of ascertainability in Rule 23

of the Federal Rules of Civil Procedure." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks omitted).

A proposed class "must be 'sufficiently definite' and 'defined by objective criteria' *so that* 'it is administratively feasible for the court to determine whether a particular individual is a member[.]'" *In re Petrobras Sec.*, 862 F.3d 250, 269 n.20 (2d Cir. 2017) (emphasis in original) (quoting *Brecher*, 806 F.3d at 24-25). The Second Circuit has, however, rejected "administrative feasibility as an absolute standard[,]" *id.* 267, and "only preclude[s] certification if a proposed class definition is indeterminate in some fundamental way." *Id.* at 269. "[T]he use of objective criteria cannot alone determine ascertainability when those criteria, taken together, do not establish the definite boundaries of a readily identifiable class." *Id.* at 266 (footnote and internal quotation marks omitted).

Defendants contend the Checkpoint and Tinted Windows Classes are not ascertainable because only members issued invalid tickets are appropriate class members and because Plaintiffs allegedly arbitrarily selected the Classes' determining characteristics. Defendants, however, cannot redefine Plaintiffs' proposed classes.

Plaintiffs define the Checkpoint Class as: "All individuals who received a ticket or were arrested at a BPD 'traffic safety' vehicle checkpoint on or after June 28, 2015." (Doc. 211 at 12.) This class therefore only includes individuals who were ticketed or arrested when passing through a Checkpoint. By narrowing the Checkpoint Class in this manner, Plaintiffs have identified a specific group of drivers determinable by BPD records and other public records who belong to the purported class.

The Tinted Windows Class includes "[a]ll Black and/or Latino individuals who received multiple tinted windows tickets from the BPD in a single traffic stop on or after June 28, 2015." *Id.* Although the proposed definition for the Tinted Windows Class is considerably broader and encompasses a ten-year time period, because the class is limited to Black and Latino drivers who received a ticket for tinted windows, the class remains ascertainable. Plaintiffs have obtained electronic records detailing data of traffic citations and arrests by BPD that "includes the name and driver license number of the person

stopped, the location of the stop or arrest, the specific violation(s) alleged, and the identity of the issuing or arresting officer[.]" *Id.* at 54-55.

The Checkpoint and Tinted Windows Classes may be defined with "objective criteria that are administratively feasible[.]" *Petrobras*, 862 F.3d at 266 (internal quotation marks omitted). Plaintiffs have established ascertainability. *See Godson v. Eltman, Eltman & Cooper, P.C.*, 328 F.R.D. 35, 47 (W.D.N.Y. 2018) (finding that "[s]ince [p]laintiff may easily identify the members of the Settlement Class by reviewing [d]efendants' own records pertaining to the timeframe circumscribed by the class definition, the implied requirement of ascertainability is satisfied[]") (citing *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 176 (S.D.N.Y. 2014)).

### D. Whether the Remaining Proposed Classes Meet the Rule 23(b)(3) Requirements.

In addition to Rule 23(a)'s requirements, where damages are sought, Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as "predominance" and "superiority."

### 1. Whether the Remaining Proposed Classes Meet the Predominance Requirement.

Plaintiffs contend that they will "establish that [a] City policy, custom, or deliberate indifference caused their injuries[,]"and because they challenge BPD policies and practices, "the evidence in support . . . [will allegedly] not vary from class member to class member" for either the Checkpoint Class or the Tinted Windows Class. (Doc. 211 at 44.) Rule 23(b)(3)'s predominance requirement "is satisfied if: (1) resolution of any material 'legal or factual questions . . . can be achieved through generalized proof,' and (2) 'these [common] issues are more substantial than the issues subject only to individualized proof.'" *Petrobras*, 862 F.3d at 270 (alterations in original) (quoting *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016)).

> An individual [legal or factual] question is one where members of a proposed class will need to present evidence that varies from member to

member, while a common question is one where the same evidence will
suffice for each member to make a prima facie showing or the issue is
susceptible to generalized class-wide proof.

*Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

"Even if Rule 23(a)'s commonality requirement" is met, "the predominance
criterion is far more demanding[,]" *Amchem Prods.*, 521 U.S. at 623-24, "and is not
satisfied simply by showing that the class claims are framed by the common harm
suffered by potential plaintiffs." *Petrobras*, 862 F.3d at 270 (citing *Amchem Prods.*, 521
U.S. at 623-24). "Rule 23(b)(3), however, does *not* require a plaintiff seeking class
certification to prove that each element of her claim is susceptible to classwide proof."
*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (alterations
adopted) (emphasis in original) (citation and internal quotation marks omitted).

Defendants assert that predominance may not be found because each traffic stop
requires an individualized determination as to its lawfulness. Plaintiffs counter that no
individualized determinations are necessary because all Checkpoint stops were
unconstitutional and all Tinted Windows class members' stops were lawful but resulted
in racially motivated ticketing. Neither Class thus requires an individualized
determination of liability. Defendants respond that questions of individualized damages
nonetheless predominate. To the extent Plaintiffs seek general, nominal, and punitive
damages, Defendants' concern is unfounded. *See Sykes v. Mel S. Harris & Assocs., LLC*,
780 F.3d 70, 88 (2d Cir. 2015) (finding inquiries related to individualized damages tied to
"the return of money extracted from [plaintiffs] as a result of . . . fraudulent judgments"
were "not sufficient grounds on which to conclude that the district court's determination
that individualized damages issues will not predominate in this case was an abuse of
discretion[]"). "[P]laintiffs can—subject to qualified immunity—generally recover
damages that are proximately caused by any Fourth Amendment violation." *Cnty. of L.A.,
Cal. v. Mendez*, 581 U.S. 420, 430-31 (2017). The Second Circuit has recognized that
"loss of liberty is a distinct form of damage for which 'general damages' may be
recovered." *Betances v. Fischer*, 2022 WL 765963, at *10 (S.D.N.Y. Mar. 14, 2022)

(citing *Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir. 2004)). Punitive damages may also be awarded on a class-wide basis. *See Brown*, 609 F.3d at 479 (noting the defendants in a putative class action "[we]re subject to claims for damages, including in some cases punitive damages[]").

To the extent Plaintiffs seek individualized economic damages for fines and fees, Defendants' argument gains some traction. Although it may be possible, and Plaintiffs suggest it will be probable, to establish a formula for damages, they have not yet proposed one. It would neither be efficient nor effective to certify a class to address common constitutional claims and then engage in a member-by-member determination of the recoverable damages for fees and fines. *Townes* instructs that the court cannot merely treat those economic injuries as fruit of the poisonous tree and instruct a jury to award damages on that basis.

Because Plaintiffs' requests for individual economic damages for fines and fees will require a determination of whether those economic consequences are justified in each class member's case, common questions of law and fact will not predominate for the damages portion of this case. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (finding district court improperly certified class where "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class[]"). A court may, however, address this issue by decertifying the class to pursue such damages. *See Betances*, 2022 WL 765963, at *16 ("The class can be decertified after [trial] for purposes of pursuing individualized damages issues."). In the alternative, Plaintiffs may amend their request for individualized relief and propose a formula for general damages. In light of these options, denial of class certification on predominance grounds is not warranted at this time.

For the reasons stated above, although a close question, Plaintiffs have established predominance for the Checkpoint Class and the Tinted Windows Class.

2.    **Whether the Remaining Proposed Classes Meet the Superiority Requirement.**

Class actions are deemed superior when "they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (citing *Amchem Prods.*, 521 U.S. at 617).

> Rule 23(b)(3) identifies four factors for a court to weigh when determining whether a proposed class action satisfies . . . superiority[:] . . . (A) the class members' interests in individually controlling the actions; (B) the extent and nature of any ongoing, related litigation; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Wentworth v. Metrodata Servs., Inc.*, 2020 WL 13527954, at *8 (W.D.N.Y. Nov. 9, 2020) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 23(b)(3)) (citing *Sykes* 780 F.3d at 82).

"Manageability is the most important consideration," *id.* (citing *Sykes*, 780 F.3d at 82), and courts must be mindful of "the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *Id.* (internal quotation marks omitted). The need for judicial economy and the financial resources of the potential class members buttress this conclusion. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.").

At this juncture, there is no apparent interest by putative class members to individually litigate their cases, nor would it be economically feasible to do so. There is also apparently no ongoing related litigation. It is both necessary and appropriate to locate the class action in this forum where the constitutional violations allegedly took place so that witnesses and parties may readily attend the trial. According to Plaintiffs, the facts and circumstances foreclose separate lawsuits because many of the proposed

27

class members "have limited income and lack access to counsel for individual litigation." (Doc. 211 at 54.)

Based on the foregoing, the court finds class certification a superior means of adjudicating this case for the Checkpoint and Tinted Windows Classes.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to certify class is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

Dated this _22nd_ day of April, 2025.

Christina Reiss, District Judge
United States District Court

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BLACK LOVE RESISTS IN THE RUST by and
through its Co-Directors Natasha Soto and Shaketa
Redden and on behalf of its members; DORETHEA
FRANKLIN; TANIQUA SIMMONS; DE'JON HALL;
JOSEPH BONDS; CHARLES PALMER; SHIRLEY
SARMIENTO; EBONY YELDON; and JANE DOE,
individually and on behalf of a class of all others
similarly situated;

                                  Plaintiffs,

                 v.                                          Civil No.: 1:18-cv-00719-CCR

CITY OF BUFFALO, NY; BYRON B. BROWN,
Mayor of the City of Buffalo, in his individual and
official capacities; BYRON C. LOCKWOOD,
Commissioner of the Buffalo Police Department, in his
individual and official capacities; DANIEL DERENDA,
former Commissioner of the Buffalo Police Department,
in his individual capacity; AARON YOUNG, KEVIN
BRINKWORTH, PHILIP SERAFINI, ROBBIN
THOMAS, UNKNOWN SUPERVISORY
PERSONNEL 1-10, UNKNOWN OFFICERS 1-20,
each officers of the Buffalo Police Department, in their
individual capacities.

                                  Defendants.

_____

## NOTICE OF APPEAL

            Notice is hereby given that Defendants the City of Buffalo, NY, Byron B. Brown,

Byron C. Lockwood, Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin

Thomas, Unknown Supervisory Personnel 1-10, and Unknown Officers 1-20 (collectively the

"City"), pursuant to Federal Rule of Civil Procedure 23(f), have been granted leave to appeal to

the United States Court of Appeals for the Second Circuit the Order dated and filed on

September 15, 2025 (ECF No. 261), which granted, in part, and denied, in part, the motion for

class certification by Plaintiffs Black Love Resists in the Rust by and Through its Co-Directors

Natasha Soto and Shaketa Redden and on Behalf of its Members; Dorethea Franklin; Taniqua

Simmons; De'Jon Hall; Joseph Bonds; Charles Palmer; Shirley Sarmiento; Ebony Yeldon; and

Jane Doe, individually and on behalf of a class of all others similarly situated made on May 29,

2024, 2025 (ECF Nos. 202-212), and from each and every part thereof.  The Second Circuit's

Order granting leave to appeal is attached herein as **Exhibit A**. The Second Circuit Docket

Number for this appeal is 25-2216.


Dated:  September 17, 2025
        Buffalo, New York


                              **HODGSON RUSS LLP**
                              *Attorneys for Defendants City of Buffalo, NY, Byron
                              B. Brown, Byron C. Lockwood, Daniel Derenda,
                              Aaron Young, Kevin Brinkworth, Philip Serafini,
                              Robbin Thomas, Unknown Supervisory Personnel
                              1-10, and Unknown Officers 1-20*


                              By:  /s/ Hugh M. Russ III
                                   Hugh M. Russ III, Esq.
                                   Peter Sahasrabudhe, Esq.
                                   Cheyenne N. Freely, Esq.
                              The Guaranty Building
                              140 Pearl Street, Suite 100
                              Buffalo, NY  14202-4040
                              716.856.4000
                              *hruss@hodgsonruss.com*
                              *psahasra@hodgsonruss.com*
                              *cfreely@hodgsonruss.com*

# Exhibit A

W.D.N.Y.
18-cv-719
Reiss, J.

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

———————

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of September, two thousand twenty-five.

Present:

José A. Cabranes,
Steven J. Menashi,
    *Circuit Judges*,
Lewis J. Liman,
    *Judge*.*

———————————————————————————

City of Buffalo, N.Y., et al.,

       *Petitioners*,

    v.                                    25-1191

Black Love Resists in the Rust, by and through its Co-Directors Natasha Soto and Shaketa Redden and on behalf of its members, Dorethea Franklin et al.,

       *Respondents*.

———————————————————————————

Pursuant to Federal Rule of Civil Procedure 23(f), Petitioners request leave to appeal the order of the district court granting class certification. Petitioners also move for leave to file a reply. Upon due consideration, it is hereby ORDERED that the motion for leave to file a reply and the Rule 23(f) petition are GRANTED. *See Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd*., 262 F.3d 134, 139-40 (2d Cir. 2001).

                    FOR THE COURT:
                    Catherine O'Hagan Wolfe, Clerk of Court

---

* Judge Lewis J. Liman of the United States District Court for the Southern District of New York, sitting by designation.

**Query    Reports    Utilities    Help    Log Out**

APPEAL, MEDIATION, Vermont

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Buffalo)
## CIVIL DOCKET FOR CASE #: 1:18-cv-00719-CCR

Black Love Resists et al v. City of Buffalo et al
Assigned to: Chief District Judge Christina Clair Reiss
Cause: 42:1983 Civil Rights Act

Date Filed: 06/28/2018
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

### Plaintiff

**Black Love Resists in the Rust**
*by and through its Co-Directors Natasha*
*Soto and Shaketa Redden and on behalf of*
*its members*
*agent of*
Just Resisting

represented by **Andrea Chinyere Ezie**
Center for Constitutional Rights
666 Broadway Floor 7
New York, NY 10012
212 614-6467
Fax: 212 614-6467
Email: cezie@ccrjustice.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew J. Timmick**
Covington & Burling, LLP (NY)
New York Times Building
620 8th Ave.
New York, NY 10018
212-841-1000
Email: atimmick@cov.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Baher Azmy**
Center for Constitutional Rights
666 Broadway Floor 7
New York, NY 10012
212-614-6427
Fax: 212-614-6499
Email: bazmy@ccrjustice.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christine Adrienne Nelson**
Covington & Burling, LLP (NY)
New York Times Building
620 8th Ave.
New York, NY 10018
212-841-1264

Email: cnelson@cov.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Claudia Wilner**
National Center for Law and Economic
Justice
50 Broadway
Suite 1500
New York, NY 10004-3821
212-633-6967
Fax: 212-633-6371
Email: wilner@nclej.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph A. Kelemen**
Western New York Law Center, Inc.
37 Franklin Street
2nd Floor, Suite 210
Buffalo, NY 14203
816-855-0203, Ext. 2
Fax: 716-855-0203
Email: jkelemen@wnylc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Alan Parham**
Western New York Law Center, Inc.
37 Franklin Street
2nd Floor, Suite 210
Buffalo, NY 14203
716-855-0203
Fax: 716-270-4005
Email: mparham@wnylc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip A. Irwin**
Covington & Burling, LLP (NY)
New York Times Building
620 8th Ave.
New York, NY 10018
212-841-1000
Email: pirwin@cov.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anjana Malhotra**
National Center for Law and Economic
Justice
275 7th Avenue

Suite 1506
New York, NY 10001
917-583-5849
Email: malhotra@nclej.org
*TERMINATED: 08/06/2025*

**Britney Renee Wilson**
National Center for Law and Economic
Justice
275 7th Avenue
Suite 1506
New York, NY 10001
212-633-6967
Email: wilson@nclej.org
*TERMINATED: 03/19/2021*

**Darius Charney**
Center for Constitutional Rights
666 Broadway Floor 7
New York, NY 10012
212 614-6475
Fax: 212-614-6499
Email: dcharney@ccrjustice.org
*TERMINATED: 09/16/2021*

**Edward Krugman**
Law Office of Edward P. Krugman
247 West 12th Street
Suite Ph-A
New York, NY 10014-1992
917-834-4663
Fax: 517-487-0827
Email: epk@epklaw.net
*TERMINATED: 09/04/2025*

**Jordan Scott Joachim**
Covington & Burling, LLP (NY)
New York Times Building
620 8th Ave.
New York, NY 10018
212 841-1000
Fax: 212 841-1010
Email: jjoachim@cov.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Keisha Alecia Williams**
Neighborhood Legal Services, Inc.
237 Main Street
Suite 400
Buffalo, NY 14203
716-847-0655
Email: kwilliams@nls.org
*TERMINATED: 11/02/2023*

**Marc Cohan**
National Center for Law and Economic
Justice
275 Seventh Avenue
Suite 1506
New York, NY 10001
212-633-6967
Fax: 212-633-6371
Email: cohan@nclej.org
*TERMINATED: 03/19/2021*

**Theresa Lau**
National Center for Law and Economic
Justice
275 7th Avenue
Suite 1506
New York, NY 10001
*TERMINATED: 07/25/2018*

**Travis W. England**
National Center for Law and Economic
Justice
275 7th Avenue
Suite 1506
New York, NY 10001
212-633-6967
Email: england@nclej.org
*TERMINATED: 03/24/2020*

**Plaintiff**

**Dorethea Franklin**                    represented by   **Andrea Chinyere Ezie**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew J. Timmick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Baher Azmy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christine Adrienne Nelson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Claudia Wilner**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph A. Kelemen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Alan Parham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip A. Irwin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anjana Malhotra**
(See above for address)
*TERMINATED: 08/06/2025*

**Britney Renee Wilson**
(See above for address)
*TERMINATED: 03/19/2021*

**Darius Charney**
(See above for address)
*TERMINATED: 09/16/2021*

**Edward Krugman**
(See above for address)
*TERMINATED: 06/24/2025*

**Jordan Scott Joachim**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keisha Alecia Williams**
(See above for address)
*TERMINATED: 11/02/2023*

**Marc Cohan**
(See above for address)
*TERMINATED: 03/19/2021*

**Theresa Lau**
(See above for address)
*TERMINATED: 07/25/2018*

**Travis W. England**

(See above for address)
*TERMINATED: 03/24/2020*

**Plaintiff**

**Taniqua Simmons**                    represented by  **Andrea Chinyere Ezie**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew J. Timmick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Baher Azmy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christine Adrienne Nelson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Claudia Wilner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph A. Kelemen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Alan Parham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip A. Irwin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anjana Malhotra**
(See above for address)
*TERMINATED: 08/06/2025*

**Britney Renee Wilson**
(See above for address)
*TERMINATED: 03/19/2021*

**Darius Charney**
(See above for address)
*TERMINATED: 09/16/2021*

**Edward Krugman**
(See above for address)
*TERMINATED: 06/24/2025*

**Jordan Scott Joachim**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keisha Alecia Williams**
(See above for address)
*TERMINATED: 11/02/2023*

**Marc Cohan**
(See above for address)
*TERMINATED: 03/19/2021*

**Theresa Lau**
(See above for address)
*TERMINATED: 07/25/2018*

**Travis W. England**
(See above for address)
*TERMINATED: 03/24/2020*

**Plaintiff**

**De'Jon Hall**                    represented by    **Andrea Chinyere Ezie**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew J. Timmick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Baher Azmy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christine Adrienne Nelson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Claudia Wilner**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph A. Kelemen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Alan Parham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip A. Irwin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anjana Malhotra**
(See above for address)
*TERMINATED: 08/06/2025*

**Britney Renee Wilson**
(See above for address)
*TERMINATED: 03/19/2021*

**Darius Charney**
(See above for address)
*TERMINATED: 09/16/2021*

**Edward Krugman**
(See above for address)
*TERMINATED: 06/24/2025*

**Jordan Scott Joachim**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keisha Alecia Williams**
(See above for address)
*TERMINATED: 11/02/2023*

**Marc Cohan**
(See above for address)
*TERMINATED: 03/19/2021*

**Theresa Lau**
(See above for address)
*TERMINATED: 07/25/2018*

**Travis W. England**
(See above for address)
*TERMINATED: 03/24/2020*

**Plaintiff**

**Jane Doe**                                           represented by   **Andrea Chinyere Ezie**
*individually and on behalf of a class of*                              (See above for address)
*others similarly situated*                                            *LEAD ATTORNEY*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Andrew J. Timmick**
                                                                       (See above for address)
                                                                       *LEAD ATTORNEY*
                                                                       *PRO HAC VICE*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Baher Azmy**
                                                                       (See above for address)
                                                                       *LEAD ATTORNEY*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Christine Adrienne Nelson**
                                                                       (See above for address)
                                                                       *LEAD ATTORNEY*
                                                                       *PRO HAC VICE*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Claudia Wilner**
                                                                       (See above for address)
                                                                       *LEAD ATTORNEY*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Joseph A. Kelemen**
                                                                       (See above for address)
                                                                       *LEAD ATTORNEY*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Matthew Alan Parham**
                                                                       (See above for address)
                                                                       *LEAD ATTORNEY*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Philip A. Irwin**
                                                                       (See above for address)
                                                                       *LEAD ATTORNEY*
                                                                       *PRO HAC VICE*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Anjana Malhotra**
                                                                       (See above for address)
                                                                       *TERMINATED: 08/06/2025*

                                                                       **Britney Renee Wilson**
                                                                       (See above for address)
                                                                       *TERMINATED: 03/19/2021*

                                                                       **Darius Charney**
                                                                       (See above for address)

*TERMINATED: 09/16/2021*

**Edward Krugman**
(See above for address)
*TERMINATED: 06/24/2025*

**Jordan Scott Joachim**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keisha Alecia Williams**
(See above for address)
*TERMINATED: 11/02/2023*

**Marc Cohan**
(See above for address)
*TERMINATED: 03/19/2021*

**Theresa Lau**
(See above for address)
*TERMINATED: 07/25/2018*

**Travis W. England**
(See above for address)
*TERMINATED: 03/24/2020*

**Plaintiff**

**Shirley Sarmiento**                    represented by    **Andrew J. Timmick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christine Adrienne Nelson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Claudia Wilner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Alan Parham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip A. Irwin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anjana Malhotra**
(See above for address)
*TERMINATED: 08/06/2025*

**Britney Renee Wilson**
(See above for address)
*TERMINATED: 03/19/2021*

**Darius Charney**
(See above for address)
*TERMINATED: 09/16/2021*

**Edward Krugman**
(See above for address)
*TERMINATED: 06/24/2025*

**Jordan Scott Joachim**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keisha Alecia Williams**
(See above for address)
*TERMINATED: 11/02/2023*

**Andrea Chinyere Ezie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ebony Yeldon**                    represented by    **Andrew J. Timmick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Claudia Wilner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Alan Parham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip A. Irwin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anjana Malhotra**
(See above for address)

*TERMINATED: 08/06/2025*

**Britney Renee Wilson**
(See above for address)
*TERMINATED: 03/19/2021*

**Darius Charney**
(See above for address)
*TERMINATED: 09/16/2021*

**Edward Krugman**
(See above for address)
*TERMINATED: 06/24/2025*

**Jordan Scott Joachim**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrea Chinyere Ezie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles Palmer**                    represented by    **Andrew J. Timmick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christine Adrienne Nelson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Claudia Wilner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Alan Parham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip A. Irwin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anjana Malhotra**
(See above for address)
*TERMINATED: 08/06/2025*

**Britney Renee Wilson**
(See above for address)
*TERMINATED: 03/19/2021*

**Darius Charney**
(See above for address)
*TERMINATED: 09/16/2021*

**Edward Krugman**
(See above for address)
*TERMINATED: 06/24/2025*

**Jordan Scott Joachim**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keisha Alecia Williams**
(See above for address)
*TERMINATED: 11/02/2023*

**Andrea Chinyere Ezie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Shaketa Redden**                    represented by    **Andrew J. Timmick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christine Adrienne Nelson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Claudia Wilner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Alan Parham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip A. Irwin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anjana Malhotra**
(See above for address)
*TERMINATED: 08/06/2025*

**Britney Renee Wilson**
(See above for address)
*TERMINATED: 03/19/2021*

**Darius Charney**
(See above for address)
*TERMINATED: 09/16/2021*

**Edward Krugman**
(See above for address)
*TERMINATED: 06/24/2025*

**Jordan Scott Joachim**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keisha Alecia Williams**
(See above for address)
*TERMINATED: 11/02/2023*

**Andrea Chinyere Ezie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joseph Bonds**                    represented by    **Andrew J. Timmick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christine Adrienne Nelson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Claudia Wilner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Alan Parham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip A. Irwin**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anjana Malhotra**
(See above for address)
*TERMINATED: 08/06/2025*

**Britney Renee Wilson**
(See above for address)
*TERMINATED: 03/19/2021*

**Darius Charney**
(See above for address)
*TERMINATED: 09/16/2021*

**Edward Krugman**
(See above for address)
*TERMINATED: 06/24/2025*

**Jordan Scott Joachim**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Keisha Alecia Williams**
(See above for address)
*TERMINATED: 11/02/2023*

**Andrea Chinyere Ezie**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City of Buffalo, N.Y.**                     represented by   **Peter A. Sahasrabudhe**
Hodgson Russ LLP
The Guaranty Building
140 Pearl Street
Suite 100
Buffalo, NY 14202
716-848-1508
Email: psahasra@hodgsonruss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Emmet Quinn**
Buffalo Public Schools
65 Niagara Square
Ste 713 City Hall
Buffalo, NY 14202
716-816-3102
Email: rquinn@city-buffalo.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Cheyenne Nicole Freely**
Hodgson Russ, LLP
The Guaranty Building
140 Pearl Street
Suite 100
Buffalo, NY 14202
716-848-1609
Email: cfreely@hodgsonruss.com
*ATTORNEY TO BE NOTICED*

**David A. Short**
Sequor Law
650 Massachusetts Avenue N.W.
Suite 600
Washington, DC 20001
305-372-8282
Email: dshort@sequorlaw.com
*TERMINATED: 06/15/2022*

**Hugh M. Russ , III**
Hodgson Russ LLP
The Guaranty Building
140 Pearl Street
Suite 100
Buffalo, NY 14202
(716) 856-4000
Fax: 716-849-0349
Email: hruss@hodgsonruss.com
*ATTORNEY TO BE NOTICED*

**Katelyn A. Climaco**
Manatt, Phelps & Phillips, LLP
2049 Century Park East
Suite 1700
Los Angeles, CA 90067
310-312-4284
Email: kclimaco@manatt.com
*TERMINATED: 08/12/2022*

## Defendant

**Byron B Brown**                     represented by   **Peter A. Sahasrabudhe**
*Mayor of the City of Buffalo, in his*                (See above for address)
*individual and official capacities*                  *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Robert Emmet Quinn**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Cheyenne Nicole Freely**
                                                       (See above for address)

*ATTORNEY TO BE NOTICED*

**David A. Short**
(See above for address)
*TERMINATED: 06/15/2022*

**Hugh M. Russ , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katelyn A. Climaco**
(See above for address)
*TERMINATED: 08/12/2022*

**Defendant**

**Byron C Lockwood**
*Commissioner of the Buffalo Police Department, in his individual capacity*

represented by **Peter A. Sahasrabudhe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Emmet Quinn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cheyenne Nicole Freely**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hugh M. Russ , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katelyn A. Climaco**
(See above for address)
*TERMINATED: 08/12/2022*

**Defendant**

**Daniel Derenda**
*former Commissioner of the Buffalo Police Department, in his individual capacity*

represented by **Peter A. Sahasrabudhe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Emmet Quinn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cheyenne Nicole Freely**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David A. Short**
(See above for address)

*TERMINATED: 06/15/2022*

**Hugh M. Russ , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katelyn A. Climaco**
(See above for address)
*TERMINATED: 08/12/2022*

<u>**Defendant**</u>

**Aaron Young**
*officer of the Buffalo Police Department, in his individual capacity*

represented by **Peter A. Sahasrabudhe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Emmet Quinn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cheyenne Nicole Freely**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David A. Short**
(See above for address)
*TERMINATED: 06/15/2022*

**Hugh M. Russ , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katelyn A. Climaco**
(See above for address)
*TERMINATED: 08/12/2022*

<u>**Defendant**</u>

**Kevin Brinkworth**

represented by **Peter A. Sahasrabudhe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Emmet Quinn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cheyenne Nicole Freely**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David A. Short**
(See above for address)

*TERMINATED: 06/15/2022*

**Hugh M. Russ , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katelyn A. Climaco**
(See above for address)
*TERMINATED: 08/12/2022*

**Defendant**

**Philip Serafini**                           represented by  **Peter A. Sahasrabudhe**
*officer of the Buffalo Police Department, in*                 (See above for address)
*his individual capacity*                                      *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Robert Emmet Quinn**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Cheyenne Nicole Freely**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **David A. Short**
                                                               (See above for address)
                                                               *TERMINATED: 06/15/2022*

                                                               **Hugh M. Russ , III**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Katelyn A. Climaco**
                                                               (See above for address)
                                                               *TERMINATED: 08/12/2022*

**Defendant**

**Robbin Thomas**                             represented by  **Peter A. Sahasrabudhe**
*officer of the Buffalo Police Department, in*                 (See above for address)
*his individual capacity*                                      *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Robert Emmet Quinn**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Cheyenne Nicole Freely**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **David A. Short**
                                                               (See above for address)

*TERMINATED: 06/15/2022*

**Hugh M. Russ , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katelyn A. Climaco**
(See above for address)
*TERMINATED: 08/12/2022*

**Defendant**

**Unknown Supervisory Personnel 1-10**
*officers of the Buffalo Police Department, in
their individual capacities*

represented by **Peter A. Sahasrabudhe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Emmet Quinn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cheyenne Nicole Freely**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David A. Short**
(See above for address)
*TERMINATED: 06/15/2022*

**Hugh M. Russ , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katelyn A. Climaco**
(See above for address)
*TERMINATED: 08/12/2022*

**Defendant**

**Unknown Officers 1-20**
*officers of the Buffalo Police Department, in
their individual capacities*

represented by **Peter A. Sahasrabudhe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Emmet Quinn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cheyenne Nicole Freely**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David A. Short**
(See above for address)

*TERMINATED: 06/15/2022*

**Hugh M. Russ , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katelyn A. Climaco**
(See above for address)
*TERMINATED: 08/12/2022*

**<u>Intervenor</u>**

**Markel Nance**                    represented by    **Andrew J. Timmick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Intervenor</u>**

**Thomas Christopher Williams Jr.**    represented by    **Andrew J. Timmick**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**<u>Movant</u>**

**Erie County District Attorney's Office**    represented by    **Michael J. Hillery**
*TERMINATED: 07/22/2021*                        Erie County District Attorney's Office
25 Delaware Avenue
Buffalo, NY 14202
(716) 858-2522
Fax: (716) 858-7922
Email: michael.hillery@erie.gov
*TERMINATED: 07/22/2021*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/28/2018 | 1 | COMPLAINT against City of Buffalo $ 400 receipt number 0209-3149240, filed by Black Love Resists. (Attachments: # 1 Civil Cover Sheet, # 2 Civil Cover Sheet Attachment, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons, # 11 Attachment, # 12 Exhibit Summons) (Williams, Keisha) (Entered: 06/28/2018) |
| 06/29/2018 | | Case assigned to Hon. Christina Clair Reiss. Notification to chambers of on-line civil opening. (KLH) (Entered: 06/29/2018) |
| 06/29/2018 | | Notice of Availability of Magistrate Judge: A United States Magistrate of this Court is available to conduct all proceedings in this civil action in accordance with 28 U.S.C. 636c and FRCP 73. The Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form (AO-85) is available for download at http://www.uscourts.gov/services-forms/forms. (KLH) (Entered: 06/29/2018) |
| 06/29/2018 | | AUTOMATIC REFERRAL to Mediation The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution. (KLH) (Entered: 06/29/2018) |

| 06/29/2018 | 2 | Summons Issued as to Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Aaron Young. (KLH) (Entered: 06/29/2018) |
|---|---|---|
| 07/24/2018 | 3 | AFFIDAVIT of Service for Summons & Complaint served on Daniel Derenda on July 9, 2018, filed by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons. (Williams, Keisha) (Entered: 07/24/2018) |
| 07/24/2018 | 4 | SUMMONS Returned Executed by Jane Doe, Dorethea Franklin, Black Love Resists in the Rust, Taniqua Simmons, De'Jon Hall. Byron C Lockwood served on 7/9/2018, answer due 7/30/2018. (Williams, Keisha) (Entered: 07/24/2018) |
| 07/24/2018 | 5 | SUMMONS Returned Executed by Jane Doe, Dorethea Franklin, Black Love Resists in the Rust, Taniqua Simmons, De'Jon Hall. City of Buffalo, N.Y. served on 7/9/2018, answer due 7/30/2018. (Williams, Keisha) (Entered: 07/24/2018) |
| 07/30/2018 | 6 | ANSWER to 1 Complaint, by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. (Attachments: # 1 Certificate of Service)(Quinn, Robert) (Entered: 07/30/2018) |
| 07/31/2018 | | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution.(KLH) (Entered: 07/31/2018) |
| 08/22/2018 | 7 | ORDER regarding Scheduling Conference set for 10/9/2018 03:00 PM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. Christina Clair Reiss, who will appear by videoconference. Signed by Hon. Christina Clair Reiss on 8/21/2018. (Attachments: # 1 Case Management Order Template)(KLH) (Entered: 08/22/2018) |
| 09/17/2018 | 8 | SUMMONS Returned Executed by Jane Doe, Dorethea Franklin, Black Love Resists in the Rust, Taniqua Simmons, De'Jon Hall. Philip Serafini served on 9/8/2018, answer due 10/1/2018. (Williams, Keisha) (Entered: 09/17/2018) |
| 09/17/2018 | 9 | SUMMONS Returned Executed by Jane Doe, Dorethea Franklin, Black Love Resists in the Rust, Taniqua Simmons, De'Jon Hall. Kevin Brinkworth served on 9/11/2018, answer due 10/2/2018. (Williams, Keisha) (Entered: 09/17/2018) |
| 09/17/2018 | 10 | SUMMONS Returned Executed by Jane Doe, Dorethea Franklin, Black Love Resists in the Rust, Taniqua Simmons, De'Jon Hall. Aaron Young served on 9/5/2018, answer due 9/26/2018. (Williams, Keisha) (Entered: 09/17/2018) |
| 09/17/2018 | 11 | SUMMONS Returned Executed by Jane Doe, Dorethea Franklin, Black Love Resists in the Rust, Taniqua Simmons, De'Jon Hall. Byron B Brown served on 9/6/2018, answer due 9/27/2018. (Williams, Keisha) (Entered: 09/17/2018) |
| 09/17/2018 | 12 | SUMMONS Returned Executed by Jane Doe, Dorethea Franklin, Black Love Resists in the Rust, Taniqua Simmons, De'Jon Hall. Robbin Thomas served on 9/8/2018, answer due 10/1/2018. (Williams, Keisha) (Entered: 09/17/2018) |
| 09/19/2018 | 13 | DISCOVERY PLAN by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons.(Wilner, Claudia) (Entered: 09/19/2018) |
| 10/09/2018 | 14 | Minute Entry for proceedings held before Hon. Christina Clair Reiss. Scheduling Conference via video conference held on 10/9/2018.<br><br>Parties have agreed to select a mediator and complete first mediation session by 12/1/2018. |

|  |  |  |
|---|---|---|
|  |  | Discovery schedule, potential class action, proposed protective order and general case management issues discussed. |
|  |  | The Court will schedule a further telephone conference in 60 days. |
|  |  | Parties may contact the Court directly for assistance with discovery issues. |
|  |  | Appearances: Darius Charney, Esq., Anjana Malhotra, Esq., and Claudia Wilner, Esq., on behalf of plaintiffs; Robert Quinn, Esq., on behalf of defendants. (Court Reporter FTR Gold.) (JDK) (Entered: 10/09/2018) |
| 10/09/2018 | 15 | ORDER. The 13 Joint Discovery Plan is SO ORDERED. Please note: This docket entry does not contain every detail of this order. It is your responsibility to read and download the pdf to this document for future reference. Motions to Join Parties/Amend Pleadings due by 5/14/2019, Discovery completed by 6/14/2019, Expert Witness List due by 9/13/2019, Motions due by 10/9/2019. Signed by Hon. Christina Clair Reiss on 10/9/2018. (KLH) (Entered: 10/09/2018) |
| 10/12/2018 |  | NOTICE of Hearing: Telephone Status Conference set for 12/21/2018 11:00 AM before Hon. Christina Clair Reiss. Call-in instructions will be emailed shortly before this conference is held. (LMD) (Entered: 10/12/2018) |
| 10/29/2018 | 16 | NOTICE of Appearance by Andrea Chinyere Ezie on behalf of All Plaintiffs (Ezie, Andrea) (Entered: 10/29/2018) |
| 11/06/2018 | 17 | Stipulation-Selection of Mediator by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young (Attachments: # 1 Certificate of Service)(Quinn, Robert) (Entered: 11/06/2018) |
| 12/21/2018 | 18 | Minute Entry for proceedings held before Hon. Christina Clair Reiss. Telephone Status Conference held on 12/21/2018.

Discovery issues discussed.

The Court will not intervene in discovery dispute at this time, but directs the parties to contact the Court within the next 30 days either individually or jointly regarding issues that can not be resolved.

The Court will schedule either a telephone conference or a video conference following report of the parties.

Appearances: Claudia Wilner, Esq., Andrea Ezie, Esq., Britney Wilson, Esq., Darius Charney, Esq., Travis England, Esq., Anjana Malhotra, Esq., on behalf of plaintiffs; Robert Quinn, Esq., on behalf of defendants. (Court Reporter FTR Gold.) (JDK) (Entered: 12/21/2018) |
| 01/22/2019 | 19 | Letter filed by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons as to Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda *re Current Status of Discovery*. (Charney, Darius) (Entered: 01/22/2019) |
| 01/25/2019 | 20 | TEXT ORDER granting 19 letter request for an extension of time. Signed by Hon. Christina Clair Reiss on 1/25/2019. (KLH) (Entered: 01/28/2019) |
| 01/29/2019 | 21 | Letter filed by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Michael Menard, Taniqua Simmons as to Aaron Young, City of Buffalo, N.Y., Philip |

| | | |
|---|---|---|
| | | Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda *re Current Status of Discovery*. (Wilner, Claudia) (Entered: 01/29/2019) |
| 05/06/2019 | 22 | First MOTION for Extension of Time to Complete Discovery *, Move to Amend Pleadings, and Make Dispositive Motions* by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons.(Charney, Darius) (Entered: 05/06/2019) |
| 05/22/2019 | | NOTICE of Hearing: Telephone Status Conference set for 5/30/2019 03:30 PM before Hon. Christina Clair Reiss in the Cattaraugus Courtroom. Call-in information will be provide to the attorneys via email. (LB) (Entered: 05/22/2019) |
| 05/28/2019 | 23 | Letter filed by Black Love Resists in the Rust as to Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda *to supplement May 9, 2019 letter motion (ECF 22) with regard to outstanding discovery issues*. (Attachments: # 1 Exhibit A - First Set of RFPs, # 2 Exhibit B - Supplemental Responses to First Set of RFPs, # 3 Exhibit C - 311 Records - Police Issue (excerpt), # 4 Exhibit D - SF Daily Reports Redacted (excerpt))(Wilner, Claudia) (Entered: 05/28/2019) |
| 05/29/2019 | 24 | LETTER regarding 22 First MOTION for Extension of Time to Complete Discovery *, Move to Amend Pleadings, and Make Dispositive Motions* by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons. (Attachments: # 1 Exhibit A - First Set of RFPs, # 2 Exhibit B - Supplemental Responses to First Set of RFPs, # 3 Exhibit C - 311 Records - Police Issue (excerpt), # 4 Exhibit D - SF Daily Reports Redacted (excerpt))(Wilner, Claudia) Modified on 5/30/2019 to correct event and description (KLH). (Entered: 05/29/2019) |
| 05/30/2019 | 25 | Minute Entry for proceedings held before Hon. Christina Clair Reiss. Telephone Status Conference held on 5/30/2019.<br><br>Parties identify several discovery disputes.<br><br>The Court provides instructions for narrowing the scope for production of documents, redaction of documents and privilege logs.<br><br>Plaintiffs request an extension of the discovery schedule. The Court will sign off on an agreed to revised discovery schedule, otherwise a motion will be required.<br><br>The Court will schedule a further status conference in 90 days absent a request for an earlier date.<br><br>Appearances: Claudia Wilner, Esq., Darius Charney, Esq., Anjana Malhotra, Esq., on behalf of plaintiffs; Robert Quinn, Esq., on behalf of defendants.<br><br>(Court Reporter FTR Gold.) (JDK) (Entered: 05/31/2019) |
| 05/31/2019 | 26 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 10/9/2018, before Judge Christina Clair Reiss. Court Reporter/Transcriber Christi A. Macri, Contact Info christimacri50@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 6/21/2019. Redacted Transcript Deadline set for 7/1/2019. Release of Transcript Restriction set for 8/29/2019. (CM) (Entered: 05/31/2019) |

| | | |
|---|---|---|
| 05/31/2019 | 27 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 12/21/2018, before Judge Christina Clair Reiss. Court Reporter/Transcriber Christi A. Macri, Contact Info christimacri50@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 6/21/2019. Redacted Transcript Deadline set for 7/1/2019. Release of Transcript Restriction set for 8/29/2019. (CM) (Entered: 05/31/2019) |
| 06/03/2019 | 28 | Consent MOTION to Modify Scheduling Order by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons.(Wilner, Claudia) (Entered: 06/03/2019) |
| 06/05/2019 | 29 | TEXT ORDER granting 28 Consent Motion to modify the scheduling order. Issued by Hon. Christina Clair Reiss on 6/5/2019. (KLH) (Entered: 06/05/2019) |
| 06/05/2019 | | Set/Reset Deadlines: Motions to Join Parties/Amend Pleadings due by 11/14/2019. Discovery completed by 12/13/2019. Expert Reports due by 1/31/2020. Motions due by 4/30/2020. (KLH) (Entered: 06/05/2019) |
| 06/12/2019 | 30 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 5/30/2019, before Judge Christina Clair Reiss. Court Reporter/Transcriber Christi A. Macri, Contact Info christimacri50@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 7/3/2019. Redacted Transcript Deadline set for 7/15/2019. Release of Transcript Restriction set for 9/10/2019. (CM) (Entered: 06/12/2019) |
| 06/26/2019 | 31 | MOTION to Withdraw as Attorney *Anjana Malhotra* by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons.(Malhotra, Anjana) (Entered: 06/26/2019) |
| 07/02/2019 | 32 | TEXT ORDER granting 31 Motion to Withdraw as Attorney. Attorney Anjana Malhotra terminated. Signed by Hon. Christina Clair Reiss on 7/1/2019. (KLH) (Entered: 07/02/2019) |
| 07/18/2019 | 33 | MOTION to Compel *Non-Party Erie County Central Police Services to Comply with Subpoena* by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons. (Attachments: # 1 Memorandum in Support of Motion to Compel, # 2 Declaration in support of Motion to Compel, # 3 Exhibit A - Subpoena with Proof of Service, # 4 Exhibit B - Responses to Document Requests, # 5 Exhibit C - Jan. 18 letter, # 6 Exhibit D - Service of Subpoena on Defendants, # 7 Exhibit E - Emails to ECCPS)(Wilner, Claudia) (Entered: 07/18/2019) |
| 07/24/2019 | 34 | MOTION to Compel *Defendants to Comply with May 30, 2019 Discovery Order and Other Discovery Obligations* by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons. (Attachments: # 1 Memorandum in Support of Motion to Compel, # 2 Declaration in support of Motion to Compel, # 3 Exhibit A - Supp Response to First RFPs, # 4 Exhibit B - Response to Second RFPs, # 5 Exhibit C - Interrogatories (excerpt), # 6 Exhibit D - Supp Response to Interrogatories (excerpt), # 7 Exhibit E - 11.15 email, # 8 Exhibit F - 1.3 email, # 9 Exhibit G - 1.18 letter, # 10 Exhibit H - 1.21 email, # 11 Exhibit I - 1.28 email, # 12 Exhibit J - 2.4-12 email chain, # 13 Exhibit K - 2.27 email, # 14 Exhibit L - 3.6 email, # 15 Exhibit M - 3.18 letter, # 16 Exhibit N - 3.25 email & attachments, # 17 Exhibit O - 5.6 email, # 18 Exhibit P - 6.5 email, # 19 Exhibit Q - 6.6-11 email chain, # 20 Exhibit R - 6.20 letter, # 21 Exhibit S - 6.21 email, # 22 Exhibit T - 6.27-7.9 email chain, # 23 Exhibit U - 7.3-8 email chain, # 24 Exhibit V - Housing Unit Monthly Report)(Wilner, Claudia) (Entered: 07/24/2019) |

| 08/06/2019 | 35 | TEXT ORDER denying as moot 22 Motion for Extension of Time to Complete Discovery, based on the court's granting of the consent motion to extend time to complete discovery. Issued by Hon. Christina Clair Reiss on 8/6/2019. (KLH) (Entered: 08/06/2019) |
|---|---|---|
| 08/08/2019 | 36 | Mediation Certification by Michael Menard(AGW) (Entered: 08/08/2019) |
| 08/13/2019 | 37 | Letter filed by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons as to Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda *withdrawing Motion to Compel Non-Party Erie County Central Police Services to Comply with Plaintiffs' May 17, 2019 Subpoena.* (Wilner, Claudia) (Entered: 08/13/2019) |
| 08/19/2019 | 38 | MOTION for Entry of Order Granting Motion to Compel re 34 MOTION to Compel *Defendants to Comply with May 30, 2019 Discovery Order and Other Discovery Obligations* by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons. (Attachments: # 1 Text of Proposed Order)(Wilner, Claudia) (Entered: 08/19/2019) |
| 08/19/2019 | 39 | Letter filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda as to Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda . (Quinn, Robert) (Entered: 08/19/2019) |
| 08/20/2019 | 40 | DECLARATION re 34 MOTION to Compel *Defendants to Comply with May 30, 2019 Discovery Order and Other Discovery Obligations* filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Michael Menard, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Michael Menard, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K)(Quinn, Robert) (Entered: 08/20/2019) |
| 08/26/2019 | 41 | REPLY to Response to Motion re 38 MOTION for Entry of Order Granting Motion to Compel re 34 MOTION to Compel *Defendants to Comply with May 30, 2019 Discovery Order and Other Discovery Obligations* filed by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons. (Wilner, Claudia) (Entered: 08/26/2019) |
| 08/30/2019 | 42 | MOTION to Compel *Production of BPD Internal Affairs Division Files* by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons. (Attachments: # 1 Memorandum in Support Plaintiffs Memorandum of Law In Support of Motion to Compel Production of BPD Internal Affairs Division Files, # 2 Declaration Declaration of Darius Charney In Support of Motion to Compel Production of BPD Internal Affairs Division Files Files, # 3 Exhibit Charney Decl Exhibit A- Defendants' 1st Supplemental Responses to Plaintiffs' First Set of Document Requests, # 4 Exhibit Charney Decl Exhibit B- Charney Oct 15, 2018 email to Quinn and Proposed Confidentiality Order, # 5 Exhibit Charney Decl Exhibit C- Wilner Jan 18, 2019 Letter to Quinn, # 6 Exhibit Charney Decl Exhibit D- Wilner March 18, 2019 Letter to Quinn, # 7 Exhibit Charney Decl Exhibit E- Parties' July 12-15, 2019 email exchange, # 8 Exhibit Charney Decl Exhibit F- Parties' July 18, 2019 email exchange, # 9 Exhibit Charney Decl |

| | | |
|---|---|---|
| | | Exhibit G- Charney July 24, 2019 email to Quinn and Highlighted Spreadsheets, # 10 Exhibit Charney Decl Exhibit H- Parties' July 29-30 email exchange)(Charney, Darius) (Entered: 08/30/2019) |
| 09/03/2019 | 43 | First MOTION for Extension of Time to File Response/Reply as to 38 MOTION for Entry of Order Granting Motion to Compel re 34 MOTION to Compel *Defendants to Comply with May 30, 2019 Discovery Order and Other Discovery Obligations* , 34 MOTION to Compel *Defendants to Comply with May 30, 2019 Discovery Order and Other Discovery Obligations*, 40 Declaration,,, *with supporting Declaration and Certificate of Service* by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.(Quinn, Robert) (Entered: 09/03/2019) |
| 09/05/2019 | 44 | TEXT ORDER: The court finds good cause for Defendants untimely opposition and will consider it in conjunction with the merits of the parties dispute. Plaintiffs motion for entry of an order granting their motion to compel 38 solely on the grounds of Defendants untimely opposition is thus DENIED. The court does not set briefing schedules sua sponte, but rather expects the parties to follow the deadlines set forth in the Federal Rules of Civil Procedure unless otherwise ordered. Signed by Hon. Christina Clair Reiss on 9/5/2019. (KLH) (Entered: 09/05/2019) |
| 09/13/2019 | 45 | DECLARATION re 42 MOTION to Compel *Production of BPD Internal Affairs Division Files* filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Memorandum in Support, # 7 Certificate of Service)(Quinn, Robert) (Entered: 09/13/2019) |
| 09/20/2019 | 46 | REPLY to Response to Motion re 42 MOTION to Compel *Production of BPD Internal Affairs Division Files* filed by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons. (Charney, Darius) (Entered: 09/20/2019) |
| 09/30/2019 | 47 | Mediation Certification by Michael Menard. Not settled, mediation to continue on 10/18/2019.(AGW) (Entered: 09/30/2019) |
| 11/05/2019 | 48 | MOTION to Modify Scheduling Order re 29 Order on Motion for Miscellaneous Relief by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons.(England, Travis) (Entered: 11/05/2019) |
| 11/13/2019 | 49 | TEXT ORDER granting 48 Motion to modify the scheduling order. Signed by Hon. Christina Clair Reiss on 11/13/2019. (KLH) (Entered: 11/13/2019) |
| 11/13/2019 | | Set/Reset Scheduling Order Deadlines: Motions to Join Parties/Amend Pleadings due by 5/14/2020. Discovery completed by 6/12/2020. Motions to Compel Discovery due by 6/12/2020. Motions due by 10/30/2020. (KLH) (Entered: 11/13/2019) |
| 11/14/2019 | 50 | Mediation Certification by Michael Menard. Mediation adjourned to 1/21/20.(AGW) (Entered: 11/14/2019) |
| 12/19/2019 | 51 | OPINION AND ORDER granting in part and denying in part 34 and 42 Plaintiffs' Motions to Compel. Signed by Hon. Christina Clair Reiss on 12/19/2019. (KLH) (Entered: 12/19/2019) |

| | | |
|---|---|---|
| 01/02/2020 | 52 | TEXT ORDER denying as moot 43 Motion for Extension of Time to File Response/Reply as to 38 Motion for Entry of Order Granting Motion to Compel. Issued by Hon. Christina Clair Reiss on 1/2/2020. (KLH) (Entered: 01/02/2020) |
| 01/21/2020 | 53 | Letter filed by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons as to Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda *re Production of BPD IAD Files*. (Attachments: # 1 Text of Proposed Order Proposed Attorneys' Eyes Only Protective Order)(Charney, Darius) (Entered: 01/21/2020) |
| 01/24/2020 | 54 | PROTECTIVE ORDER. Signed by Hon. Christina Clair Reiss on 1/23/20. (SG) (Entered: 01/24/2020) |
| 03/18/2020 | 55 | MOTION to Withdraw as Attorney *Travis England, Esq.* by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons.(England, Travis) (Entered: 03/18/2020) |
| 03/24/2020 | 56 | ORDER granting 55 Motion to Withdraw as Attorney. Attorney Travis W. England terminated. Signed by Hon. Christina Clair Reiss on 3/24/20. (SG) (Entered: 03/24/2020) |
| 04/23/2020 | 57 | MOTION for Leave to File *Amended and Supplemental Class Action Complaint* by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons. (Attachments: # 1 Memorandum of Law in Support of Plaintiffs' Motion to Amend and Supplement Complaint, # 2 Declaration of Claudia Wilner in Support of Plaintiffs' Motion to Amend and Supplement Complaint, # 3 Exhibit 1 - Plaintiffs' Proposed Amended and Supplemental Class Action Complaint, # 4 Exhibit 2 - Redline of Plaintiffs' Proposed Amended and Supplemental Class Action Complaint Reflecting Changes, # 5 Exhibit 3 - Plaintiffs' First Set of Requests for the Production of Documents on Defendants dated November 5, 2018, # 6 Exhibit 4 - Defendants' Responses and Objections to Plaintiffs First Set of Requests for Production dated December 8, 2018, # 7 Exhibit 5 - Defendants' Supplemental Responses and Objections to Plaintiffs First Set of Requests for Production dated March 15, 2019, # 8 Exhibit 6 - Plaintiffs' Third-Party Subpoena on the Erie County Central Police Services (ECCPS) dated March 15, 2019, # 9 Exhibit 7 - Plaintiffs' Second Set of Requests for the Production of Documents on Defendants dated April 19, 2019)(Ezie, Andrea) (Entered: 04/23/2020) |
| 04/24/2020 | 58 | Mediator Recusal by Michael Menard(Menard, Michael) (Entered: 04/24/2020) |
| 04/30/2020 | 59 | CONTINUATION OF EXHIBITS to 57 MOTION for Leave to File *Amended and Supplemental Class Action Complaint -Corrected Proposed Amended Complaint & Redline (replacing Dkt Items 57.3 and 57.4)*. (Attachments: # 1 Corrected Redline of Proposed Amended Complaint)(Ezie, Andrea) (Entered: 04/30/2020) |
| 05/15/2020 | 60 | Consent MOTION *to Modify Scheduling Order* by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Taniqua Simmons.(Wilner, Claudia) (Entered: 05/15/2020) |
| 05/15/2020 | 61 | TEXT ORDER granting 60 Motion to modify Scheduling Order. Signed by Hon. Christina Clair Reiss on 5/15/20. (SG) (Entered: 05/15/2020) |
| 05/15/2020 | | Set/Reset Deadlines:( Discovery completed by 12/12/2020.), Set/Reset Hearings:, Set/Reset Scheduling Order Deadlines:( Discovery completed by 12/12/2020., Motions due by 4/30/2021.) (SG) (Entered: 05/15/2020) |
| 05/21/2020 | 62 | TEXT ORDER granting, as unopposed, 57 Motion for Leave to File an Amended Complaint. Signed by Hon. Christina Clair Reiss on 5/21/20. (SG) (Entered: 05/21/2020) |

| 05/21/2020 | 63 | AMENDED COMPLAINT against All Defendants, filed by Black Love Resists in the Rust, Jane Doe, Dorothea Franklin, Taniqua Simmons, De'Jon Hall, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds.(Ezie, Andrea) (Entered: 05/21/2020) |
|---|---|---|
| 06/04/2020 | 64 | ANSWER to 63 Amended Complaint by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. (Attachments: # 1 Certificate of Service)(Quinn, Robert) (Entered: 06/04/2020) |
| 10/22/2020 | 65 | MOTION to Compel *Defendants to Comply with the Court's December 19, 2019 Order and Other Discovery Obligations* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorothea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Memorandum in Support)(Wilner, Claudia) (Entered: 10/22/2020) |
| 10/22/2020 | 66 | DECLARATION re 65 MOTION to Compel *Defendants to Comply with the Court's December 19, 2019 Order and Other Discovery Obligations* filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorothea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorothea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24)(Wilner, Claudia) (Entered: 10/22/2020) |
| 11/06/2020 | 67 | AFFIDAVIT in Opposition re 65 MOTION to Compel *Defendants to Comply with the Court's December 19, 2019 Order and Other Discovery Obligations* filed by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I) (Quinn, Robert) (Entered: 11/06/2020) |
| 11/13/2020 | 68 | REPLY to Response to Motion re 65 MOTION to Compel *Defendants to Comply with the Court's December 19, 2019 Order and Other Discovery Obligations* filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorothea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Wilner, Claudia) (Entered: 11/13/2020) |
| 11/13/2020 | 69 | DECLARATION re 68 Reply to Response to Motion, filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorothea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorothea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Wilner, Claudia) (Entered: 11/13/2020) |
| 11/17/2020 | 70 | Consent MOTION Modify Scheduling Order by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorothea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Wilner, Claudia) (Entered: 11/17/2020) |
| 12/01/2020 | 71 | TEXT ORDER granting 70 Motion to Modify Scheduling Order. Signed by Hon. Christina Reiss on 12/1/2020. (CGJ) (Entered: 12/01/2020) |

| | | |
|---|---|---|
| 12/03/2020 | | NOTICE of Hearing: Status Conference set for 12/14/2020 10:00 AM before Hon. Christina Reiss. This proceeding will be conducted through Zoom for Government. (LMD) (Entered: 12/03/2020) |
| 12/07/2020 | 72 | MOTION to appear pro hac vice *filed on behalf of Jordan Joachim* ( Filing fee $ 200 receipt number 0209-4070967.) by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 J. Joachim Admission Petition Form, # 2 Affidavit of Chinyere Ezie, # 3 J. Joachim Attorney Oath, # 4 J. Joachim Civility Principles & Guidelines Oath, # 5 J. Joachim ECF Registration Form) (Ezie, Andrea) (Entered: 12/07/2020) |
| 12/08/2020 | | Verified admission to the New York State Bar for Attorney Jordan Scott Joachim. (MD) (Entered: 12/08/2020) |
| 12/08/2020 | 73 | TEXT ORDER granting 72 MOTION to appear pro hac vice. Signed by Hon. Christina Reiss on 12/8/2020. (JLV) (Entered: 12/08/2020) |
| 12/10/2020 | 74 | Letter filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon as to Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda *regarding depositions*. (Attachments: # 1 Exhibit Correspondence with R. Quinn)(Wilner, Claudia) (Entered: 12/10/2020) |
| 12/14/2020 | 75 | Minute Entry for proceedings held before Hon. Christina Reiss: Status Conference held on 12/14/2020. <br><br> The Court informs the parties it intends to take up 65 MOTION to Compel *Defendants to Comply with the Court's December 19, 2019 Order and Other Discovery Obligations* filed by Taniqua Simmons, Dorethea Franklin, Charles Palmer, Ebony Yeldon, Joseph Bonds, Shaketa Redden, Jane Doe, Shirley Sarmiento, De'Jon Hall, Black Love Resists in the Rust. <br><br> The Court resolves in part Plaintiff's 65 Motion to Compel as stated on the record. <br><br> The parties are directed to notify the Court within 60 days the discovery issues that cannot be resolved. <br><br> An additional status conference will be scheduled. <br><br> The Court defers ruling on attorney's fees and expenses. <br><br> Appearances: Claudia Wilner, Esq., Darius Charney, Esq., Jordan Joachim, Esq., on behalf of plaintiffs; Robert Quinn, Esq., on behalf of defendants. <br><br> All Appearances by Zoom for Government (JDK) (Entered: 12/14/2020) |
| 12/21/2020 | 76 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Status Conference Proceedings held on 12/14/2020, before Judge Christina Clare Reiss. Court Reporter/Transcriber Megan E. Pelka, RPR, Contact Info (716)364-6449. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 1/11/2021. Redacted Transcript Deadline set for 1/21/2021. Release of Transcript Restriction set for 3/22/2021. (JLV) (Entered: 12/21/2020) |

| 01/22/2021 | 77 | MOTION to set ESI benchmarks and compel scheduling of depositions by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Wilner, Claudia) (Entered: 01/22/2021) |
|---|---|---|
| 01/25/2021 | | E-Filing Notification: 77 MOTION; the assigned judge does not accept e-filed letter motions. ACTION REQUIRED: Reformat the document and re-file using the motion event. (JLV) (Entered: 01/25/2021) |
| 01/25/2021 | 78 | Letter filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon as to Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda *re status update on ESI benchmarks*. (Attachments: # 1 Exhibit 1)(Wilner, Claudia) (Entered: 01/25/2021) |
| 02/02/2021 | | NOTICE of Hearing: Status Conference set for 2/8/2021 11:30 AM before Hon. Christina Reiss. This Status Conference is a Zoom for Government Status Conference. Counsel will receive the Zoom for Government invite via email. (LMD) (Entered: 02/02/2021) |
| 02/05/2021 | 79 | Letter filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda as to Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda *in response to DKT 78 & 79*. (Quinn, Robert) (Entered: 02/05/2021) |
| 02/08/2021 | 80 | Minute Entry for proceedings held before Hon. Christina Reiss: Status Conference held on 2/8/2021.<br><br>The Court addresses the parties filings outlining current discovery issues.<br><br>The Court sets a benchmark for defendants to complete production of 3 ESI custodians per week, and to prepare a certification once each custodian search has been completed.<br><br>The parties shall continue to dialogue.<br><br>The parties may contact the Court should further issues arise.<br><br>Appearances: Claudia Wilner, Esq., Darius Charney, Esq., Jordan Joachim, Esq., Andrea Ezie, Esq., Edward Krugman, Esq., on behalf of plaintiffs; Robert Quinn, Esq., on behalf of defendants.<br><br>All Appearances by Zoom for Government (JDK) (Entered: 02/08/2021) |
| 02/12/2021 | 81 | STATUS REPORT *Regarding Plaintiffs' Fourth Request for Production of Documents* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Wilner, Claudia) (Entered: 02/12/2021) |
| 02/16/2021 | 82 | TEXT ORDER granting Plaintiffs' request for a two week extension to continue conferring with Defendants regarding discovery. Signed by Hon. Christina Reiss on 2/16/2021. (JLV) (Entered: 02/16/2021) |
| 02/18/2021 | 83 | Consent MOTION Modify Scheduling Order by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, |

| | | Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Joachim, Jordan) (Entered: 02/18/2021) |
|---|---|---|
| 02/19/2021 | 84 | TEXT ORDER granting 83 Consent Motion to Modify Scheduling Order. Signed by Hon. Christina Reiss on 2/19/2021. (JLV) (Entered: 02/19/2021) |
| 03/01/2021 | 85 | STATUS REPORT *re: Plaintiffs' Fourth Request for Production of Documents* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Joachim, Jordan) (Entered: 03/01/2021) |
| 03/15/2021 | 86 | STATUS REPORT *re Motion to Compel* by Black Love Resists in the Rust. (Krugman, Edward) (Entered: 03/15/2021) |
| 03/19/2021 | 87 | MOTION to Withdraw as Attorney *for Plaintiffs (Wilson)* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Wilson, Britney) (Entered: 03/19/2021) |
| 03/19/2021 | 88 | MOTION to Withdraw as Attorney *for Plaintiffs (Cohan)* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Wilson, Britney) (Entered: 03/19/2021) |
| 03/19/2021 | 89 | TEXT ORDER granting 87 Motion to Withdraw as Attorney. Attorney Britney Renee Wilson terminated; granting 88 Motion to Withdraw as Attorney. Attorney Marc Cohan terminated. Signed by Hon. Christina Reiss on 3/19/2021. (JLV) (Entered: 03/19/2021) |
| 04/26/2021 | 90 | NOTICE by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon re 65 MOTION to Compel *Defendants to Comply with the Court's December 19, 2019 Order and Other Discovery Obligations Withdrawl of Motion Without Prejudice* (Krugman, Edward) (Entered: 04/26/2021) |
| 05/05/2021 | | NOTICE OF HEARING. A Status Conference is scheduled for May 11, 2021 at 12:00 PM before Hon. Christina Reiss to be held remotely via Zoom for Government. The Court will send counsel a separate email link to join the conference. (JDK) (Entered: 05/05/2021) |
| 05/10/2021 | 91 | STATUS REPORT *For May 11, 2021 Status Conference* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit Map of Terms and Custodians, # 2 Exhibit April 1 e-mail, # 3 Exhibit May 4 e-mail, # 4 Exhibit May 7 Buffalo News Article, # 5 Exhibit December 2017 Letter to Attorney General, # 6 Exhibit e-mail and attached map, # 7 Exhibit ECAC Objections to Subpoena, # 8 Exhibit Responses and Objections to 5th RFP)(Krugman, Edward) (Entered: 05/10/2021) |
| 05/11/2021 | 92 | NOTICE of Appearance by Anjana Malhotra on behalf of All Plaintiffs (Malhotra, Anjana) (Entered: 05/11/2021) |
| 05/11/2021 | 93 | Minute Entry for proceedings held before Hon. Christina Reiss: Status Conference held on 5/11/2021.<br><br>The Court hears concerns from the Plaintiff's on the progress of discovery and rules as follows: The Court ORDERS the production of the metadata spreadsheet no later than 5/31/2021, failure to comply with this deadline may subject Defendant to sanctions; the |

| | | |
|---|---|---|
| | | Court ORDERS the production of non-e-mail ESI for the original 20 custodians no later than 5/31/2021, failure to comply with this deadline may subject Defendant to sanctions.

The Court ORDERS the parties to resolve the additional disputes as set forth on the record.

Following the 5/31/2021 deadline, Plaintiff's may file a motion to compel further discovery as deemed necessary.

Appearances: Claudia Wilner, Esq., Darius Charney, Esq., Jordan Joachim, Esq., Edward Krugman, Esq., Keisha Williams, Esq., Anjana Malhotra, Esq., on behalf of plaintiffs; Robert Quinn, Esq., on behalf of defendants.

All Appearances by Zoom for Government (JDK) (Entered: 05/11/2021) |
| 05/15/2021 | 94 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (STATUS CONFERENCE) held via Zoom for Government on 05/11/2021, before Judge CHRISTINA CLAIR REISS. Transcriber Karen J. Clark, RPR, KarenClark1013@AOL.com. Transcript may be viewed at the court public terminal or purchased through the Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/7/2021. Redacted Transcript Deadline set for 6/15/2021. Release of Transcript Restriction set for 8/13/2021. (KJC) (Entered: 05/15/2021) |
| 05/21/2021 | 95 | Consent MOTION to Modify Scheduling Order by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Joachim, Jordan) (Entered: 05/21/2021) |
| 05/21/2021 | 96 | TEXT ORDER granting 95 Motion to Modify Scheduling Order. Signed by Hon. Christina Reiss on 5/21/2021. (JLV) (Entered: 05/21/2021) |
| 06/04/2021 | 97 | Letter filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda as to Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda . (Quinn, Robert) (Entered: 06/04/2021) |
| 06/09/2021 | 98 | REPLY/RESPONSE to re 97 Letter, *and in further support of Letter re redaction* filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Michael Menard, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Krugman, Edward) (Entered: 06/09/2021) |
| 06/11/2021 | 99 | MOTION to Quash by Erie County District Attorney's Office.(Hillery, Michael) (Entered: 06/11/2021) |
| 06/25/2021 | 100 | DECLARATION signed by Darius Charney re 99 MOTION to Quash filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall. (Attachments: # 1 Exhibit 1)(Charney, Darius) (Entered: 06/25/2021) |
| 07/22/2021 | 101 | DECLARATION re 99 MOTION to Quash filed by Erie County District Attorney's Office . (Hillery, Michael) (Entered: 07/22/2021) |

| | | |
|---|---|---|
| 09/01/2021 | 102 | Consent MOTION for Extension of Time to Complete Discovery by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit 1: 7-20-2021 e-mail re discovery, # 2 Exhibit 2: 8-23-2021 e-mail re discovery) (Krugman, Edward) (Entered: 09/01/2021) |
| 09/02/2021 | 103 | ORDER granting 102 Motion for Extension of Time to Complete Discovery. Signed by Hon. Christina Reiss on 9/2/2021. (JLV) (Entered: 09/02/2021) |
| 09/06/2021 | 104 | MOTION for Discovery *re Issuance of Subpoena to NYS Dept of Motor Vehicles* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit A - Proposed Order, # 2 Exhibit B - Proposed Subpoena, # 3 Declaration of Edward P. Krugman iso motion)(Krugman, Edward) (Entered: 09/06/2021) |
| 09/06/2021 | 105 | MOTION to Expedite *to Shorten time to respond to ECF #104* by Erie County District Attorney's Office, Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Michael Menard, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Krugman, Edward) (Entered: 09/06/2021) |
| 09/13/2021 | 106 | TEXT ORDER granting in part and denying in part 105 Motion to Expedite. The response is due September 17, 2021, and the reply is due September 21, 2021. Signed by Hon. Christina Reiss on 9/13/2021. (JLV) (Entered: 09/13/2021) |
| 09/13/2021 | | E-Filing Notification: 103 ORDER; removed from docket per Chambers. Entered in error. (JLV) (Entered: 09/13/2021) |
| 09/13/2021 | 107 | TEXT ORDER granting and adopting the schedule set forth in paragraph 11 of 102 Consent MOTION for Extension of Time to Complete Discovery Signed by Hon. Christina Reiss on 9/13/2021. (JLV) (Entered: 09/13/2021) |
| 09/15/2021 | 108 | MOTION to Withdraw as Attorney by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Charney, Darius) (Entered: 09/15/2021) |
| 09/16/2021 | 109 | TEXT ORDER granting 108 Motion to Withdraw as Attorney. Attorney Darius Charney terminated. Signed by Hon. Christina Reiss on 9/16/2021. (JLV) (Entered: 09/16/2021) |
| 09/27/2021 | 110 | TEXT ORDER DENYING WITHOUT PREJUDICE 104 Motion for Issuance of Subpoena to New York State Department of Motor Vehicles. The subpoena seeks a vast number of records. The motion contains no analysis of the likely costs and time that will be incurred in the response. Signed by Hon. Christina Reiss on 9/27/2021. (CGJ) (Entered: 09/27/2021) |
| 09/28/2021 | 111 | MOTION to Compel *Discovery* , MOTION for Sanctions by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Michael Menard, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Krugman, Edward). Added MOTION for Sanctions on 9/29/2021 (JLV). (Entered: 09/28/2021) |
| 09/28/2021 | 112 | MEMORANDUM IN SUPPORT re 111 MOTION to Compel *Discovery and For Sanctions* byBlack Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Krugman, Edward) (Entered: 09/28/2021) |
| 09/28/2021 | 113 | DECLARATION re 111 MOTION to Compel *Discovery and For Sanctions* filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon *Declaration of Edward P. Krugman*. (Attachments: # 1 Exhibit 3 - 4-28-2021 e-mail, # 2 |

| | | |
|---|---|---|
| | | Exhibit 4 - Chart - multiple ticketing by unit, # 3 Exhibit 5 - e-mails re P.O. Thomas (redacted), # 4 Exhibit 6 - e-mails re P.O. Macy, # 5 Exhibit 7 - e-mails re D.C. Gramaglia, # 6 Exhibit 8 - e-mails re M DeGeorge, # 7 Exhibit 9 - June 2020 Press Release, # 8 Exhibit 10 - PPG stop receipt analysis, # 9 Exhibit 11 - Internship Project Report re speed cameras, # 10 Exhibit 12 - ENTCAD printout, # 11 Exhibit 13 - 7-20-2021 e-mail, # 12 Exhibit 14 - 7-23-2021 e-mail, # 13 Exhibit 15 - 7-27-2021 e-mail, # 14 Exhibit 16 - 7-27-2021 e-mail response, # 15 Exhibit 17 - 7-29-2021 e-mails, # 16 Exhibit 18 - 8-4-2021 e-mail, # 17 Exhibit 19 - 8-23-2021 e-mail, # 18 Exhibit 20 - 8-23-2021 e-mail response, # 19 Exhibit 21 - 8-26-2021 e-mail, # 20 Exhibit 22 - 9-7-2021 e-mail, # 21 Exhibit 1 - May 4 e-mail re ECAC project files, # 22 Exhibit 2 - April 1 e-mail re Relativity and Metadata)(Krugman, Edward) (Entered: 09/28/2021) |
| 09/29/2021 | 114 | NOTICE by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon re 111 MOTION to Compel *Discovery and For Sanctions*, 113 Declaration,,,,, *Regarding ECF exhibit sequence* (Krugman, Edward) (Entered: 09/29/2021) |
| 09/29/2021 | | E-Filing Notification: 111 MOTION to Compel; added additional relief, MOTION for Sanctions. (JLV) (Entered: 09/29/2021) |
| 10/09/2021 | 115 | DECLARATION re E-Filing Notification, 114 Notice (Other), 111 MOTION to Compel *Discovery and For Sanctions* MOTION for Sanctions, 113 Declaration,,,,, 112 Memorandum in Support, filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda *In Opposition* filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda. (Attachments: # 1 Exhibit A)(Quinn, Robert) (Entered: 10/09/2021) |
| 10/12/2021 | 116 | Consent MOTION for Order Modifying the Existing Protective Order Governing Production of Attorneys Eyes Only Confidential Materials by Party Consent and Accompanying Memorandum of Law re 54 Protective Order by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Text of Proposed Order Proposed Order Modifying the Existing Protective Order Governing Production of Attorneys Eyes Only Confidential Materials by Party Consent)(Ezie, Andrea) (Entered: 10/12/2021) |
| 10/12/2021 | 117 | Consent MOTION for Extension of Time to File Response/Reply as to 111 MOTION to Compel *Discovery and For Sanctions* MOTION for Sanctions by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Krugman, Edward) (Entered: 10/12/2021) |
| 10/12/2021 | 118 | ORDER granting 116 Motion Modifying Protective Order Governing Production of Attorneys' Eyes Only Confidential Materials. Signed by Hon. Christina Reiss on 10/12/2021. (JLV) (Entered: 10/12/2021) |
| 10/12/2021 | 119 | TEXT ORDER granting 117 Motion for Extension of Time to File Response/Reply. Signed by Hon. Christina Reiss on 10/12/2021. (JLV) (Entered: 10/12/2021) |
| 10/26/2021 | 120 | REPLY to Response to Motion re 111 MOTION to Compel *Discovery and For Sanctions* MOTION for Sanctions filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Krugman, Edward) (Entered: 10/26/2021) |

| 10/26/2021 | 121 | DECLARATION signed by Edward P. Krugman re 111 MOTION to Compel *Discovery and For Sanctions* MOTION for Sanctions, 120 Reply to Response to Motion, filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall *Reply Declaration* filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall. (Attachments: # 1 Exhibit 1 - Giammaresi e-mails, # 2 Exhibit 2 - Overtime e-mails, # 3 Exhibit 3 - e-mail)(Krugman, Edward) (Entered: 10/26/2021) |
|---|---|---|
| 10/28/2021 | 122 | Second MOTION for Discovery *Renewed Motion for Issuance of subpoena to NYDMV* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit B - Form of Proposed Subpoena)(Krugman, Edward) (Entered: 10/28/2021) |
| 10/28/2021 | 123 | DECLARATION signed by Edward P. Krugman re 122 Second MOTION for Discovery *Renewed Motion for Issuance of subpoena to NYDMV* filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon . (Attachments: # 1 Exhibit 1 - e-mail to DMV)(Krugman, Edward) (Entered: 10/28/2021) |
| 10/28/2021 | 124 | MOTION to Expedite *and Shorten Time to Respond to ECF #122* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Declaration of Edward P. Krugman)(Krugman, Edward) (Entered: 10/28/2021) |
| 11/04/2021 | 125 | TEXT ORDER granting in part and denying in part 124 Motion to Expedite. Any opposition must be filed by 11/9/2021. Signed by Hon. Christina Reiss on 11/4/2021. (JLV) (Entered: 11/04/2021) |
| 11/15/2021 | 126 | TEXT ORDER granting 122 Motion for Discovery. No objection filed. The Clerk of Court is respectfully directed to issue the subpoena set forth in Document 122. Signed by Hon. Christina Reiss on 11/15/2021. (JLV) (Entered: 11/15/2021) |
| 11/29/2021 | 127 | Consent MOTION for Extension of Time to Complete Discovery by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Krugman, Edward) (Entered: 11/29/2021) |
| 11/30/2021 | 128 | TEXT ORDER granting 127 Motion for Extension of Time to Complete Discovery. Signed by Hon. Christina Reiss on 11/30/2021. (JLV) (Entered: 11/30/2021) |
| 12/21/2021 | | NOTICE of Hearing on Motion 111 MOTION to Compel *Discovery and For Sanctions* MOTION for Sanctions : Motion Hearing set for 12/28/2021 02:30 PM before Hon. Christina Reiss. This Oral Argument will be held via Zoom for Government. You will receive the Zoom for Government invite shortly. (LMD) (Entered: 12/21/2021) |
| 12/21/2021 | | SCHEDULING NOTICE: Oral Argument on 111 MOTION to Compel Discovery and 111 MOTION for Sanctions is scheduled for 12/28/2021 @ 02:30 PM before Hon. Christina Reiss to be held remotely via Zoom for Government. The Court will send counsel a separate email link to join the conference. (JDK) (Entered: 12/21/2021) |
| 12/28/2021 | 129 | Minute Entry for proceedings held before Hon. Christina Reiss: Oral Argument on 111 MOTION to Compel Discovery and 111 MOTION for Sanctions held on 12/28/2021.

Argument is held. |

The Court resolves plaintiffs 111 MOTION to Compel Discovery as set forth on the record. Plaintiff is directed to submit a proposed order within 14 days as discussed.

The Court resolves plaintiffs 111 MOTION for Sanctions as follows: plaintiff shall submit a request for attorney's fees as discussed.

Appearances: Claudia Wilner, Esq., Jordan Joachim, Esq., Edward Krugman, Esq., Anjana Malhotra, Esq., Andrea Ezie, Esq., on behalf of plaintiffs; Robert Quinn, Esq., on behalf of defendants.

All Appearances by Zoom for Government (JDK) (Entered: 12/30/2021)

| | | |
|---|---|---|
| 01/11/2022 | 130 | NOTICE by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon re 111 MOTION to Compel *Discovery and For Sanctions* MOTION for Sanctions (Attachments: # 1 Text of Proposed Order)(Krugman, Edward) (Entered: 01/11/2022) |
| 01/12/2022 | 131 | ORDER RE DISCOVERY. Signed by Hon. Christina Reiss on 1/11/2022. (JLV) (Entered: 01/12/2022) |
| 02/24/2022 | 132 | Consent MOTION for Extension of Time to Complete Discovery by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Joachim, Jordan) (Entered: 02/24/2022) |
| 02/25/2022 | 133 | NOTICE of Appearance by Hugh M. Russ, III on behalf of Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young (Russ, Hugh) (Entered: 02/25/2022) |
| 02/25/2022 | 134 | NOTICE of Appearance by Peter A. Sahasrabudhe on behalf of Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young (Sahasrabudhe, Peter) (Entered: 02/25/2022) |
| 03/21/2022 | 135 | TEXT ORDER granting 132 Motion for Extension of Time to Complete Discovery. Signed by Hon. Christina Reiss on 3/21/2022. (JLV) (Entered: 03/21/2022) |
| 04/25/2022 | 136 | NOTICE of Appearance by David A. Short on behalf of City of Buffalo, N.Y. (Short, David) (Entered: 04/25/2022) |
| 05/13/2022 | 137 | Consent MOTION for Extension of Time to Complete Discovery by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.(Short, David) (Entered: 05/13/2022) |
| 05/13/2022 | 138 | TEXT ORDER granting 137 Motion for Extension of Time to Complete Discovery. Signed by Hon. Christina Reiss on 5/13/2022. (CGJ) (Entered: 05/13/2022) |
| 06/15/2022 | 139 | NOTICE of Withdrawal of Attorney: David Alastair Short no longer appearing for Defendants Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.<br><br>CLERK TO FOLLOW UP.<br><br>(Short, David) (Entered: 06/15/2022) |

| 07/06/2022 | 140 | NOTICE of Appearance by Katelyn Amalie Rauh on behalf of All Defendants (Rauh, Katelyn) (Entered: 07/06/2022) |
|---|---|---|
| 07/28/2022 | 141 | Joint MOTION for Extension of Time to Complete Discovery by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Wilner, Claudia) (Entered: 07/28/2022) |
| 08/01/2022 | 142 | TEXT ORDER granting 141 Motion for Extension of Time to Complete Discovery. Signed by Hon. Christina Reiss on 8/1/2022. (JLV) (Entered: 08/01/2022) |
| 08/10/2022 | 143 | Consent MOTION for Discovery *for issuance of subpoena to NYS DMV* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Text of Proposed Order (Exhibit A to Motion), # 2 Exhibit B - Form of Subpoena, # 3 Declaration of Edward P Krugman iso Motion)(Krugman, Edward) (Entered: 08/10/2022) |
| 08/11/2022 | 144 | ORDER granting 143 Motion for Discovery. Signed by Hon. Christina Reiss on 8/11/2022. (Attachments: # 1 Exhibit A- Issued Subpoena) (JLV)<br><br>This was mailed to: Edward Krugman. (Entered: 08/11/2022) |
| 08/12/2022 | 145 | NOTICE of Withdrawal of Attorney: Katelyn Rauh no longer appearing for Defendants Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.<br><br>CLERK TO FOLLOW UP.<br><br>(Sahasrabudhe, Peter) (Entered: 08/12/2022) |
| 11/15/2022 | 146 | MOTION to Adjourn Deadlines in Case Management Order by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.(Sahasrabudhe, Peter) (Entered: 11/15/2022) |
| 11/17/2022 | 147 | TEXT ORDER granting 146 Motion to Adjourn Deadlines in Case Management Order. Signed by Hon. Christina Reiss on 11/17/2022. (JLV) (Entered: 11/17/2022) |
| 12/15/2022 | 148 | MOTION to Take Deposition from 11 Additional Witnesses by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Memorandum in Support of Motion for Leave to Take Additional Depositions, # 2 Declaration of Philip Irwin, # 3 Declaration of Claudia Wilner, # 4 Exhibit A to Wilner Decl., # 5 Exhibit B to Wilner Decl., # 6 Exhibit C to Wilner Decl., # 7 Exhibit D to Wilner Decl., # 8 Declaration of Edward Krugman, # 9 Exhibit 1 to Krugman Decl., # 10 Exhibit 2 to Krugman Decl., # 11 Exhibit 3 to Krugman Decl.)(Wilner, Claudia) (Entered: 12/15/2022) |
| 12/19/2022 | 149 | Letter filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon as to Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda . (Wilner, Claudia) (Entered: 12/19/2022) |

| 01/10/2023 | 150 | MOTION for Extension of Time to File Response/Reply as to 148 MOTION to Take Deposition from 11 Additional Witnesses by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. (Sahasrabudhe, Peter) (Entered: 01/10/2023) |
|---|---|---|
| 01/10/2023 | | E-Filing Notification: 150 MOTION; The assigned judge does not permit the electronic filing or mailing of letters unless a letter formatted request is submitted pursuant to Rule 7 (2)(c) to exceed page limits. Every filing must have a caption with the courts name, a case title and a file number and should be prepared following Local Rule of Civil Procedure 10 and Local Rule of Criminal Procedure 49 (d). (JLV) (Entered: 01/10/2023) |
| 01/10/2023 | 151 | MOTION for Extension of Time to File Response/Reply as to 148 MOTION to Take Deposition from 11 Additional Witnesses by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. (Sahasrabudhe, Peter) (Entered: 01/10/2023) |
| 01/12/2023 | 152 | TEXT ORDER granting 151 Motion for Extension of Time to File Response/Reply. Responses due by 1/17/2023. Signed by Hon. Christina Reiss on 1/12/2023. (JLV) (Entered: 01/12/2023) |
| 01/17/2023 | 153 | MEMORANDUM in Opposition re 148 MOTION to Take Deposition from 11 Additional Witnesses filed by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. (Sahasrabudhe, Peter) (Entered: 01/17/2023) |
| 01/24/2023 | 154 | REPLY to Response to Motion re 148 MOTION to Take Deposition from 11 Additional Witnesses filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Joachim, Jordan) (Entered: 01/24/2023) |
| 02/15/2023 | 155 | MOTION to appear pro hac vice *filed on behalf of Jessica M. Vosburgh* ( Filing fee $ 200 receipt number ANYWDC-4799006.) by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Motion For Pro Hac Vice Admission - Jessica M. Vosburgh, # 2 Jessica M. Vosburgh Petition for Pro Hac Vice Attorney Admission, # 3 Jessica M. Vosburgh - Sponsorship Form, # 4 Signed Attorney Oath - Jessica M. Vosburgh, # 5 Jessica M. Vosburgh Civility Form, # 6 Jessica M. Vosburgh ECF Registration)(Ezie, Andrea) (Entered: 02/15/2023) |
| 02/15/2023 | 156 | MOTION to appear pro hac vice *filed on behalf of Andrew J. Timmick* ( Filing fee $ 200 receipt number ANYWDC-4799052.) by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Motion for Pro Hac Vice Admission for Andrew J. Timmick, # 2 Andrew J. Timmick Petition for Pro Hac Vice Attorney Admission, # 3 Attorney Sponsorship Form for Andrew J. Timmick, # 4 Andrew J. Timmick Signed Attorney Oath, # 5 Andrew J. Timmick Civility Principles, # 6 Andrew J. Timmick ECF Registration)(Ezie, Andrea) (Entered: 02/15/2023) |
| 02/16/2023 | | E-Filing Notification: 155 MOTION to appear pro hac vice *filed on behalf of Jessica M. Vosburgh*, 156 MOTION to appear pro hac vice *filed on behalf of Andrew J. Timmick* ACTION REQUIRED: As required by L.R. Civ. P. 83.2(a)(1), PHV attorneys are required to obtain local counsel or submit a motion for waiver of that requirement. File appropriate documents using Docketing Event: Continuation of Exhibits. (DDS) (Entered: 02/16/2023) |

| 03/09/2023 | 157 | CONTINUATION OF EXHIBITS to E-Filing Notification, *Local Counsel Letters for Jessica Vosburgh & Andrew Timmick, pursuant to L.R. Civ. P. 83.2(a)(1)*. (Attachments: # 1 Local Counsel Letter)(Ezie, Andrea) (Entered: 03/09/2023) |
| 03/10/2023 | 158 | MOTION for Extension of Time to Complete Discovery by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.(Sahasrabudhe, Peter) (Entered: 03/10/2023) |
| 03/28/2023 | 159 | TEXT ORDER granting 158 Motion for Extension of Time to Complete Discovery. Signed by Hon. Christina Reiss on 3/28/2023. (JLV) (Entered: 03/28/2023) |
| 04/10/2023 | 160 | TEXT ORDER: Recognizing that the scope of discovery is broad under Fed. R. Civ. P. 26, but also recognizing Plaintiffs' initial request for forty-two depositions was burdensome, the court initially limited Plaintiffs to twenty depositions. Plaintiffs now seek to take an additional eleven depositions. Although this is a complex case and alleges constitutional violations that took place over a period of several years, not all of the depositions sought are necessary and commensurate with Plaintiffs' needs for discovery. The court is also mindful of the burden on Defendants. Plaintiffs' motion for leave to take additional depositions 148 is thus GRANTED IN PART AND DENIED IN PART. Plaintiffs may depose Officers Michael Healy, Jared Domaracki, Charles Miller, and Adam Wigdorski, as well as Octavio Villegas and Donna Estrich. Plaintiffs may also identify three deponents from the list of Officers Michael Acquino, Kelvin Sharpe, Richard Hy, Justin Tedesco, and Andrew Whiteford. It is unlikely that the court will authorize additional depositions absent compelling circumstances in light of the depositions authorized to date. Signed by Hon. Christina Reiss on 4/10/2023. (JLV) (Entered: 04/10/2023) |
| 04/27/2023 | 161 | NOTICE of Appearance by Cheyenne Nicole Freely on behalf of All Defendants (Freely, Cheyenne) (Entered: 04/27/2023) |
| 05/11/2023 | 162 | Consent MOTION for Discovery *for Issuance of a Second Updating Subpoena to NY DMV* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorothea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit A - Proposed Order, # 2 Exhibit B - Form of Subpoena, # 3 Declaration of Edward Krugman iso Motion)(Krugman, Edward) (Entered: 05/11/2023) |
| 05/12/2023 | 163 | ORDER granting 162 Motion for Discovery. Signed by Hon. Christina Reiss on 5/11/2023. (Attachments: # 1 Exhibit A- Issued Subpoena) (CGJ)<br><br>This was mailed to: Claudia Wilner. (Entered: 05/12/2023) |
| 05/18/2023 | 164 | MOTION to appear pro hac vice *filed on behalf of Christine Nelson* ( Filing fee $ 200 receipt number ANYWDC-4877527.) by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorothea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons. (Attachments: # 1 Motion for Pro Hac Vice Admission for Christine Nelson, # 2 Christine Nelson Petition for Pro Hac Vice Attorney Admission, # 3 Attorney Sponsorship Form for Christine Nelson, # 4 Christine Nelson Signed Attorney Oath, # 5 Christine Nelson Civility Principles, # 6 Christine Nelson ECF Registration, # 7 Local Counsel Letter)(Williams, Keisha) (Entered: 05/18/2023) |
| 05/18/2023 | 165 | TEXT ORDER granting 164 Motion for Pro Hac Vice. Signed by Hon. Christina Reiss on 5/18/2023. (CGJ) (Entered: 05/18/2023) |
| 06/01/2023 | 166 | MOTION to Permit Sufficient Time to Depose Named Defendant Byron Lockwood by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorothea Franklin, De'Jon Hall, |

| | | |
|---|---|---|
| | | Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Claudia Wilner, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D)(Wilner, Claudia) (Entered: 06/01/2023) |
| 06/14/2023 | 167 | MOTION to Modify the Scheduling Order by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Joachim, Jordan) (Entered: 06/14/2023) |
| 06/15/2023 | 168 | TEXT ORDER granting 167 Motion to Modify the Scheduling Order. Signed by Hon. Christina Reiss on 6/15/2023. (JLV) (Entered: 06/15/2023) |
| 06/15/2023 | 169 | RESPONSE in Opposition re 166 MOTION to Permit Sufficient Time to Depose Named Defendant Byron Lockwood filed by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. (Attachments: # 1 Exhibit A- Young Excerpt, # 2 Exhibit B-Brinkworth Excerpts, # 3 Exhibit C Part 1- Derenda First Session, # 4 Exhibit C Part 2- Derenda Second Session, # 5 Exhibit C Part 3- Derenda Third Session, # 6 Memorandum in Support of Defendants' Opposition to Plaintiffs' Motion to Question Defendant Lockwood for Fourteen Hours)(Sahasrabudhe, Peter) (Entered: 06/15/2023) |
| 06/22/2023 | 170 | REPLY/RESPONSE to re 166 MOTION to Permit Sufficient Time to Depose Named Defendant Byron Lockwood *[Reply in Further Support of Plaintiffs' Motion]* filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Joachim, Jordan) (Entered: 06/22/2023) |
| 06/29/2023 | 171 | ORDER granting in part and denying in part Plaintiffs' 166 Motion to Permit Sufficient Time to Depose Defendant Byron Lockwood. Signed by Hon. Christina Reiss on 6/29/2023. (JLV) (Entered: 06/29/2023) |
| 07/17/2023 | | E-Filing Notification: ***Motions terminated: 155 MOTION to appear pro hac vice *filed on behalf of Jessica M. Vosburgh* 156 MOTION to appear pro hac vice *filed on behalf of Andrew J. Timmick.* ACTION REQUIRED: Refile motions, exhibits and letters requesting waiver of local counsel for each attorney. (DDS) (DDS) (Entered: 07/17/2023) |
| 08/07/2023 | 172 | Consent MOTION to Amend/Correct 118 Order on Motion for Miscellaneous Relief *[Consent Motion for Order Supplementing Protective Order Governing Production of Attorneys' Eyes Only and Confidential Materials]* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Text of Proposed Order Supplementing the Modified Protective Order at ECF Dkt. No. 118) (Joachim, Jordan) (Entered: 08/07/2023) |
| 08/08/2023 | 173 | ORDER granting 172 Motion Supplementing Protective Order Governing Production of Attorneys' Eyes Only Confidential Materials. Signed by Hon. Christina Reiss on 8/8/23. (RE) (Entered: 08/08/2023) |
| 09/08/2023 | 174 | Consent MOTION for Extension of Time to Complete Discovery *and to Extend Deadlines in the Court's Case Management Order* by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. (Sahasrabudhe, Peter) (Entered: 09/08/2023) |
| 09/11/2023 | 175 | TEXT ORDER granting 174 Motion for Extension of Time to Complete Discovery and to Extend Deadlines in the Court's Case Management Order. Signed by Hon. Christina Reiss |

| | | on 9/11/2023. (JLV) (Entered: 09/11/2023) |
|---|---|---|
| 10/24/2023 | 176 | Consent MOTION for Extension of Time to Complete Discovery by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.(Sahasrabudhe, Peter) (Entered: 10/24/2023) |
| 10/27/2023 | 177 | TEXT ORDER granting 176 Motion for Extension of Time to Complete Discovery. Signed by Hon. Christina Reiss on 10/27/2023. (JLV) (Entered: 10/27/2023) |
| 10/31/2023 | 178 | MOTION to Withdraw as Attorney *for Plaintiffs* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons.(Williams, Keisha) (Entered: 10/31/2023) |
| 11/02/2023 | 179 | TEXT ORDER granting 178 Motion to Withdraw as Attorney. Attorney Keisha Alecia Williams terminated. Signed by Hon. Christina Reiss on 11/2/2023. (JLV) (Entered: 11/02/2023) |
| 11/06/2023 | 180 | NOTICE of Appearance by Matthew Alan Parham on behalf of All Plaintiffs (Parham, Matthew) (Entered: 11/06/2023) |
| 11/20/2023 | 181 | Consent MOTION for Extension of Time to Complete Discovery by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.(Sahasrabudhe, Peter) (Entered: 11/20/2023) |
| 11/29/2023 | 182 | TEXT ORDER granting 181 Stipulated Motion for Adjournment of Deadlines in Case Management Order. Signed by Hon. Christina Reiss on 11/29/2023. (LAW)<br><br>Clerk to Follow up (Entered: 11/29/2023) |
| 12/11/2023 | 183 | MOTION to Take Deposition from Buffalo Police Benevolent Association by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Matthew A. Parham, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D)(Parham, Matthew) (Entered: 12/11/2023) |
| 12/11/2023 | 184 | MOTION to Expedite *Hearing on Motion for Leave to Take the Deposition of the Buffalo Police Benevolent Association* by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Text of Proposed Order) (Parham, Matthew) (Entered: 12/11/2023) |
| 12/12/2023 | 185 | TEXT ORDER granting 184 Motion to Expedite. Signed by Hon. Christina Reiss on 12/12/2023. (JLV) (Entered: 12/12/2023) |
| 12/12/2023 | 186 | TEXT ORDER granting Plaintiff's 183 MOTION to Take Deposition from Buffalo Police Benevolent Association. SO ORDERED. Issued by Hon. Christina Reiss on 12/12/2023. (JDK) (Entered: 12/12/2023) |
| 01/03/2024 | 187 | MOTION to Adjourn Deadlines in Case Management Order by City of Buffalo, N.Y.. (Sahasrabudhe, Peter) (Entered: 01/03/2024) |
| 01/16/2024 | 188 | TEXT ORDER granting 187 Motion to Adjourn Deadlines in Case Management Order. Signed by Hon. Christina Reiss on 1/16/2024. (JLV) (Entered: 01/16/2024) |
| 02/19/2024 | 189 | Consent MOTION for Extension of Time to Complete Discovery by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip |

| | | |
|---|---|---|
| | | Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.(Sahasrabudhe, Peter) (Entered: 02/19/2024) |
| 02/22/2024 | 190 | TEXT ORDER granting 189 Motion for Extension of Time to Complete Discovery. Signed by Hon. Christina Reiss on 2/22/2024. (TMK) (Entered: 02/22/2024) |
| 03/21/2024 | 191 | Consent MOTION for Extension of Time to Complete Discovery by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.(Freely, Cheyenne) (Entered: 03/21/2024) |
| 03/25/2024 | 192 | TEXT ORDER granting 191 Motion for Extension of Time to Complete Discovery. Signed by Hon. Christina Reiss on 3/25/2024. (LB) (Entered: 03/25/2024) |
| 04/12/2024 | 193 | MOTION for Leave to File Excess Pages by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Parham, Matthew) (Entered: 04/12/2024) |
| 04/12/2024 | 194 | Joint MOTION to Adjourn Remaining Deadlines in Case Managemnet Order by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.(Sahasrabudhe, Peter) (Entered: 04/12/2024) |
| 04/15/2024 | 195 | TEXT ORDER granting 193 Motion for Leave to File Excess Pages. Signed by Hon. Christina Reiss on 4/15/24. (DDS) (Entered: 04/15/2024) |
| 04/16/2024 | 196 | TEXT ORDER granting 194 Motion to Adjourn Remaining Deadlines in Case Management Order. Signed by Hon. Christina Reiss on 4/16/24. (DDS) (Entered: 04/16/2024) |
| 04/30/2024 | | E-Filing Notification: Motion Terminated: 194 Motion to Adjourn Remaining Deadlines in Case Management Order. Signed by Hon. Christina Reiss on 4/16/24. (DDS) (DDS) (Entered: 04/30/2024) |
| 05/14/2024 | 197 | MOTION to appear pro hac vice *filed on behalf of Philip A. Irwin* ( Filing fee $ 200 receipt number ANYWDC-5181730.) by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Parham, Matthew) (Entered: 05/14/2024) |
| 05/14/2024 | 198 | MOTION to appear pro hac vice *filed on behalf of Andrew J. Timmick* ( Filing fee $ 200 receipt number ANYWDC-5181732.) by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Parham, Matthew) (Entered: 05/14/2024) |
| 05/15/2024 | 199 | TEXT ORDER granting 197 Motion for Pro Hac Vice; granting 198 Motion for Pro Hac Vice. Signed by Hon. Christina Reiss on 5/15/24. (DDS) (Entered: 05/15/2024) |
| 05/16/2024 | 200 | Consent MOTION to adjourn case deadlines by Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Wilner, Claudia) (Entered: 05/16/2024) |
| 05/17/2024 | 201 | TEXT ORDER granting 200 Motion. Signed by Hon. Christina Reiss on 5/17/24. (DDS) (Entered: 05/17/2024) |

| 05/29/2024 | 202 | MOTION to Certify Class by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Declaration of Joseph Bonds, # 2 Declaration of Jasmine Evans, # 3 Declaration of Dorethea Franklin, # 4 Declaration of De'Jon Hall, # 5 Declaration of Charles Palmer, # 6 Declaration of Shaketa Redden, # 7 Declaration of Shirley Sarmiento, # 8 Declaration of Taniqua Simmons, # 9 Declaration of Ebony Yeldon)(Joachim, Jordan) (Entered: 05/29/2024) |
| --- | --- | --- |
| 05/29/2024 | 203 | DECLARATION signed by Claudia Wilner re 202 MOTION to Certify Class filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20)(Joachim, Jordan) (Entered: 05/29/2024) |
| 05/29/2024 | 204 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. to 203 Declaration,,, filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit 22, # 2 Exhibit 23, # 3 Exhibit 24, # 4 Exhibit 25, # 5 Exhibit 26, # 6 Exhibit 27, # 7 Exhibit 28, # 8 Exhibit 29, # 9 Exhibit 30, # 10 Exhibit 31, # 11 Exhibit 32, # 12 Exhibit 33, # 13 Exhibit 34, # 14 Exhibit 35, # 15 Exhibit 36, # 16 Exhibit 37, # 17 Exhibit 38, # 18 Exhibit 39, # 19 Exhibit 40, # 20 Exhibit 41)(Joachim, Jordan) (Entered: 05/29/2024) |
| 05/29/2024 | 205 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. to 203 Declaration,,, filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit 43, # 2 Exhibit 44, # 3 Exhibit 45, # 4 Exhibit 46, # 5 Exhibit 47, # 6 Exhibit 48, # 7 Exhibit 49, # 8 Exhibit 50, # 9 Exhibit 51, # 10 Exhibit 52, # 11 Exhibit 53, # 12 Exhibit 54, # 13 Exhibit 55, # 14 Exhibit 56, # 15 Exhibit 57, # 16 Exhibit 58, # 17 Exhibit 59, # 18 Exhibit 60, # 19 Exhibit 61, # 20 Exhibit 62)(Joachim, Jordan) (Entered: 05/29/2024) |
| 05/29/2024 | 206 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. to 203 Declaration,,, filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit 64, # 2 Exhibit 65, # 3 Exhibit 66, # 4 Exhibit 67, # 5 Exhibit 68, # 6 Exhibit 69, # 7 Exhibit 70, # 8 Exhibit 71, # 9 Exhibit 72, # 10 Exhibit 73, # 11 Exhibit 74, # 12 Exhibit 75, # 13 Exhibit 76, # 14 Exhibit 77, # 15 Exhibit 78, # 16 Exhibit 79, # 17 Exhibit 80, # 18 Exhibit 81, # 19 Exhibit 82, # 20 Exhibit 83)(Joachim, Jordan) (Entered: 05/29/2024) |
| 05/29/2024 | 207 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. to 203 Declaration,,, filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles |

| | | |
|---|---|---|
| | | Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit 85, # 2 Exhibit 86, # 3 Exhibit 87, # 4 Exhibit 88, # 5 Exhibit 89, # 6 Exhibit 90, # 7 Exhibit 91, # 8 Exhibit 92, # 9 Exhibit 93, # 10 Exhibit 94, # 11 Exhibit 95, # 12 Exhibit 96, # 13 Exhibit 97, # 14 Exhibit 98, # 15 Exhibit 99, # 16 Exhibit 100, # 17 Exhibit 101, # 18 Exhibit 102, # 19 Exhibit 103, # 20 Exhibit 104) (Joachim, Jordan) (Entered: 05/29/2024) |
| 05/29/2024 | 208 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. to 203 Declaration,,, filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit 106, # 2 Exhibit 107, # 3 Exhibit 108, # 4 Exhibit 109, # 5 Exhibit 110, # 6 Exhibit 111, # 7 Exhibit 112, # 8 Exhibit 113, # 9 Exhibit 114, # 10 Exhibit 115, # 11 Exhibit 116, # 12 Exhibit 117, # 13 Exhibit 118, # 14 Exhibit 119, # 15 Exhibit 120, # 16 Exhibit 121, # 17 Exhibit 122, # 18 Exhibit 123, # 19 Exhibit 124, # 20 Exhibit 125)(Joachim, Jordan) (Entered: 05/29/2024) |
| 05/29/2024 | 209 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. to 203 Declaration,,, filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Attachments: # 1 Exhibit 127, # 2 Exhibit 128, # 3 Exhibit 129, # 4 Exhibit 130, # 5 Exhibit 131, # 6 Exhibit 132, # 7 Exhibit 133, # 8 Exhibit 134, # 9 Exhibit 135, # 10 Exhibit 136, # 11 Exhibit 137, # 12 Exhibit 138, # 13 Exhibit 139, # 14 Exhibit 140, # 15 Exhibit 141, # 16 Exhibit 142, # 17 Exhibit 143, # 18 Exhibit 144, # 19 Exhibit 145) (Joachim, Jordan) (Entered: 05/29/2024) |
| 05/29/2024 | 210 | DECLARATION signed by Edward P. Krugman re 202 MOTION to Certify Class filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6A, # 7 Exhibit 6B, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14) (Joachim, Jordan) (Entered: 05/29/2024) |
| 05/29/2024 | 211 | MEMORANDUM in Support re 202 MOTION to Certify Class filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Joachim, Jordan) (Entered: 05/29/2024) |
| 05/30/2024 | 212 | AMENDED DOCUMENT by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. Amendment to 203 Declaration,,, *Amended Exhibit 3*. (Joachim, Jordan) (Entered: 05/30/2024) |
| 06/06/2024 | 213 | STIPULATION *[Stipulated Motion for Briefing Schedule on Class Certification]* by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. (Sahasrabudhe, Peter) (Entered: 06/06/2024) |
| 06/17/2024 | 214 | TEXT ORDER granting 213 Stipulation. Defendants' opposition to Plaintiffs' motion for class certification (Doc. 202) shall be filed no later than July 3, 2024. Plaintiffs' reply |

| | | shall be filed no later than July 31, 2024. Signed by Hon. Christina Reiss on 6/17/2024. (CGJ) (Entered: 06/17/2024) |
|---|---|---|
| 06/18/2024 | 215 | Joint MOTION to Adjourn Remaining Deadlines in Case Managemnet Order by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young.(Sahasrabudhe, Peter) (Entered: 06/18/2024) |
| 06/20/2024 | 216 | TEXT ORDER granting 215 Motion to Adjourn Remaining Deadlines in Case Management Order. Signed by Hon. Christina Reiss on 6/20/2024. (CGJ) (Entered: 06/20/2024) |
| 06/26/2024 | 217 | STIPULATION *[Stipulated Motion to Amend Briefing Schedule Deadlines on Class Certification]* by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. (Sahasrabudhe, Peter) (Entered: 06/26/2024) |
| 06/27/2024 | 218 | TEXT ORDER GRANTING re 217 STIPULATED MOTION TO AMEND BRIEFING SCHEDULE DEADLINES ON CLASS CERTIFICATION, filed by Byron C Lockwood, Daniel Derenda, Unknown Officers 1-20, Aaron Young, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Kevin Brinkworth, Philip Serafini, City of Buffalo, N.Y. Signed by Hon. Christina Reiss on 6/27/24. (DDS) (Entered: 06/27/2024) |
| 07/12/2024 | 219 | DECLARATION re 202 MOTION to Certify Class filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda *[Freely Declaration in Opposition to Motion for Class Certification]* filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29)(Freely, Cheyenne) (Entered: 07/12/2024) |
| 07/12/2024 | 220 | MEMORANDUM in Opposition re 202 MOTION to Certify Class *[City of Buffalo Defendants' Memorandum of Law in Opposition to Motion for Class Certification]* filed by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. (Freely, Cheyenne) (Entered: 07/12/2024) |
| 07/25/2024 | 221 | MOTION for Leave to File Excess Pages by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Parham, Matthew) (Entered: 07/25/2024) |
| 07/30/2024 | 222 | TEXT ORDER granting 221 Motion for Leave to File Excess Pages. Signed by Chief District Judge Christina Clair Reiss on 7/30/24. (DDS) Modified on 8/1/2024 to show as Text Order (DDS). (Entered: 07/30/2024) |
| 08/01/2024 | | E-Filing Notification: 222 TEXT ORDER Modified on 8/1/2024 to show as Text Order (DDS). (DDS) (Entered: 08/01/2024) |
| 08/09/2024 | 223 | REPLY to Response to Motion re 202 MOTION to Certify Class filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles |

9/24/25, 1:53 PM

CM/ECF LIVE(C) - U.S. District Court:nywd

| | | |
|---|---|---|
| | | Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Wilner, Claudia) (Entered: 08/09/2024) |
| 08/09/2024 | 224 | DECLARATION re 202 MOTION to Certify Class filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall filed by Shirley Sarmiento, Shaketa Redden, Black Love Resists in the Rust, Jane Doe, Dorethea Franklin, Charles Palmer, Taniqua Simmons, Ebony Yeldon, Joseph Bonds, De'Jon Hall. (Attachments: # 1 Exhibit A)(Wilner, Claudia) (Entered: 08/09/2024) |
| 08/14/2024 | 225 | SCHEDULING NOTICE: Motion Hearing re 220 MOTION to Certify Class filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon on Thursday, December 12, 2024 at 1:00 PM before Hon. Christina Reiss to be held by Zoom for Government. The Court will send counsel a separate email link to join the conference. (JLV) (Entered: 08/14/2024) |
| 08/14/2024 | 226 | Joint MOTION Amend Scheduling Order by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Wilner, Claudia) (Entered: 08/14/2024) |
| 08/15/2024 | 227 | TEXT ORDER granting 226 Motion to Amend Scheduling Order. Signed by Chief District Judge Christina Clair Reiss on 8/15/24. (DDS) (Entered: 08/15/2024) |
| 09/10/2024 | 228 | Joint MOTION to Amend Scheduling Order by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Wilner, Claudia) (Entered: 09/10/2024) |
| 09/13/2024 | 229 | TEXT ORDER granting 228 Motion to Amend Scheduling Order. Signed by Chief District Judge Christina Clair Reiss on 9/13/2024. (DDS) (Entered: 09/13/2024) |
| 09/19/2024 | 230 | SCHEDULING NOTICE: <br><br> **IN-PERSON** Motion Hearing set for 202 MOTION to Certify Class on 10/23/2024 at 10:00 AM in Buffalo Courtroom, 9th Floor East, 2 Niagara Square, Buffalo, NY before Chief District Judge Christina Reiss. <br><br> The previously scheduled Zoom proceeding on December 12, 2024 is hereby cancelled. (JLV) (Entered: 09/19/2024) |
| 10/02/2024 | 231 | Joint MOTION for Extension of Time to Complete Discovery by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon and all Defendants.(Joachim, Jordan) Modified on 10/3/2024 (DDS). (Entered: 10/02/2024) |
| 10/03/2024 | 232 | TEXT ORDER granting 231 Motion for Extension of Time to Complete Discovery. Signed by Chief District Judge Christina Clair Reiss on 10/3/2024. (DDS) (Entered: 10/03/2024) |
| 10/07/2024 | 233 | NOTICE by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young re 219 Declaration,,,, 220 Memorandum in Opposition to Motion, *[Defendants' Notice of Supplemental Authority]* (Attachments: # 1 Exhibit A)(Freely, Cheyenne) (Entered: 10/07/2024) |
| 10/14/2024 | 234 | REPLY/RESPONSE to re 233 Notice (Other), filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa |

| | | |
|---|---|---|
| | | Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon. (Wilner, Claudia) (Entered: 10/14/2024) |
| 10/14/2024 | [235](#) | NOTICE by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon *of Supplemental Authority* (Attachments: # [1](#) Exhibit A)(Wilner, Claudia) (Entered: 10/14/2024) |
| 10/15/2024 | [236](#) | Consent MOTION to Authorize Remote Hearing Participation by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Wilner, Claudia) (Entered: 10/15/2024) |
| 10/16/2024 | 237 | TEXT ORDER granting [236](#) Motion to Authorize Remote Hearing Participation. Signed by Chief District Judge Christina Clair Reiss on 10/16/2024. (DDS) (Entered: 10/16/2024) |
| 10/23/2024 | 238 | Minute Entry for proceedings held before Chief District Judge Christina Clair Reiss: Motion Hearing held on 10/23/2024 re [202](#) MOTION to Certify Class. Claudia Wilner, Esq., Anjana Malhotra, Esq., Jordan Joachim, Esq., Christine Nelson, Esq., and Matthew Parham, Esq., present for pltf. Hugh Ross, Esq., Cheyenne Frely, Esq., and Peter Sahasrabhe, Esq., present for dft. The court makes inquiries. Statements by counsel. ORDERED: plaintiffs may file supplemental briefing. Dft's have 14 days to respond to briefing. Court will take the matter under advisement thereafter. (Court Reporter Diane Martens.) (JR) (Entered: 10/24/2024) |
| 11/11/2024 | [239](#) | Consent MOTION to Amend Schedule by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe.(Wilner, Claudia) (Entered: 11/11/2024) |
| 11/15/2024 | 240 | TEXT ORDER granting [239](#) Motion to Amend Schedule. Signed by Chief District Judge Christina Clair Reiss on 11/15/2024. (DDS) (Entered: 11/15/2024) |
| 11/19/2024 | [241](#) | MEMORANDUM/BRIEF re [202](#) MOTION to Certify Class *(Supplemental)* by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Wilner, Claudia) (Entered: 11/19/2024) |
| 11/21/2024 | [242](#) | Consent MOTION to Adjourn Court-Ordered Deadlines in Case Management Order by Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown Officers 1-20, City of Buffalo, N.Y., Byron B Brown, Byron C Lockwood.(Sahasrabudhe, Peter) (Entered: 11/21/2024) |
| 11/25/2024 | 243 | TEXT ORDER granting [242](#) Motion to Adjourn. Signed by Chief District Judge Christina Clair Reiss on 11/25/2024. (CGJ) (Entered: 11/25/2024) |
| 12/04/2024 | [244](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion Hearing held on October 23, 2024, before Judge Christina Clair Reiss. Court Reporter Diane S. Martens, dmartensreporter@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporterbefore the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/26/2024. Redacted Transcript Deadline set for 1/6/2025. Release of Transcript Restriction set for 3/4/2025. (DSM) (Entered: 12/04/2024) |
| 12/06/2024 | [245](#) | REPLY/RESPONSE to re [241](#) Memorandum/Brief, *[Brief in Response to Plaintiffs' Supplemental Submission in Support of Class Certification]* filed by Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory |

| | | |
|---|---|---|
| | | Personnel 1-10, Unknown Officers 1-20, City of Buffalo, N.Y., Byron B Brown, Byron C Lockwood. (Attachments: # 1 Declaration of Cheyenne Freely, Esq., # 2 Exhibit 1) (Freely, Cheyenne) (Entered: 12/06/2024) |
| 12/18/2024 | 246 | Consent MOTION to Adjourn Deadline in Case Management Order by Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown Officers 1-20, City of Buffalo, N.Y., Byron B Brown, Byron C Lockwood.(Sahasrabudhe, Peter) (Entered: 12/18/2024) |
| 12/20/2024 | 247 | TEXT ORDER granting 246 Motion to Adjourn Deadlines in Case Management Order. Signed by Chief District Judge Christina Clair Reiss on 2/20/2024. (DDS) (Entered: 12/20/2024) |
| 01/28/2025 | 248 | Joint MOTION to Adjourn Deadlines in Case Management Order *(Stipulated)* by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Taniqua Simmons, De'Jon Hall, Jane Doe.(Joachim, Jordan) (Entered: 01/28/2025) |
| 01/31/2025 | 249 | TEXT ORDER granting 248 Motion to Adjourn Deadlines in Case Management Order. Signed by Chief District Judge Christina Clair Reiss on 1/31/2025. (DDS) Modified on 1/31/2025 (DDS). (Entered: 01/31/2025) |
| 01/31/2025 | | E-Filing Notification: 249 TEXT ORDER granting 248 Motion to Adjourn Deadlines in Case Management Order. Signed by Chief District Judge Christina Clair Reiss on 1/31/2025. (DDS) Modified to correct entry title on 1/31/2025 (DDS). (DDS) (Entered: 01/31/2025) |
| 02/04/2025 | 250 | Letter filed by Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown Officers 1-20, City of Buffalo, N.Y., Byron B Brown, Byron C Lockwood *(Letter to Judge Requesting Permission to Exceed Page Limit)*. (Freely, Cheyenne) (Entered: 02/04/2025) |
| 02/05/2025 | 251 | TEXT ORDER GRANTING re 250 Letter, filed by Byron C Lockwood, Daniel Derenda, Unknown Officers 1-20, Aaron Young, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Kevin Brinkworth, Philip Serafini, City of Buffalo, N.Y. Signed by Chief District Judge Christina Clair Reiss on 2/5/2025. (DDS) (Entered: 02/05/2025) |
| 02/07/2025 | 252 | MOTION for Summary Judgment by Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown Officers 1-20, City of Buffalo, N.Y., Byron B Brown, Byron C Lockwood. (Attachments: # 1 Declaration of Peter A. Sahasrabudhe, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27, # 29 Exhibit 28, # 30 Exhibit 29, # 31 Exhibit 30, # 32 Exhibit 31, # 33 Exhibit 32, # 34 Exhibit 33, # 35 Exhibit 34, # 36 Exhibit 35, # 37 Exhibit 36, # 38 Exhibit 37, # 39 Exhibit 38, # 40 Exhibit 39, # 41 Exhibit 40, # 42 Exhibit 41, # 43 Exhibit 42, # 44 Exhibit 43, # 45 Statement of Undisputed Facts, # 46 Memorandum in Support of Defendants' Motion for Summary Judgment)(Sahasrabudhe, Peter) (Entered: 02/07/2025) |
| 02/07/2025 | 253 | MOTION for Partial Summary Judgment *against the City of Buffalo* by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment against the City of Buffalo, # 2 Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment, # 3 Appendix to Local Rule 56 Statement of |

| | | |
|---|---|---|
| | | Material Facts, # 4 Declaration of Edward P. Krugman, # 5 Declaration of Charles Palmer, # 6 Declaration of De'Jon Hall, # 7 Declaration of Dorethea Franklin, # 8 Declaration of Ebony Yeldon, # 9 Declaration of Jasmine Evans, # 10 Declaration of Joseph Bonds, # 11 Declaration of Shaketa Redden, # 12 Declaration Shirley Sarmiento, # 13 Declaration Taniqua Simmons)(Irwin, Philip) (Entered: 02/07/2025) |
| 02/07/2025 | 254 | DECLARATION signed by Philip Irwin re 253 MOTION for Partial Summary Judgment *against the City of Buffalo* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32)(Irwin, Philip) (Entered: 02/07/2025) |
| 03/13/2025 | 255 | Consent MOTION for Extension of Time to Complete Discovery by Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown Officers 1-20, City of Buffalo, N.Y., Byron B Brown, Byron C Lockwood.(Sahasrabudhe, Peter) (Entered: 03/13/2025) |
| 03/14/2025 | 256 | TEXT ORDER granting 255 Motion for Extension of Time to Complete Discovery. Signed by Hon. Christina Reiss on 3/14/25. (RE) (Entered: 03/14/2025) |
| 04/01/2025 | 257 | Joint MOTION to Adjourn Deadlines in Case Management Order *(Stipulated)* by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Joachim, Jordan) (Entered: 04/01/2025) |
| 04/01/2025 | 258 | MOTION for Leave to File Excess Pages *for Opposition to Defendants' Motion for Summary Judgment* by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe.(Joachim, Jordan) (Entered: 04/01/2025) |
| 04/02/2025 | 259 | TEXT ORDER granting 257 Motion to Adjourn. Signed by District Judge Christina Reiss on 4/2/25. (RE) (Entered: 04/02/2025) |
| 04/02/2025 | 260 | TEXT ORDER granting 258 Motion for Leave to File Excess Pages. Signed by District Judge Christina Reiss on 4/2/25. (RE) (Entered: 04/02/2025) |
| 04/22/2025 | 261 | OPINION AND ORDER granting in part and denying in part 202 Motion to Certify Class. Signed by Chief District Judge Christina Clair Reiss on 4/22/25. (JHF) (Entered: 04/22/2025) |
| 04/22/2025 | 262 | OPINION AND ORDER granting in part and denying in part Plaintiffs' 202 Motion to Certify Class. Signed by District Judge Christina Clair Reiss on 4/22/2025. (DDS) (Entered: 04/22/2025) |
| 04/23/2025 | | E-filing Notification: Please disregard 262 Opinion and Order: Duplicate order inadvertently entered on the docket. (DDS) (Entered: 04/23/2025) |
| 04/25/2025 | 263 | Joint MOTION to Adjourn Deadlines in Case Management Order (Stipulated) by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa |

| | | |
|---|---|---|
| | | Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Joachim, Jordan) (Entered: 04/25/2025) |
| 05/06/2025 | 264 | TEXT ORDER granting 263 Motion to Adjourn Deadlines in Case Management Order. Signed by Hon. District Judge Christina Reiss on 5/6/25. (RE) (Entered: 05/06/2025) |
| 05/06/2025 | 265 | NOTICE by Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown Officers 1-20, City of Buffalo, N.Y., Byron B Brown, Byron C Lockwood re 261 Order on Motion to Certify Class *[Notice of Petition for Leave to Appeal to the Second Circuit]* (Sahasrabudhe, Peter) (Entered: 05/06/2025) |
| 05/14/2025 | | USCA Case Number 25-1191 opened on 5/8/25 re 265 Notice of Petition for Leave to Appeal to the Second Circuit. (RE) (Entered: 05/14/2025) |
| 05/30/2025 | 266 | RESPONSE in Opposition re 253 MOTION for Partial Summary Judgment *against the City of Buffalo [City of Buffalo Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment]* filed by Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown Officers 1-20, City of Buffalo, N.Y., Byron B Brown, Byron C Lockwood. (Freely, Cheyenne) (Entered: 05/30/2025) |
| 05/30/2025 | 267 | STATEMENT OF FACTS *[City Defendants' Responses to Plaintiff's Rule 56(A) Statements]* by Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown Officers 1-20, City of Buffalo, N.Y., Byron B Brown, Byron C Lockwood Related document: 253 Motion for Partial Summary Judgment,,,. (Freely, Cheyenne) (Entered: 05/30/2025) |
| 05/30/2025 | 268 | DECLARATION signed by Andrew J. Timmick re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 269 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 21-40 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 22, # 2 Exhibit 23, # 3 Exhibit 24, # 4 Exhibit 25, # 5 Exhibit 26, # 6 Exhibit 27, # 7 Exhibit 28, # 8 Exhibit 29, # 9 Exhibit 30, # 10 Exhibit 31, # 11 Exhibit 32, # 12 Exhibit 33, # 13 Exhibit 34, # 14 Exhibit 35, # 15 Exhibit 36, # 16 Exhibit 37, # 17 Exhibit 38, # 18 Exhibit 39, # 19 Exhibit 40)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 270 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 41-60* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 42, # 2 Exhibit 43, # 3 Exhibit 44, # 4 Exhibit 45, # 5 |

| | | |
|---|---|---|
| | | Exhibit 46, # 6 Exhibit 47, # 7 Exhibit 48, # 8 Exhibit 49, # 9 Exhibit 50, # 10 Exhibit 51, # 11 Exhibit 52, # 12 Exhibit 53, # 13 Exhibit 54, # 14 Exhibit 55, # 15 Exhibit 56, # 16 Exhibit 57, # 17 Exhibit 58, # 18 Exhibit 59, # 19 Exhibit 60)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 271 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, Jane Doe. to 268 Declaration,,, *Exhibits 61 - 80 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, Jane Doe. (Attachments: # 1 Exhibit 62, # 2 Exhibit 63, # 3 Exhibit 64, # 4 Exhibit 65, # 5 Exhibit 66, # 6 Exhibit 67, # 7 Exhibit 68, # 8 Exhibit 69, # 9 Exhibit 70, # 10 Exhibit 71, # 11 Exhibit 72, # 12 Exhibit 73, # 13 Exhibit 74, # 14 Exhibit 75, # 15 Exhibit 76, # 16 Exhibit 77, # 17 Exhibit 78, # 18 Exhibit 79, # 19 Exhibit 80)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 272 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, Jane Doe. to 268 Declaration,,, *Exhibits 81-100 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, Jane Doe. (Attachments: # 1 Exhibit 82, # 2 Exhibit 83, # 3 Exhibit 84, # 4 Exhibit 85, # 5 Exhibit 86, # 6 Exhibit 87, # 7 Exhibit 88, # 8 Exhibit 89, # 9 Exhibit 90, # 10 Exhibit 91, # 11 Exhibit 92, # 12 Exhibit 93, # 13 Exhibit 94, # 14 Exhibit 95, # 15 Exhibit 96, # 16 Exhibit 97, # 17 Exhibit 98, # 18 Exhibit 99, # 19 Exhibit 100)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 273 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 101 - 120 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 102, # 2 Exhibit 103, # 3 Exhibit 104, # 4 Exhibit 105, # 5 Exhibit 106, # 6 Exhibit 107, # 7 Exhibit 108, # 8 Exhibit 109, # 9 Exhibit 110, # 10 Exhibit 111, # 11 Exhibit 112, # 12 Exhibit 113, # 13 Exhibit 114, # 14 Exhibit 115, # 15 Exhibit 116, # 16 Exhibit 117, # 17 Exhibit 118, # 18 Exhibit 119, # 19 Exhibit 120)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 274 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 121-140 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 122, # 2 Exhibit 123, # 3 Exhibit 124, # 4 Exhibit 125, # 5 Exhibit 126, # 6 Exhibit 127, # 7 Exhibit 128, # 8 Exhibit 129, # 9 Exhibit 130, # 10 Exhibit 131, # 11 Exhibit 132, # 12 Exhibit 133, # 13 Exhibit 134, # 14 Exhibit 135, # 15 Exhibit 136, # 16 Exhibit 137, # 17 Exhibit 138, # 18 Exhibit 139, # 19 Exhibit 140)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 275 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 141 - 160 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 142, # 2 Exhibit 143, # 3 Exhibit 144, # 4 Exhibit 145, # 5 Exhibit 146, # 6 Exhibit 147, # 7 Exhibit 148, # 8 |

| | | |
|---|---|---|
| | | Exhibit 149, # 9 Exhibit 150, # 10 Exhibit 151, # 11 Exhibit 152, # 12 Exhibit 153, # 13 Exhibit 154, # 14 Exhibit 155, # 15 Exhibit 156, # 16 Exhibit 157, # 17 Exhibit 158, # 18 Exhibit 159, # 19 Exhibit 160)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 276 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 161-180 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 162, # 2 Exhibit 163, # 3 Exhibit 164, # 4 Exhibit 165, # 5 Exhibit 166, # 6 Exhibit 167, # 7 Exhibit 168, # 8 Exhibit 169, # 9 Exhibit 170, # 10 Exhibit 171, # 11 Exhibit 172, # 12 Exhibit 173, # 13 Exhibit 174, # 14 Exhibit 175, # 15 Exhibit 176, # 16 Exhibit 177, # 17 Exhibit 178, # 18 Exhibit 179, # 19 Exhibit 180)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 277 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 181 - 200 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 182, # 2 Exhibit 183, # 3 Exhibit 184, # 4 Exhibit 185, # 5 Exhibit 186, # 6 Exhibit 187, # 7 Exhibit 188, # 8 Exhibit 189, # 9 Exhibit 190, # 10 Exhibit 191, # 11 Exhibit 192, # 12 Exhibit 193, # 13 Exhibit 194, # 14 Exhibit 195, # 15 Exhibit 196, # 16 Exhibit 197, # 17 Exhibit 198, # 18 Exhibit 199, # 19 Exhibit 200)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 278 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 201-220 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 202, # 2 Exhibit 203, # 3 Exhibit 204, # 4 Exhibit 205, # 5 Exhibit 206, # 6 Exhibit 207, # 7 Exhibit 208, # 8 Exhibit 209, # 9 Exhibit 210, # 10 Exhibit 211, # 11 Exhibit 212, # 12 Exhibit 213, # 13 Exhibit 214, # 14 Exhibit 215, # 15 Exhibit 216, # 16 Exhibit 217, # 17 Exhibit 218, # 18 Exhibit 219, # 19 Exhibit 220)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 279 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 221 - 240 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 222, # 2 223, # 3 224, # 4 225, # 5 226, # 6 227, # 7 228, # 8 229, # 9 230, # 10 231, # 11 232, # 12 233, # 13 234, # 14 235, # 15 236, # 16 237, # 17 238, # 18 239, # 19 240)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 280 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 241-260 of the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 242, # 2 Exhibit 243, # 3 Exhibit 244, # 4 Exhibit 245, # 5 Exhibit 246, # 6 Exhibit 247, # 7 Exhibit 248, # 8 Exhibit 249, # 9 Exhibit 250, # 10 Exhibit 251, # 11 Exhibit 252, # 12 Exhibit 253, # 13 |

| | | |
|---|---|---|
| | | Exhibit 254, # 14 Exhibit 255, # 15 Exhibit 256, # 16 Exhibit 257, # 17 Exhibit 258, # 18 Exhibit 259, # 19 Exhibit 260)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 281 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibit 261 - 280 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 262, # 2 Exhibit 263, # 3 Exhibit 264, # 4 Exhibit 265, # 5 Exhibit 266, # 6 Exhibit 267, # 7 Exhibit 268, # 8 Exhibit 269, # 9 Exhibit 270, # 10 Exhibit 271, # 11 Exhibit 272, # 12 Exhibit 273, # 13 Exhibit 274, # 14 Exhibit 275, # 15 Exhibit 276, # 16 Exhibit 277, # 17 Exhibit 278, # 18 Exhibit 279, # 19 Exhibit 280)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 282 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 281-300 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 282, # 2 Exhibit 283, # 3 Exhibit 284, # 4 Exhibit 285, # 5 Exhibit 286, # 6 Exhibit 287, # 7 Exhibit 288, # 8 Exhibit 289, # 9 Exhibit 290, # 10 Exhibit 291, # 11 Exhibit 292, # 12 Exhibit 293, # 13 Exhibit 294, # 14 Exhibit 295, # 15 Exhibit 296, # 16 Exhibit 297, # 17 Exhibit 298, # 18 Exhibit 299, # 19 Exhibit 300)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 283 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 301 - 320 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 302, # 2 Exhibit 303, # 3 Exhibit 304, # 4 Exhibit 305, # 5 Exhibit 306, # 6 Exhibit 307, # 7 Exhibit 308, # 8 Exhibit 309, # 9 Exhibit 310, # 10 Exhibit 311, # 11 Exhibit 312, # 12 Exhibit 313, # 13 Exhibit 314, # 14 Exhibit 315, # 15 Exhibit 316, # 16 Exhibit 317, # 17 Exhibit 318, # 18 Exhibit 319, # 19 Exhibit 320)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 284 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 321-329 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 322, # 2 Exhibit 323, # 3 Exhibit 324, # 4 Exhibit 325, # 5 Exhibit 326, # 6 Exhibit 327, # 7 Exhibit 328, # 8 Exhibit 329)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 285 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 268 Declaration,,, *Exhibits 330-340 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 331, # 2 Exhibit 332, # 3 Exhibit 333, # 4 Exhibit 334, # 5 Exhibit 335, # 6 Exhibit 336, # 7 Exhibit 337, # 8 Exhibit 338, # 9 Exhibit 339, # 10 Exhibit 340)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 286 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, |

| | | |
|---|---|---|
| | | Taniqua Simmons, De'Jon Hall, Jane Doe. to [268] Declaration,,, *Exhibit 341 - 350 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # [1] Exhibit 342, # [2] Exhibit 343, # [3] Exhibit 344, # [4] Exhibit 345, # [5] Exhibit 346, # [6] Exhibit 347, # [7] Exhibit 348, # [8] Exhibit 349, # [9] Exhibit 350)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | [287] | DECLARATION re [252] MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Declaration of Edward D. Krugman in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # [1] Exhibit A, # [2] Exhibit B, # [3] Exhibit C, # [4] Exhibit D, # [5] Exhibit E, # [6] Exhibit F, # [7] Exhibit G, # [8] Exhibit H, # [9] Exhibit I, # [10] Exhibit J, # [11] Exhibit K, # [12] Exhibit L, # [13] Exhibit M, # [14] Exhibit N, # [15] Exhibit O, # [16] Exhibit P, # [17] Exhibit Q, # [18] Exhibit R, # [19] Exhibit S, # [20] Exhibit T, # [21] Exhibit U, # [22] Exhibit V, # [23] Exhibit W)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | [288] | DECLARATION signed by Bianca Bassett re [252] MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | [289] | DECLARATION signed by Bruce Myree re [252] MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | [290] | DECLARATION signed by Charles Palmer re [252] MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | [291] | DECLARATION signed by Dorethea Franklin re [252] MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | [292] | DECLARATION signed by Quentin Suttles re [252] MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, |

| | | Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
|---|---|---|
| 05/30/2025 | 293 | DECLARATION signed by Ebony Yeldon re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 294 | DECLARATION signed by De'Jon Hall re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 295 | DECLARATION signed by Scott Griffin re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 296 | DECLARATION signed by IAD Witness re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 297 | DECLARATION signed by Shaketa Redden re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 298 | DECLARATION signed by Jasmine Evans re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |

| 05/30/2025 | 299 | DECLARATION signed by Joseph Bonds re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
|---|---|---|
| 05/30/2025 | 300 | DECLARATION signed by Edward Krugman re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 301 | DECLARATION signed by Shirley Sarmiento re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 302 | DECLARATION signed by Delwanda Garland re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 303 | DECLARATION signed by Stanley Clyburn re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 304 | DECLARATION signed by Talisha Davis re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 305 | DECLARATION signed by Tanika Lucas re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |

| 05/30/2025 | 306 | DECLARATION signed by Taniqua Simmons re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Timmick, Andrew) (Entered: 05/30/2025) |
|---|---|---|
| 05/30/2025 | 307 | DECLARATION signed by Michael Taylor re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe, Shaketa Redden *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe, Shaketa Redden. (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 308 | DECLARATION signed by Andrew J. Timmick re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Second Declaration in Opposition to Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 351, # 2 Exhibit 352, # 3 Exhibit 353, # 4 Exhibit 354, # 5 Exhibit 355, # 6 Exhibit 356, # 7 Exhibit 357, # 8 Exhibit 358, # 9 Exhibit 359, # 10 Exhibit 360, # 11 Exhibit 361, # 12 Exhibit 362, # 13 Exhibit 363, # 14 Exhibit 364, # 15 Exhibit 365, # 16 Exhibit 366, # 17 Exhibit 367, # 18 Exhibit 368, # 19 Exhibit 369, # 20 Exhibit 370)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 309 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 308 Declaration,,, *in Opposition to Defendants' Motion for Summary Judgment* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 372, # 2 Exhibit 373, # 3 Exhibit 374, # 4 Exhibit 375, # 5 Exhibit 376, # 6 Exhibit 377, # 7 Exhibit 378, # 8 Exhibit 379, # 9 Exhibit 380, # 10 Exhibit 381, # 11 Exhibit 382, # 12 Exhibit 383, # 13 Exhibit 384, # 14 Exhibit 385, # 15 Exhibit 386, # 16 Exhibit 387, # 17 Exhibit 388, # 18 Exhibit 389, # 19 Exhibit 390)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 310 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 308 Declaration,,, *Exhibits 391-407 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 392, # 2 Exhibit 393, # 3 Exhibit 394, # 4 Exhibit 395, # 5 Exhibit 396, # 6 Exhibit 397, # 7 Exhibit 398, # 8 Exhibit 399, # 9 Exhibit 400, # 10 Exhibit 401, # 11 Exhibit 402, # 12 Exhibit 403, # 13 Exhibit 404, # 14 Exhibit 405, # 15 Exhibit 406, # 16 Exhibit 407)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 311 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 308 Declaration,,, *Exhibits 408-410 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua |

| | | Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 409, # 2 Exhibit 410) (Timmick, Andrew) (Entered: 05/30/2025) |
|---|---|---|
| 05/30/2025 | 312 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 308 Declaration,,, *Exhibits 411 - 430 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 412, # 2 Exhibit 413, # 3 Exhibit 414, # 4 Exhibit 415, # 5 Exhibit 416, # 6 Exhibit 417, # 7 Exhibit 418, # 8 Exhibit 419, # 9 Exhibit 420, # 10 Exhibit 421, # 11 Exhibit 422, # 12 Exhibit 423, # 13 Exhibit 424, # 14 Exhibit 425, # 15 Exhibit 426, # 16 Exhibit 427, # 17 Exhibit 428, # 18 Exhibit 429, # 19 Exhibit 430)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 313 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 308 Declaration,,, *Exhibits 431-450 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 432, # 2 Exhibit 433, # 3 Exhibit 434, # 4 Exhibit 435, # 5 Exhibit 436, # 6 Exhibit 437, # 7 Exhibit 438, # 8 Exhibit 439, # 9 Exhibit 440, # 10 Exhibit 441, # 11 Exhibit 442, # 12 Exhibit 443, # 13 Exhibit 444, # 14 Exhibit 445, # 15 Exhibit 446, # 16 Exhibit 447, # 17 Exhibit 448, # 18 Exhibit 449, # 19 Exhibit 450)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 314 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 308 Declaration,,, *Exhibits 451 - 470 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 452, # 2 Exhibit 453, # 3 Exhibit 454, # 4 Exhibit 455, # 5 Exhibit 456, # 6 Exhibit 457, # 7 Exhibit 458, # 8 Exhibit 459, # 9 Exhibit 460, # 10 Exhibit 461, # 11 Exhibit 462, # 12 Exhibit 463, # 13 Exhibit 464, # 14 Exhibit 465, # 15 Exhibit 466, # 16 Exhibit 467, # 17 Exhibit 468, # 18 Exhibit 469, # 19 Exhibit 470)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 315 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 308 Declaration,,, *Exhibits 471-490 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 472, # 2 Exhibit 473, # 3 Exhibit 474, # 4 Exhibit 475, # 5 Exhibit 476, # 6 Exhibit 477, # 7 Exhibit 478, # 8 Exhibit 479, # 9 Exhibit 480, # 10 Exhibit 481, # 11 Exhibit 482, # 12 Exhibit 483, # 13 Exhibit 484, # 14 Exhibit 485, # 15 Exhibit 486, # 16 Exhibit 487, # 17 Exhibit 488, # 18 Exhibit 489, # 19 Exhibit 490)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 316 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 308 Declaration,,, *Exhibits 491 - 510 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 492, # 2 Exhibit 493, # 3 Exhibit 494, # 4 Exhibit 495, # 5 Exhibit 496, # 6 Exhibit 497, # 7 Exhibit 498, # 8 Exhibit 499, # 9 Exhibit 500, # 10 Exhibit 501, # 11 Exhibit 502, # 12 Exhibit 503, # 13 |

| | | |
|---|---|---|
| | | Exhibit 504, # 14 Exhibit 505, # 15 Exhibit 506, # 16 Exhibit 507, # 17 Exhibit 508, # 18 Exhibit 509, # 19 Exhibit 510)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 317 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 308 Declaration,,, *Exhibits 511-530 to the Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 512, # 2 Exhibit 513, # 3 Exhibit 514, # 4 Exhibit 515, # 5 Exhibit 516, # 6 Exhibit 517, # 7 Exhibit 518, # 8 Exhibit 519, # 9 Exhibit 520, # 10 Exhibit 521, # 11 Exhibit 522, # 12 Exhibit 523, # 13 Exhibit 524, # 14 Exhibit 525, # 15 Exhibit 526, # 16 Exhibit 527, # 17 Exhibit 528, # 18 Exhibit 529, # 19 Exhibit 530)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 318 | CONTINUATION OF EXHIBITS by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. to 308 Declaration,,, *Exhibits 531 - 539 to Timmick Declaration* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Exhibit 532, # 2 Exhibit 533, # 3 Exhibit 534, # 4 Exhibit 535, # 5 Exhibit 536, # 6 Exhibit 537, # 7 Exhibit 538, # 8 Exhibit 539)(Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | | NOTICE of MANUAL FILING by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe re 268 Declaration,,, 308 Declaration,,, 287 Declaration,,, (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 319 | STATEMENT OF FACTS *Counterstatement in Response to Defendants' Statement of Undisputed Facts pursuant to Local Rule 56(a)(2) and Additional Material Facts* by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe Related document: 252 Motion for Summary Judgment,,,,. (Attachments: # 1 Appendix of Documents)(Wilner, Claudia) (Entered: 05/30/2025) |
| 05/30/2025 | 320 | NOTICE by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe re 268 Declaration,,, 308 Declaration,,, 287 Declaration,,, *Notice of Manual Filing of Certain Exhibits Filed in Opposition to Defendants' Motion for Summary Judgment* (Timmick, Andrew) (Entered: 05/30/2025) |
| 05/30/2025 | 321 | MEMORANDUM in Opposition re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Wilner, Claudia) (Entered: 05/30/2025) |
| 05/30/2025 | 322 | DECLARATION re 252 MOTION for Summary Judgment filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe *Declaration of Amandi Perera* filed by Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Appendix A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Wilner, Claudia) (Entered: 05/30/2025) |
| 06/17/2025 | 323 | Consent MOTION for Extension of Time to File Response/Reply *[to Extend Summary Judgment Deadlines]* by Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip |

| | | |
|---|---|---|
| | | Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown Officers 1-20, City of Buffalo, N.Y., Byron B Brown, Byron C Lockwood.(Sahasrabudhe, Peter) (Entered: 06/17/2025) |
| 06/20/2025 | 324 | TEXT ORDER granting 323 Motion for Extension of Time to File Response/Reply, replies due by 8/1/2025. Signed by Chief District Judge Christina Clair Reiss on 6/20/2025. (LB) (Entered: 06/20/2025) |
| 06/23/2025 | 325 | NOTICE of Withdrawal of Attorney: Edward P. Krugman no longer appearing for Plaintiffs Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe.<br><br>**CLERK TO FOLLOW UP.**<br><br>(Wilner, Claudia) (Entered: 06/23/2025) |
| 06/30/2025 | | NOTICE OF HEARING: Oral Argument on the parties' motions 252 and 253 set for 10/17/2025 10:00 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Chief District Judge Christina Clair Reiss. (EKM) (Entered: 06/30/2025) |
| 07/11/2025 | 326 | MOTION to Intervene by Markel Nance, Thomas Christopher Williams Jr., Black Love Resists in the Rust, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Andrew Timmick, # 3 Exhibit 1 - Complaint in Intervention, # 4 Exhibit 2 - Appendix C, Gennaco Report, # 5 Declaration of Thomas Christopher Williams Jr., # 6 Declaration of Markel Nance) (Timmick, Andrew) (Entered: 07/11/2025) |
| 07/11/2025 | 327 | MOTION for Reconsideration *of (1) the Denial of the Motion to Certify the Traffic Enforcement Class Pursuant to Rule 54(b) or, in the Alternative, (2) to Renew the Motion to Certify Pursuant to Rule 23(c)(1)(C)* by Markel Nance, Thomas Christopher Williams Jr., Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Andrew Timmick, # 3 Exhibit 1 - Complaint in Intervention, # 4 Exhibit 2 - Appendix C, Gennaco Report, # 5 Declaration of Thomas Christopher Williams Jr., # 6 Declaration of Markel Nance)(Timmick, Andrew) (Entered: 07/11/2025) |
| 07/17/2025 | 328 | NOTICE of Hearing on Motion 252 MOTION for Summary Judgment , 253 MOTION for Partial Summary Judgment *against the City of Buffalo* : Oral Argument set for 10/17/2025 10:00 AM via video conference before Chief District Judge Christina Clair Reiss. (EKM) (Entered: 07/17/2025) |
| 07/21/2025 | 329 | Consent MOTION for Extension of Time to File Response/Reply by Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown Officers 1-20, City of Buffalo, N.Y., Byron B Brown, Byron C Lockwood.(Sahasrabudhe, Peter) (Entered: 07/21/2025) |
| 07/21/2025 | 330 | TEXT ORDER granting 329 Motion for Extension of Time to File Response/Reply Replies due by 8/1/2025.Signed by Chief District Judge Christina Clair Reiss on 7/21/2025. (TMK) (Entered: 07/21/2025) |
| 08/01/2025 | 331 | DECLARATION re 252 MOTION for Summary Judgment filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda filed by Aaron Young, City of Buffalo, N.Y., Philip Serafini, Unknown Officers 1-20, Byron C Lockwood, Kevin Brinkworth, Robbin Thomas, Unknown |

| | | |
|---|---|---|
| | | Supervisory Personnel 1-10, Byron B Brown, Daniel Derenda. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Defendants' Reply to Plaintiff's Response to Counterstatement of Facts, # 13 Memorandum in Support [Reply MOL in Further Support Motion for Summary Judgment])(Sahasrabudhe, Peter) (Entered: 08/01/2025) |
| 08/01/2025 | 332 | REPLY/RESPONSE to re 253 MOTION for Partial Summary Judgment *against the City of Buffalo Reply Brief in Support* filed by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Markel Nance, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Thomas Christopher Williams Jr., Ebony Yeldon. (Joachim, Jordan) (Entered: 08/01/2025) |
| 08/05/2025 | 333 | NOTICE of Withdrawal of Attorney: Anjana Malhotra no longer appearing for Plaintiffs Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.

CLERK TO FOLLOW UP.

(Wilner, Claudia) (Entered: 08/05/2025) |
| 08/21/2025 | 334 | Consent MOTION to Unseal Document 321 Memorandum in Opposition to Motion, filed by Taniqua Simmons, Dorethea Franklin, Charles Palmer, Ebony Yeldon, Joseph Bonds, Shaketa Redden, Jane Doe, Shirley Sarmiento, De'Jon Hall, Black Love Resists in the Rust, 319 Statement of Facts, filed by Taniqua Simmons, Dorethea Franklin, Charles Palmer, Ebony Yeldon, Joseph Bonds, Shaketa Redden, Jane Doe, Shirley Sarmiento, De'Jon Hall, Black Love Resists in the Rust by Black Love Resists in the Rust, Joseph Bonds, Jane Doe, Dorethea Franklin, De'Jon Hall, Charles Palmer, Shaketa Redden, Shirley Sarmiento, Taniqua Simmons, Ebony Yeldon.(Wilner, Claudia) (Entered: 08/21/2025) |
| 08/25/2025 | 335 | TEXT ORDER granting 334 Motion to Unseal Document. Signed by Chief District Judge Christina Clair Reiss on 8/25/2025. (DDS) (Entered: 08/25/2025) |
| 09/17/2025 | 336 | NOTICE OF APPEAL by Kevin Brinkworth, Byron B Brown, City of Buffalo, N.Y., Daniel Derenda, Byron C Lockwood, Philip Serafini, Robbin Thomas, Unknown Officers 1-20, Unknown Supervisory Personnel 1-10, Aaron Young. Filing fee $ 605, receipt number ANYWDC-5579200. Appeal Record due by 9/29/2025. (Russ, Hugh) (Entered: 09/17/2025) |
| 09/18/2025 | | Remark: Pursuant to Local Rule 12.1 of the US Court of Appeals for the Second Circuit, Forms C and D must be completed within 14 days after the filing of a notice of appeal. Forms C and D can be obtained at www.ca2.uscourts.gov. (DDS) (Entered: 09/18/2025) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/24/2025 13:52:29 | | |
| **PACER Login:** | hr129000 | **Client Code:** | 000160.09080.0176 |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-00719-CCR |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

UNITED STATES; DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---------------------------x          18-CV-719(CCR)
BLACK LOVE RESISTS IN THE RUST,
et al.,            Plaintiffs,

vs.
                                      Buffalo, New York
CITY OF BUFFALO, et al.,              October 23, 2024
                  Defendants.
---------------------------x
**MOTION HEARING**

                    TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE CHRISTINA CLAIR REISS
                 UNITED STATES DISTRICT JUDGE

FOR PLAINTIFFS:        NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
                       BY:  CLAUDIA WILNER, ESQ.
                       50 Broadway, Suite 1500
                       New York, New York 10004-3821
                       BY:  ANJANA MALHOTRA, ESQ.
                       275 7th Avenue, Suite 1506
                       New York, New York 10001
                            -and-
                       COVINGTON & BURLING LLP(NY)
                       BY:  CHRISTINE ADRIENNE NELSON, ESQ.
                       BY:  JORDAN SCOTT JOACHIM, ESQ.
                       620 Eighth Avenue, Suite 4029
                       New York, New York 10018
                                -and-
                       WESTERN NEW YORK LAW CENTER, INC.
                       BY:  MATTHEW ALAN PARHAM, ESQ.
                       37 Franklin Street
                       2nd Floor, Suite 210
                       Buffalo, New York 14203


FOR DEFENDANTS:        HODGSON RUSS LLP
                       BY:  HUGH M. RUSS, III, ESQ.
                       BY:  CHEYENNE NICOLE FREELY, ESQ.
                       BY:  PETER A. SAHASRABUDHE, ESQ.
                       The Guaranty Building
                       140 Pearl Street, Suite 100
                       Buffalo, New York 14202


COURT REPORTER:        Diane S. Martens
                       dmartensreporter@gmail.com

2

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1           P R O C E E D I N G S

2                *           *           *

3

4       **THE CLERK:**  Your Honor, the matter before the Court is

10:05AM   5   civil case number 18-CV-719, *Black Love Resists in the Rust*

6   *v. City of Buffalo, et al.*

7       Present for the plaintiff are attorneys Claudia Wilner,

8   Anjana Malhotra, Jordan Joachim, Christine Nelson and

9   Matthew Parham.

10:05AM  10       Present for the defendant are attorneys Hugh Russ,

11   Cheyenne Freely and Peter Sahasrabudhe.

12       And we're here for a hearing on a motion to certify the

13   class.

14       **THE COURT:**  Good morning.

10:06AM  15       We have a number of people who are going to join by

16   YouTube.  There is no recording per judicial conference

17   policies.  Please respect that.  My understanding is the

18   YouTube is the first time the Western District of New York

19   has done this.  They did it at the parties' request.  And it

10:06AM  20   was because our Zoom licenses would have cut off the number

21   of participants.  So, please honor that.

22       And we have all day to do this.  So let me ask you,

23   first:  If either party plans on presenting evidence?

24       **MS. WILNER:**  No, your Honor.

10:06AM  25       **THE COURT:**  No.

3

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 10:06AM | 1 | How about from the defendants? |
| | 2 | **MR. RUSS:** No, your Honor, thank you. |
| | 3 | **THE COURT:** And then the way we're going to proceed is |
| | 4 | moving party, opposition, brief rebuttal. |
| 10:06AM | 5 | I'm going to ask that you announce yourself each time |
| | 6 | you speak not only because we have a number of attorneys but |
| | 7 | that will help us create a record and it will also help the |
| | 8 | people who are participating by YouTube. |
| | 9 | I have a number of things that I am thinking about. I |
| 10:07AM | 10 | call them musings. They're not rulings. These are things |
| | 11 | that are troubling me and I sometimes do this in advance of a |
| | 12 | hearing to let you know what I am stuck on. You should feel |
| | 13 | free to push back on it. Don't throw away, don't jettison |
| | 14 | your entire presentation because I am on some other issue. |
| 10:07AM | 15 | Don't be hesitant to correct me. These are just some of the |
| | 16 | things that I'm wondering about. |
| | 17 | So it would help me if you are as pragmatic as possible. |
| | 18 | I'm a very pragmatic person. And, so, it isn't going to help |
| | 19 | me decide whether or not to grant Class Certification if you |
| 10:07AM | 20 | tell me something like there is going to be mini-trials or |
| | 21 | they're common questions of fact and law. I like to hear, if |
| | 22 | you could, how you think that's going to play out in realtime |
| | 23 | in terms of motion for summary judgment, could the Fourth |
| | 24 | Amendment violations be resolved by summary judgment? What |
| 10:08AM | 25 | would happen at trial in terms of general versus individual |

4

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:08AM 1 damages. That would be the most helpful to me.

2 One of the issues in this case is the issue of general

3 damages versus individual damages and I know that's an area

4 of dispute. It's one thing if the plaintiffs' position is

10:08AM 5 everybody was unreasonably detained for both the initial

6 checkpoint and the secondary stop, and I can imagine that

7 would not require individual trials. But if there's going to

8 be individual damages that examine the difference between two

9 tickets for tinted windows versus five tickets or a stop that

10:09AM 10 lasts 20 minutes versus a stop that lasts 45 minutes, then we

11 are really getting into individual inquiries and I don't

12 really see Class Certification providing answers or common

13 evidence in that. So I want to trail down on that, and

14 especially since one perspective, the individual damages in

10:09AM 15 some cases will be de minimis. So what you would get

16 compensated for for getting a tinted window ticket on one

17 occasion when it wasn't, it should not have been issued is

18 not something that I think that we would typically have at

19 trial over an inquiry. So I want to, you know, drill down

10:10AM 20 into the pragmatics of how that would work.

21 The proposed Class that I am most concerned about is the

22 Traffic Enforcement Class which is roughly defined as Black

23 and/or Latino individuals who have driven their vehicle in

24 the city of Buffalo and an intent to do so in the future.

10:10AM 25 From the Court's perspective, that looks fairly

5

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:10AM  1  limitless.  It also would be unusual in terms of injunctive

2  relief.  I'm trying to think of how I would fashion it.  I

3  would have to think about, okay, what's the checkpoint going

4  to look like in the future because I think everybody agrees

10:10AM  5  that they have ceased.  But they haven't been abandoned, they

6  haven't been disavowed so I want to hear more about that

7  Traffic Enforcement Class because that really seems quite

8  unmanageable from the Court's perspective and it just doesn't

9  seem to be mapped on to the problem that brings this case to

10:11AM  10  the court.

11  We won't be discussing the merits of the case except as

12  they interplay with Class Certification.  But I am stumped as

13  to the logic of the checkpoints and I'm looking mostly to the

14  defendants to tell the Court the logic.  So the touchtone for

10:11AM  15  the Fourth Amendment is reasonableness.  And if the idea is

16  that we want to have a checkpoint to intercept crime, to

17  deter crime, then I don't really understand the traffic

18  violation part of it.  If it doesn't have anything to do with

19  traffic enforcement, is that some kind of like secondary

10:11AM  20  gratuitous purpose added on to it?  And, if so, that seems

21  like a lot of overkill.  I'm just kind of wondering about it.

22  One of the exhibits points this up fairly clearly.  I'm

23  looking at Exhibit 58.  And it's a email:  "BDC Lockwood

24  wants results with this increased daytime detail.  All

10:12AM  25  officers should be made aware of this and what is expected of

6

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:12AM 1 them in the past. The officers assigned to the daytime

2 detail have always yielded good results and we all expect

3 this to continue into the future."

4 "BDC Lockwood also wants two traffic checkpoints run

10:12AM 5 during the daytime detail, one of them at approximately 12

6 noon. As you have all done in the past, the checkpoint

7 locations should be conducted in and around recent areas of

8 violence. For example, if there was a shooting during the

9 previous night at Broadway and Fillmore, then the traffic

10:13AM 10 checkpoint should be conducted in that vicinity."

11 So that kind of makes no sense to me because unless

12 you're expecting evidence of a crime to be passing through

13 the checkpoint in the 24 or 48 hours after the crime, it just

14 seems to me more a show of police presence in an area that

10:13AM 15 recently expected or suffered, you know, a violent crime.

16 And there's a lot of other ways to do that besides detaining

17 motorists and issuing tickets.

18 So I know we're kind of into the merits and I know the

19 plaintiffs argue that this was a revenue-generating event on

10:13AM 20 the backs of minority populations in certain housing areas

21 but I'd like to hear from the defendants how it works, how a

22 checkpoint actually was intended to work, and why it works.

23 There are some issues in this case which I think we

24 could agree on, and from the Court's perspective, a good

10:14AM 25 advocate generally concedes them. For example, I don't

7

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:14AM    1   believe there are antagonistic interests among the proposed

           2   Classes.  So, I've had Class Certifications where -- dairy

           3   farmers come to mind -- where some people belong to a coop

           4   and some people did not and they really didn't have the same

10:14AM    5   interests.  I don't see that problem in this case and I'm

           6   wondering if the defendants agree.

           7       I also, as I read through Michael Gennaco's lengthy

           8   expert report, I didn't see how failure to train and

           9   supervise investigation of the complaints, documentation,

10:15AM   10   recording, discipline of officers was relevant to Class

          11   certification and I also wondered how it would even come into

          12   the case.  So I was wondering why I was reading about all of

          13   that in this particular case unless, unless I'm missing

          14   something about the claim.  So, lots of criticism about what

10:15AM   15   the Buffalo Police Department is doing wrong and how they're

          16   responding in the aftermath of police alleged misconduct but

          17   it didn't seem to me to go to the core issues.  And maybe you

          18   just provided it as something that would come up later in the

          19   case.

10:15AM   20       One of the central issues in this case, and maybe the

          21   central issue, is the framing of the issue as to whether the

          22   stops were unconstitutional as now set up.  Never mind who

          23   goes through or what happens, this is not a reasonable

          24   detention of motorists and the defendant's efforts to push

10:16AM   25   this into, judge, you're going to have to be deciding whether

8

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:16AM 1     there's probable cause, you're going to have to look at, you

2     know, whether or not there was an infraction.

3         I don't see that I will be doing that because the

4     plaintiffs are masters of their complaint and if they're not

10:16AM 5     going to be asking the Court or a jury to do that, I don't

6     see that I would.

7         The defendants have the better part of the argument,

8     however, when we get into individualized damages.  And then I

9     think that you do look at that if you are going to say

10:16AM 10     somebody who was arrested without probable cause suffers the

11     same injury as somebody who was arrested for an outstanding

12     warrant, I'm not so sure I would agree unless the plaintiffs'

13     argument is that it's all fruit of the poisonous tree, it's

14     all the same injury, you are going to recover for every

10:17AM 15     arrest, there's going to be a set amount of recovery that's

16     requested.

17         So those are just some of the things that are bothering

18     me and, as I said, you should feel free to push back on them

19     and go your own way but those are -- I like to tell you what

10:17AM 20     I'm struggling with first.

21         Let's start with the plaintiff and remember to announce

22     yourself before you speak.

23         **MS. WILNER:**  Just one moment, your Honor.

24         **THE COURT:**  Sure.

10:17AM 25         **MS. WILNER:**  Good morning.  And may it please the Court.

9

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:17AM    1        Claudia Wilner for the plaintiffs.

           2        We're here today to seek certification of three Classes

           3    in this case challenging longstanding traffic enforcement

           4    policies and practices of the Buffalo Police Department that

10:18AM    5    have greatly harmed and continue to harm Black and Latino

           6    communities.  The claims are earmarked (phonetic) for Class

           7    certification.  For the damages Class, each damages Class, it

           8    is challenging just one policy and practice that has harmed

           9    all of the Class members in the same way.

10:18AM   10        Across the Classes, all of the injunct -- all of the

          11    liability questions are common.  The injunctive relief that

          12    we're requesting for the Traffic Enforcement Class is common

          13    to all of the members of that Class.  They're all asking the

          14    same thing which is reform to policies and practices of the

10:18AM   15    Buffalo Police Department.

          16        For the damages, many of the damages questions are

          17    common and there are no significant individual defenses.  So

          18    I really --

          19        THE COURT:  No significant individual defenses, but

10:19AM   20    individual damages.  So --

          21        MS. WILNER:  Yes.

          22        THE COURT:  -- they might have not, you know, we're not

          23    going to hear officer by officer why he or she did this but

          24    your clients are asking for different kinds of damages.  Is

10:19AM   25    that conceded?

10

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:19AM    1    **MS. WILNER:** Yes. Yes. That's true. Some of the

2    damages, categories of damages that they're asking for are

3    common and some are individual. What I had thought made

4    sense in my mind -- but you're the judge so it might not make

10:19AM    5    sense in your mind -- was to walk through the Rule 23 factors

6    for each of the Classes and I've prepared some slides just to

7    help do that. And I'm really happy to -- I mean, if you want

8    to start by talking about damages, we can do that or we can

9    stop when we get to that slide and really go through the

10:19AM    10    different categories of damages and how we see them playing

11    out in the trial in this case.

12    **THE COURT:** I'm happy to do it your way.

13    **MS. WILNER:** Okay, great. Thanks.

14    In that case I'll start by talking about the damages

10:20AM    15    Classes. This is a certification under Rule 23(b)(3). We'll

16    start with the Checkpoint Class. We've got almost 4,000

17    members of this Class. This is people who received a ticket

18    or were arrested at traffic safety vehicle checkpoints. And

19    I know you have asked defendants to comment on how the

10:20AM    20    checkpoints were operated. I can talk a little bit about

21    that from our perspective of what the evidence shows.

22    The checkpoints were established by formal and

23    directive. They were operated under written guidelines from

24    2013 to June 2024. The Commissioner chose the checkpoint

10:20AM    25    locations personally. And he placed 78 percent of those

11

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:20AM  1  checkpoints in Black and Latino communities.  So from

2  June 2014 and after, lieutenants picked checkpoint locations

3  following his model under his supervision and they put

4  87 percent of checkpoints in Black and Latino communities.

10:21AM  5  Each checkpoint was operated in the same way under the

6  directive.  So all cars were funneled through the checkpoint

7  for a first inspection which occurred without any

8  individualized suspicion.  And then some cars were detained

9  for a secondary inspection and it was after that secondary

10:21AM  10  inspection that tickets and arrests and impounds happened.

11      And so our Class is seeking damages under the Fourth

12  Amendment for the unlawful detentions that occurred prior to

13  the tickets and impounds.  And they're seeking damages under

14  the Fourteenth Amendment Equal Protection Clause and Title VI

10:21AM  15  for racial discrimination under the Equal Protection Clause.

16  And they also have due process claims that are under the

17  Fourteenth Amendment that concern a structural conflict of

18  interest and those are actually the same claims that the

19  tinted windows Class has.

10:22AM  20      THE COURT:  So I was listening but I didn't quite catch

21  it.  It's just the initial detention or it's the initial and

22  the secondary?

23      MS. WILNER:  Well the initial and the secondary, yes.

24      THE COURT:  Okay.

10:22AM  25      MS. WILNER:  Under the Fourth Amendment but the Fourth

12

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:22AM   1   Amendment claim, from our perspective, really stops with the

2   ticket and the arrest.  So we're not seeking damages under

3   the Fourth Amendment for anything that happened after the

4   moment -- after the detention ends, essentially.

10:22AM   5       All of the liability questions for the Checkpoint Class

6   are common and we listed a number of common questions in our

7   brief and I'm not running away from any of those questions

8   but I wanted to highlight today a few that I think are really

9   important.

10:23AM  10       The first is:  What was the programmatic purpose for the

11   checkpoints?  Was it for crime control?  High visibility?

12   Was it for traffic safety, as the defendants claim?  This is

13   a critical factual question that's going to determine

14   liability and it's common to every single Class member.

10:23AM  15       Another really important question is whether the

16   checkpoint satisfied the special needs exception that the

17   Supreme Court has set forth for limited operation of

18   administrative checkpoints under certain circumstances.  This

19   is a legal question that every single member of the

10:23AM  20   Checkpoints Class is going to have and it will determine for

21   every member of the Class whether they win or whether they

22   lose on the Fourth Amendment claim.  Maybe not whether they

23   lose.  I'm not sure I'll concede that yet but certainly

24   whether they win.

10:23AM  25       So, on our Equal Protection and Title VI claims, were

13

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:23AM  1  the checkpoints disproportionately placed in Black and Latino

2  neighborhoods?  Was the City's choice of checkpoint locations

3  motivated by racial demographics or racial animus?  These are

4  the most important questions to determining liability on an

10:24AM  5  Equal Protection claim.  And, again, they're common to every

6  Class member because the checkpoints were operated in a

7  centralized way.

8  The due process claims I'd like to defer a little bit

9  until talking about the Tinted Windows Class but the

10:24AM  10  questions are the same for both Classes and that only

11  underscores the commonality.

12  And then, of course, because we have claims for

13  municipal liability, we have to establish the requirements of

14  *Monell v. Department of Social Services,* that requires

10:24AM  15  establishing that all of these things happened under

16  municipal policy, custom or practice and that is going to be,

17  again, a common question for all of the Class members.

18  Your Honor already shared your thoughts that you don't

19  see disputes between the Class representatives and members of

10:25AM  20  the Class that would disturb findings of typicality and

21  adequacy and I just wanted to confirm our position that that

22  is absolutely the Class.

23  **THE COURT:**  I also don't see a conflict between your

24  proposed Classes.  So, you're not going to, if we had a

10:25AM  25  Traffic Enforcement Class, they aren't going to get something

14

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:25AM | 1 | that would take something away from the Tinted Windows Class.

2 | **MS. WILNER:** Yes. That's exactly right, your Honor.

3 | And I wanted -- I mean the defendants had raised this

4 | point under their discussion of typicality and adequacy was

10:25AM | 5 | one of their primary points that the case was going to

6 | devolve into mini-trials because of this need to determine

7 | the individual circumstances of each stop. And from the

8 | plaintiffs' perspective, that's absolutely false. So, under

9 | the Fourth Amendment, again, we're only seeking damages for

10:25AM | 10 | unlawful detention.

11 | So there is no need ever in this case to determine

12 | whether tickets were supported by probable cause, whether the

13 | probable cause justified them, whether they were unjustified,

14 | all of that on the merits of the ticket is not going to be

10:26AM | 15 | relevant to the Fourth Amendment claim.

16 | **THE COURT:** I agree on the merits of the ticket. Once

17 | you get into the secondary inspection, isn't there an inquiry

18 | into whether it was justified or not?

19 | **MS. WILNER:** I don't think so, your Honor, because then

10:26AM | 20 | we're into our fruit of the poisonous tree argument and the

21 | Second Circuit case that's on -- that controls -- and I'm

22 | just now blanking on the name of it but it's in our brief --

23 | that said that the causation point was cut off by independent

24 | actions of the prosecutor and the judge. And so anything

10:26AM | 25 | that's happening before then where it's just continued

15

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:26AM 1  actions by the police department is fair game under the

2  Fourth Amendment, and that secondary detention, you know,

3  never would have happened had the car not first been subject

4  to an illegal first detention. So it all flows together into

10:27AM 5  the same.

6      Under the Equal Protection Clause, the Supreme Court has

7  made it very clear that racial discrimination is actionable

8  even if a stop or a ticket is supported by probable cause.

9  And, so, there's really no need under the Equal Protection

10:27AM 10  Clause again to look into the question of whether the ticket

11  was justified. That's not the question. The question is

12  whether it was motivated by racial animus and that gives rise

13  to harm, regardless of whether there was a legal

14  justification for the action.

10:27AM 15      I'm going to stop really briefly on ascertainability

16  just in case your Honor has questions about our Class

17  definition. I think there is no ascertainability issue in

18  this case. The Second Circuit standard is really clear: A

19  Class must be defined using objective criteria that establish

10:28AM 20  a membership with definite boundaries.

21      Our Class definition is up for you on the screen. It

22  clearly does that. There's no administrative feasibility

23  requirement in the Second Circuit. So if there are concerns

24  about Class member identification -- and I don't think there

10:28AM 25  are -- but if there were, that would be something that would

16

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:28AM 1   be considered as part of the superiority analysis.  It's not

2   a threshold that would impede certification under

3   ascertainability.

4      And I want to -- well, let me ask before I move on.  Are

10:28AM 5   there any other questions that the Court has about the

6   Checkpoints Class or any of the points that we've discussed

7   so far?

8      **THE COURT:**  Not about the Checkpoint Class.

9      **MS. WILNER:**  Okay, wonderful.

10:28AM 10      So let's stop and talk a little bit about the Tinted

11   Windows Class and this Class is challenging the issuance of

12   multiple tinted windows tickets in a single stop.  And this

13   was a practice that was directed overwhelming at Black and

14   Latino drivers and that three successive BPD commissioners

10:29AM 15   knew about and intentionally allowed to continue.

16      The Class is bringing equal protection and title six

17   claims for racial discrimination.  It also brings due process

18   claims.  Those are structural due process claims that I

19   referenced before.  We've had over 6,000 people who have been

10:29AM 20   subjected to these practices that we've identified who meet

21   the Class definition.  So there's clearly no numerosity

22   issue.

23      And I wanted to pause and highlight some of the racial

24   disparities.  These are all contained in the expert report of

10:30AM 25   Dr. Bjerk that was submitted in support of the motion.

17

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:30AM  1      **THE COURT:**  Let me stop you.  And in terms of logic --

2      **MS. WILNER:**  Yeah.

3      **THE COURT:**  -- why is it multiple tickets as opposed to

4      one ticket?  I understand that I've seen the memos where they

10:30AM  5      say let's not engage in overkill, two tickets for tinted

6      windows is enough, you don't need to be doing six.

7          What was the method to why isn't it one, why is it -- is

8      it always two, is it?

9      **MS. WILNER:**  Yeah.  So in thinking about this Class, and

10:30AM  10     it's, it's a good question because -- and you can see even

11     looking at the numbers with 87 percent of tinted tickets

12     going to Black and Latino drivers, you know, overall, that

13     this was a practice that just at its most basic level was

14     grossly disproportionate.  But the issuance of multiple

10:30AM  15     tickets is particularly disturbing and that's because when

16     you're, whether an officer is thinking about a single tinted

17     windows ticket, there could be a factual question, are the

18     windows unlawfully tinted, are there not?  But there's no

19     question about once the decision has already been made to

10:31AM  20     stop the car and issue the tickets, then there really

21     shouldn't be a particular reason or a difference in how

22     people are treated at that stop.

23          And what the evidence shows is that even after within

24     the world of people who are getting tinted windows tickets at

10:31AM  25     all, there is really significant and statistically

18

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:31AM   1   significant disparity in terms of who is getting the multiple

2   tickets.  So the multiple ticketing rate is 15 percent higher

3   for black and Latino drivers from 2013 to 2020.  That, when

4   you're talking about statistics, is a really significant

10:32AM   5   difference and at its height, 90 percent of Black and Latino

6   drivers who received tinted windows tickets at all were

7   receiving multiple tickets in a single stop.  And the

8   economic harm that's piled on for that gratuitous ticketing

9   is really damaging.

10:32AM  10       THE COURT:  But to get to dis-proportionality, don't you

11   have to look at, all right, here's all of the cars that are

12   registered to everybody, here's the proportion of them that

13   are registered to Black and Latino drivers.  Now we look at

14   the tinted window tickets and that's what we have to look at

10:32AM  15   that, all people with tinted windows.  I didn't really see

16   that.  Do you think you've done that?

17       MS. WILNER:  I'm....

18       THE COURT:  So otherwise you might be targeting

19   something.  It might look like it's disproportionate but it

10:33AM  20   just may be that a certain group of people prefers tinted

21   windows to fuzzy dice or people who have screens that, you

22   know, block out the sunshine for somebody sitting in a car

23   seat.  So I didn't see the analysis proceed on that basis and

24   I wondered why not.

10:33AM  25       MS. WILNER:  Oh, yes, that issue actually is addressed

19

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:33AM  1  in the Bjerk report and I think it gets at this question of

2  why I focused on multiple tickets as opposed to just

3  ticketing in general.

4      First of all, I do want to make clear that there

10:33AM  5  actually isn't any evidence in the record and it isn't known

6  what the true overall tinted windows ticketing rate is.  But

7  what the data shows --

8      **THE COURT:**  Isn't --

9      **MS. WILNER:**  -- is that --

10:33AM  10     **THE COURT:**  -- the overall tinted windows so you don't

11  even have a baseline of how many people drive with tinted

12  windows and that's why I'm troubled by how you can get down

13  to disproportionate because a true test would say, okay,

14  there's 5,000 people in the city of Buffalo who have cars and

10:34AM  15  2,000 of them have tinted windows, and of that 2,000, 1,500

16  belong to Black and Latino drivers.  And I just don't see

17  that even Dr. Bjerk does that.

18     **MS. WILNER:**  Oh, okay, I see what you're saying, your

19  Honor.  He, he actually does -- and this is the, this is

10:34AM  20  the -- I think what I was getting at before, trying to get at

21  before but probably was too long-winded, that once you're in

22  looking at multiple ticketing, you're looking only within the

23  universe of people who have been stopped and issued

24  ticketed -- tinted windows tickets.

10:35AM  25     **THE COURT:**  I follow you.  I can see that.

20

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:35AM  1      **MS. WILNER:**  And within that universe there's a

2   statistically significant disparity where Black drivers

3   issued at least one ticket, tinted window ticket are

4   statistically more likely to receive multiple tickets than

10:35AM  5   white drivers issued tinted windows tickets.

6      **THE COURT:**  Okay.

7      **MS. WILNER:**  So, once you're in that baseline, all those

8   other concerns of what is the population doing in general,

9   how many cars have tinted windows at all, you know, those

10:35AM  10  fall away because the disparity is only among incidents of

11  ticket, tinted window ticket issuance.

12     **THE COURT:**  Okay.

13     **MS. WILNER:**  But I do want to point out some other

14  things that showed up in the data that I do think are

10:35AM  15  relevant to this.  One is that the Bjerk report looked at

16  data prior to the issuance of the strike force and at that

17  time tinted window ticketing was lower and racial

18  disparity -- multiple ticketing was lower and racial

19  disparities in multiple ticketing were lower.

10:36AM  20      So there was a significant increase not only in tickets

21  but also in disparities with the advent of the strike force

22  that then after the Buffalo traffic violations agency came

23  online magnified even further.  So it really does suggest

24  that there was a change in behavior within the Buffalo Police

10:36AM  25  Department.  Not -- because there's no reason to suspect, to

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:36AM 1 think that within those years there was baseline change in

2 the population in terms of who had tinted windows and who

3 had -- didn't.

4 And there's also no reason to think -- this is getting

10:36AM 5 back to the multiple ticketing disparities -- that there's

6 any reason that, like, for example, nonminority drivers would

7 tint only one window but everyone else would tint three or

8 four windows.

9 **THE COURT:** So the narrow focuses: Secondary stop,

10:37AM 10 multiple tickets between white drivers in the secondary stop

11 and Black and Latino drivers, white or non-- nonBlack or

12 nonLatino drivers and whether or not those two Classes can be

13 compared and is there disproportion there? Just there?

14 **MS. WILNER:** I think I need to make a correction because

10:37AM 15 the Tinted Windows Class is not limited to tickets that are

16 issued at checkpoints.

17 **THE COURT:** Oh.

18 **MS. WILNER:** Some tinted windows tickets were issued at

19 checkpoints but multiple tinted windows ticketing was a

10:37AM 20 common practice that officers did when they were on regular

21 patrol as well as on checkpoints. So our Tinted Windows

22 Tickets Class is covering tinted windows ticketing wherever

23 that happened not only at check points.

24 **THE COURT:** So then the comparator is much harder --

10:37AM 25 like you sold me on the comparator at the secondary stop

22

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:38AM   1   because I could imagine in pragmatic terms of we would have

          2   all that data, there would be a proportion, you could see it.

          3       When it's roaming around, how are you going to establish

          4   that?

10:38AM   5       **MS. WILNER:** I think the same points that I made before

          6   still apply because, again, we're only looking at disparities

          7   within the universe of people who are stopped and ticketed

          8   for at least one tinted windows ticket. So it's, the Equal

          9   Protection Claim isn't based on the stop. We're not

10:38AM  10   challenging whether the stop was justified, whether tinted

         11   windows tickets should have been issued, should not have been

         12   issued. The point is that Black drivers were really likely

         13   to get four tickets instead of one and that was much less

         14   true for white drivers.

10:38AM  15       **THE COURT:** All right. So you would characterize this

         16   as a non-checkpoint Class? I mean it could be but it would

         17   be -- it's much broader than that.

         18       **MS. WILNER:** Yes, I would say it's much broader than the

         19   checkpoints and that shows in the size of the Class. There

10:39AM  20   is more people who were affected by tinted windows tickets

         21   than who were affected by checkpoints ticketing. So there

         22   could be people who would be members of both Classes. For

         23   example, somebody who was issued multiple tinted windows

         24   tickets at a checkpoint would be a member of the Checkpoint

10:39AM  25   Class and a member of the Tinted Windows Class. And how we

23

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:39AM   1   see that playing out at trial is that that particular
          2   individual would have more opportunities to win liability but
          3   we are not expecting to like double-dip, as it were, in any
          4   categories of damages.

10:39AM   5       Have I answered all your questions?
          6       **THE COURT:**  You have.
          7       **MS. WILNER:**  Okay, great.
          8       So I wanted to drill down on some of the questions that
          9   were raised and I wanted to stop a bit on the due process
10:40AM  10   claim because it is a little bit of a less familiar claim.
         11   Arises from the Supreme Court decision in *Marshall v.*
         12   *Jerrico*.  And the Supreme Court said that:  "A scheme
         13   injecting a personal interest, financial or otherwise, into
         14   the enforcement process may raise serious constitutional
10:40AM  15   questions."  And the Supreme Court made its findings about
         16   prosecutors but courts have applied it, as well, to police
         17   officers.  They hold police officers to the same standard as
         18   prosecutors and have found that where a police officer has a
         19   personal financial motivation to enforce the criminal law,
10:40AM  20   that that can create a conflict of interest that violates the
         21   due process clause.
         22       And really importantly for Class certification under the
         23   case law, this is an objective inquiry.  So the
         24   constitutional question that has to be resolved is:  Does the
10:40AM  25   system create an intolerable risk of bias?  It's not:  Was an

24

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:41AM    1    officer actually biased?  Can an officer be proven to be

2    biased?  But simply is there an intolerable risk of bias.

3    And that question, because it's objective, is going to be the

4    same for every member of the Class.

10:41AM    5    So really important common questions that go directly to

6    liability for this claim is whether city policies created an

7    improper pecuniary or financial motivation for officers to

8    enforce traffic laws and issue tickets and, if they did, was

9    that conflict of interest so serious that it violates the due

10:41AM    10    process clause?  Those are the two most important and Monell

11    liability obviously, as well, for that claim.  And every

12    Class member is going to have those same questions.

13    Answering them is going to resolve liability for every single

14    Class member at the same time.

10:42AM    15    **THE COURT:**  So if you're not looking at just checkpoint

16    data, though, and you're just looking at officers patrolling

17    and issuing these tickets, I think it's going to be pretty

18    hard to show a financial motive.  So, in the checkpoints

19    there is the overtime argument and then when this occurred

10:42AM    20    and how long this occurred and you've got the officers

21    involved and you can figure out the pay.

22    How are you going to prove it as a pragmatic matter for

23    more roaming stops?

24    **MS. WILNER:**  Well, it's really the same body of

10:42AM    25    evidence, your Honor, because it has to do with the

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:42AM 1 performance expectations that were set by the Commissioner

2 and those didn't apply only to checkpoints.  They applied to

3 practices in general and the overtime expectations.  And the

4 tying of overtime possibilities to production, which is

10:43AM 5 essentially a ticketing incentive because officers had the

6 ability -- when tickets are tied to overtime opportunities,

7 with the idea that more tickets justifies more overtime

8 opportunities and also is an expected result of those

9 overtime opportunities, and the overtime is so significant

10:43AM 10 for these officers and some of these officers doubled their

11 salaries by working overtime.  Working overtime also not only

12 just expanded their takehome pay but their eventual pension

13 benefits.  So there was significant financial opportunity for

14 officers in working overtime.

10:44AM 15     And if the idea being promulgated from the City is that

16 the more you ticket, the more overtime you can do, then that

17 is a financial conflict of interest, at least our -- that's

18 our belief and what we intend to present to the jury and then

19 what we'll be asking the jury to decide.

10:44AM 20     **THE COURT:**  So I'm having a hard time distinguishing

21 that from any other police department anywhere, especially in

22 the area of substance due process.  It has to be a pretty

23 significant constitutional violation, otherwise the Supreme

24 Court has said go under the Fourth Amendment, that's more

10:44AM 25 specific.

26

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:44AM   1     I would assume that most, if not every, police

2    department rewards productivity and offers overtime to the

3    most productive officers who have crime-stopping and

4    crime-intercepting abilities and, so, how is this any

10:45AM   5    different?  And looking at the policies, what are you zoning

6    in on as the directive that makes this different from every

7    other police department in the country?

8         **MS. WILNER:**  Yeah.  Thank you for the question.

9         And with all due respect -- and you can let me know if

10:45AM  10    this is not a satisfactory answer -- but our job is to

11    represent our plaintiffs and to look at the policies and

12    practices of the Buffalo Police Department, and whether those

13    policies and practices violate the due process clause.  And,

14    so, I don't think it's an element of our substantive claims

10:45AM  15    how our -- how what happened here may or may not compare to

16    what happened elsewhere.

17         **THE COURT:**  Well you're asking me to find that this is a

18    financial incentive and I'm pushing back and saying I assume

19    there's a financial incentive in most police departments to

10:46AM  20    be productive -- when I'm thinking about ascertainability in

21    this.  And I'm not seeing that this is some unique situation

22    where the Court can say, yeah, we need to have a Class

23    because this is going to zero in on a policy that is

24    particular to the Buffalo Police Department.

10:46AM  25         **MS. WILNER:**  Well, I do think there are some specific

27

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:46AM 1    factors here that are important.  I mean, the production

2    expectations were pretty strong, the launch of the Buffalo

3    Traffic Violation Agency which was specifically designed in

4    order to bring in more revenue to the City of Buffalo, the

10:46AM 5    reaction to the installation of the Buffalo Traffic

6    Violations Agency which saw ticketing go up substantially

7    after that came online, the training of officers, that one

8    goal of traffic enforcement was to generate revenue, I think

9    all of those things work together.  And really, more

10:47AM 10   importantly, your Honor, from the Class Certification

11   perspective, there's nothing about any of those arguments

12   that's specific to any particular Class member.  All of our

13   Class members can make those same claims.

14       **THE COURT:**  Also one argument is there's no motion to

10:47AM 15   dismiss the due process claims so you don't have to show me

16   that it's plausible at this point in time.  As it interplays

17   with the Class, it does become an issue.

18       **MS. WILNER:**  And we also have yet to have dispositive

19   motions so there -- I, to me, the dispositive motion stage,

10:47AM 20   the trial stage where you're asking, you know, what are the

21   facts -- first, are there disputes of facts and then what are

22   the facts and then applying the law to the facts, that is

23   where the merits of the claim are dealt with and there really

24   aren't any aspects of the merits of these claims that are

10:48AM 25   different from one Class member to the next.

28

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:48AM 1    Just quickly on the commonality for the Equal Protection

2    and Title VI claims.  The questions are similar as we saw for

3    the Checkpoint Class:  Did multiple tinted windows ticketing

4    disproportionately impact Black and Latino drivers?  Did City

10:48AM 5    policymakers intentionally permit these practices to

6    continue?  And if they did, were those policymaker decisions

7    motivated by race?  Those are the key most important

8    questions that we have to deal with in order to prevail on

9    those Equal Protection claims.  Again, those are questions

10:49AM 10   that are going to be common to every Class member.

11   In order to prove intent, we plan to present evidence,

12   circumstantial evidence of intent of the type that the

13   Supreme Court discusses in *Arlington Heights*, that includes

14   the statistical disparities, that includes the historical

10:49AM 15   context for these decisions -- and we have a social historian

16   who can talk about some of that context.  We would be talking

17   about substantive departures from normal police procedures

18   such as the lack of any public safety rationale for issuing

19   multiple tickets when one ticket would essentially accomplish

10:49AM 20   the same thing.  And including the Commissioner Derenda's

21   judgment that multiple ticketing was just something that

22   officers did to, quote, pad their numbers.  So those are all

23   facts that play into the intent analysis.  And, again, those

24   are going to be common to every single Class member.

10:50AM 25   And I'm going to be discussing the Gennaco Report more

29

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 10:50AM | 1 | in terms of the Traffic Enforcement Class but this is an |
| | 2 | example of where some of our police practices experts |
| | 3 | findings are relevant to making that decision about intent. |
| | 4 | And the purpose of putting that report now at the Class |
| 10:50AM | 5 | Certification stage is to demonstrate that his evidence |
| | 6 | common to every Class member.  Each Class member can rely on |
| | 7 | that same expert report in the same way to prove their |
| | 8 | claims. |
| | 9 | So, of course, for any damages Class, predominance under |
| 10:51AM | 10 | Rule 23(b)(3) is the critical factor.  And in this case I |
| | 11 | think predominance is pretty easy because as we've discussed |
| | 12 | when talking about the common questions, all the liability |
| | 13 | questions are common and each Class member is going to be |
| | 14 | relying on the same body of evidence in order to establish |
| 10:51AM | 15 | liability. |
| | 16 | So, under the checkpoints, things like the programmatic |
| | 17 | purpose of the checkpoints, the intent of the Commissioner in |
| | 18 | establishing checkpoint locations are common.  The evidence |
| | 19 | of discriminatory practices for tinted windows ticketing and |
| 10:51AM | 20 | the decision to allow that discrimination to continue is |
| | 21 | common.  And overtime incentives and the production |
| | 22 | incentives are common.  So there really aren't liability |
| | 23 | questions that are going to be specific to any Class member. |
| | 24 | We don't need to determine whether any particular officers |
| 10:52AM | 25 | was actually biased because what we're looking at is whether |

30

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:52AM   1   the system was biased.  And we don't need to determine

          2   whether there was probable cause or a discriminatory intent

          3   at the individual officer level because we're really focused

          4   on policies and practices and decisions that are coming from

10:52AM   5   the policy level.

          6        Is there -- no, okay, great.  So moving on.

          7        **THE COURT:**  But I will tell both sides if you're going

          8   to do a PowerPoint, it's very helpful after we're done if you

          9   provide your PowerPoint to the Court.  It's a good summary

10:52AM  10   for me when I'm issuing a decision to make sure I've covered

         11   the points that you thought were the most important.

         12        **MS. WILNER:**  Yeah.  And we have printed out copies so we

         13   can provide that and we have copies for the defense, as well,

         14   if they would like them.

10:53AM  15        So I know that the court has a lot of questions on

         16   damages.  I want to start with really what I consider to be a

         17   Hornbook Rule in the Second Circuit that where liability is

         18   common, individualized damages are not going to defeat

         19   predominance.  And I'm relying on *In re Nassau County Strip*

10:53AM  20   *Search Cases* for this point but there's actually many, many

         21   cases in this Circuit that make the same point.  A lot of the

         22   damages questions in this case, though, are common.

         23        So I'll start with general damages which is something

         24   that we're seeking for unconstitutional detentions under the

10:53AM  25   checkpoints and we're also seeking general damages for the

31

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:54AM    1    personal degradation that's involved in racial

           2    discrimination.

           3        So the Second Circuit has established this category of

           4    damages, general damages in *Kerman v. City of New York* and

10:54AM    5    the idea behind general damages is that they are available

           6    "as a matter of law" once the constitutional violation is

           7    established, and that the damages are intended to compensate

           8    for the inherent nature of the constitutional harm.  They are

           9    not meant to compensate for individualized damages like

10:54AM   10    emotional distress, lost wages, any of that kind of thing

          11    that would have to be pleaded and proved up by each person.

          12    It's just --

          13        **THE COURT:**  So you are not seeking any personal injury

          14    damages?

10:55AM   15        **MS. WILNER:**  I'm not saying that, your Honor, but I want

          16    to look at each of these categories separately so that we can

          17    look at the full scope of damages.  And also what I think is

          18    really concerning you, which is how am I going to deal as a

          19    judge with all these damages and what is the jury going to be

10:55AM   20    looking at?

          21        **THE COURT:**  Well, I have a different -- that is a

          22    problem but one of the issues is:  It's your complaint --

          23        **MS. WILNER:**  Yeah.

          24        **THE COURT:**  -- you're the master.  You get to decide

10:55AM   25    what kind of damages you are seeking.  And there used to be

32

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:55AM  1  kind of a common method, oh, you can't have Class

2  Certification for personal injury cases, it's just not a

3  thing and the courts have said that's not really the rule,

4  that's not how it works out.

10:55AM  5      But there are fairly few Class Certification cases with

6  personal injuries that are, you know, non-economic.  And, so,

7  I am kind of surprised when arguably some of it is de

8  minimis, why we're going down that path.

9      **MS. WILNER:**  Yeah.  I think...

10:56AM  10      **THE COURT:**  I mean, it's your choice but it is a

11  stumbling block which I could understand if somebody had

12  catastrophic personal injuries like there's no way this isn't

13  going to be a focus of our case.  Here, if the generalized

14  injury is you violated my Fourth Amendment rights and that is

10:56AM  15  the core injury and everybody suffers that same injury --

16      **MS. WILNER:**  Yes.

17      **THE COURT:**  -- and you're not getting into the degree of

18  outrage, that's a much different case than when we are

19  hearing about the stress or -- I mean, I'm trying to think of

10:56AM  20  what it could be other than emotional distress if you cover

21  the economics.

22      So tell me a little bit about that.

23      **MS. WILNER:**  Yeah.  And from our perspective we don't

24  think those kinds of damages are likely to be a significant

10:57AM  25  feature.  We're not actually aware of any unnamed Class

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:57AM  1  members at this point who are planning to assert those kinds

2  of damages and there may be --

3      **THE COURT:**  But you decide what kind of damages the

4  Class is going to assert with the Class representatives.

10:57AM  5  And, so, to tell the Court this far into the case at Class

6  Certification that, you know, I don't know that the Class

7  members are going to want to pursue this or not, it just kind

8  of hangs out there and then thinking down the path, there

9  will have to be some kind of management tool and we have the

10:57AM  10  supplemental authority about do you decertify at that point,

11  do you not do it, what do you handle with it?

12      And so, in light of how vague it sounds like this claim

13  is at this point, I'm kind of perplexed as to why it's in the

14  case.  That's your business but it is creating an issue that

10:58AM  15  needs to be resolved in terms of is this something that the

16  Court could do in a Class setting?

17      **MS. WILNER:**  Yeah.  Well, if we look at all of the

18  potential damages that there are in this Class, we're seeking

19  general damages.  We've also asked for punitive damages and

10:58AM  20  equitable disgorgement, all of those are common forms of

21  damages.

22      Then we are seeking recovery for economic harms.  And

23  the economic harms are going to be things like how much do

24  people pay for checkpoint tickets or multiple tinted windows

10:59AM  25  tickets.  How much did they pay in impound fees and those

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

10:59AM 1 damages are individual. But the city has data and records

2 that already have the amounts calculated for every single

3 Class member. So, even though those economic harms are

4 individual, they're easily calculated and they're the type of

10:59AM 5 individual damages that is very routine and commonplace

6 probably in every damages Class Action.

7 So I would say like if you're, if you're looking at this

8 as maybe an iceberg or a pyramid, the general damages and the

9 other common damages and the economic harms are going to be

10:59AM 10 most of that period and then very much at the tip of it is

11 this prospect that some Class members may wish to seek

12 individual -- other individual damages on top of that.

13 THE COURT: Okay.

14 MS. WILNER: Now --

11:00AM 15 THE COURT: So say that's going to happen and how is it

16 going to happen. So you're going to have a proof of claim

17 form and they're going to check off I want to pursue the

18 following additional damages and then either the person or

19 the entity that's sorting out the claims, or the Court

11:00AM 20 itself, is going to say there's, you know, there's a thousand

21 people who want additional damages, now I need two trials for

22 those people, how is that going to work practically?

23 Because --

24 MS. WILNER: I --

11:00AM 25 THE COURT: -- it's troubling to me that you're like,

35

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:00AM   1   well, they may be asserting these claims.  It's your

          2   complaint.  It's either in there or it's not.

          3       **MS. WILNER:**  You know, I think it's just really hard to

          4   tell from this vantage point what that will look like because

11:01AM   5   we haven't had dispositive motions and we haven't had the

          6   trial.  So we don't even know what are the claims that we

          7   will be seeking damages on.

          8       **THE COURT:**  You are in control of all of that.  I mean,

          9   I've never had a Class Certification where the nature of

11:01AM  10   damages is unknown this far into it.  You have 99 percent of

         11   what you're asking for but you're not telling me -- and you

         12   don't need to say -- I'm giving up the 1 percent but the

         13   1 percent is what's going to cause the individualized trials

         14   and that's something the Court needs to be realistic about as

11:01AM  15   to how is that going to work out.

         16       **MS. WILNER:**  Yeah.  And, again, this is where I would

         17   say that that 1 percent of potential damages is like the tail

         18   wagging the dog of this entire Class Certification.  And when

         19   we get to that point, if we get to that point, we can decide

11:02AM  20   how to handle that category of damages.  And there are a lot

         21   of options.  So, there are -- is the possibility of dividing

         22   people into separate groups.  There are Special Masters.

         23   Magistrates can be involved.  Decertification is an option.

         24   So it's really, I think, going to depend on factors that we

11:02AM  25   don't even know right now and it could be possible that

36

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:02AM    1    nobody comes forward to --

2       **THE COURT:** Well, how are you --

3       **MS. WILNER:** -- assert --

4       **THE COURT:** Sorry, I didn't mean to jump on you,

11:03AM    5    especially for the court reporter.

6       How are you going to determine who's coming forward so

7    it doesn't like -- when I said I was pragmatic, I am thinking

8    about when am I going to know? Is it going to be when the

9    claim form when you let me know? Because it's an issue in

11:03AM   10    the case right now, something that the defendants are

11    concerned about --

12       **MS. WILNER:** Yeah.

13       **THE COURT:** -- and the Court's concerned about it and

14    when do you foresee this coming up? Because I don't see it

11:03AM   15    coming up on summary judgment. I don't think that's the

16    stage where somebody raises their hand in the air and says,

17    by the way, I want to pursue a separate claim for myself on

18    the following basis. Where do you see it coming up?

19       **MS. WILNER:** I think the claim form --

11:03AM   20       **THE COURT:** Okay.

21       **MS. WILNER:** -- would be where these issues would be

22    fleshed out. And we have to remember that there's going to

23    be general damages. People are going to be compensated for

24    their economic harms. So how many people -- and there may be

11:03AM   25    also, and this is something that we haven't discussed, but

37

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:03AM  1  there may be types of harms that they can't be compensated

2  for in this Class Certification because there's intervening

3  causation so they're not entitled to it or whatever.  We

4  haven't gotten to the -- and maybe I messed up the case by

11:04AM  5  bringing in more questions -- I hope not -- but I think the

6  point is that it's, it's really too early right now to know

7  the shape of it.

8      But through the claim form practice, through the claim

9  form we should be able to have an idea of, you know, how many

11:04AM  10  people are we talking about and what is it that they want to

11  present.  And we --

12      **THE COURT:**  That's really not what happens with the

13  claim form, though.  So, I mean, I've never seen a claim form

14  that asks potential Class participants after certification --

11:04AM  15  because that's when it would come out -- what do you want to

16  ask for.  So, for example, in the dairy farmers.  We had a

17  formula based on milk weight and people provided records of

18  how much milk they produced during a particular time period.

19  There was a formula, this is how much you're entitled to.

11:05AM  20  And there was no, like, category "and what else would you

21  like to complain about that the defendants are doing and seek

22  recovery for".  So, have you ever seen that in a claim form?

23      **MS. WILNER:**  I'm not sure that I have.

24      Another potential option that we've thought about is

11:05AM  25  including something in the notice process that would ask

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:05AM 1 people to identify whether or not they thought that they

2 would want to present this category of damages.  So I think

3 that there are a number of points in the process where it

4 would be possible to identify whether this is even an issue.

11:05AM 5 **THE COURT:**  Okay.

6 **MS. WILNER:**  Are there other concerns about damages that

7 have been troubling the Court?  No.

8 Moving on, then, to the other piece of the 23(b)(3)

9 discussion, the superiority analysis.  As you know, there are

11:06AM 10 a number of factors that go into the superiority analysis and

11 we discussed many of them in our briefs.

12 I want to rely on our briefs for a lot of the

13 superiority discussion but I do want to highlight the sheer

14 number of Class members in this case because that, in and of

11:06AM 15 itself, weighs in favor of certification.  These -- we've got

16 thousands of people who have identified virtually identical

17 claims and having to litigate those claims one by one by one

18 by one, I mean, that just doesn't make any sense.  That would

19 overwhelm the courts.  That would overwhelm the city.  It

11:07AM 20 would probably overwhelm us, although, you know, we're

21 willing to undertake it if we have to.  And if there's no

22 Class action, then the alternative to doing all of those

23 thousands of trials one by one is just to leave thousands of

24 harmed people with no redress for constitutional violations,

11:07AM 25 and that's not an acceptable outcome, either.

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:07AM    1      So just given the strong close association of all of

2      these claims that are virtually the same as each other and

3      the number of people who have these claims, the Class action

4      is clearly the superior and the most efficient vehicle for

11:07AM    5      resolving them.

6      We don't see significant management issues in this

7      Class.  Certainly with Class member identification, the

8      process is nearly complete at this point, just a final step.

9      And we think that the best way to proceed with the trial is

11:08AM   10      to phase the trial.  So, to begin with the jury determination

11      of liability to the checkpoint and Tinted Windows Class

12      members and have that same jury determine general damages

13      afterwards if we prevail on those claims.

14      But I want to make sure that I have an opportunity to

11:08AM   15      answer any additional management questions you have.

16      **THE COURT:**  So management on all checkpoint-based claims

17      seems relatively straightforward and easy.  We have the dates

18      and the times and the tickets.

19      And once you move beyond the checkpoints, then it gets a

11:08AM   20      lot more amorphous and that's what I have been thinking about

21      is when you take it into roving controls and you're

22      essentially asserting the same claims and you have a due

23      process component to it and it will be more difficult to see

24      whether there's any -- that's where I'm kind of getting

11:09AM   25      bogged down.

40

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:09AM  1     **MS. WILNER:**  I see.  So the Tinted Windows Class is just

2     as ascertainable as the checkpoints Class.  And we have a

3     spreadsheet that has on it a list of all of the people who

4     received multiple tinted windows tickets in a single stop.

11:09AM  5     And so identifying the Class members is not going to be a

6     difficulty.  And then --

7          **THE COURT:**  I guess I would just say it's almost a

8     different case and it doesn't mean that you can't bring it

9     but it is -- I understood the crux of the checkpoint, and

11:09AM  10    even the crux of this case, is these checkpoints are targeted

11    to certain neighborhoods and anybody going in or out is going

12    to be detained and it's unconstitutional, it's not reasonable

13    and then to add insult to injury, once they're detained, they

14    get loaded up with traffic violations and it's incentivized

11:10AM  15    and so they are bearing the burden of, you know, paying the

16    overtime.

17         Once you move beyond that, it is a different type of

18    claim which is, in general, what happens when you have tinted

19    windows because obviously if you get stopped with tinted

11:10AM  20    windows, the officer does not know the race of the driver.

21    Then we look at the pinpoint of the stop and whether it's one

22    ticket or two tickets or no tickets.  And are they recording

23    race in those stops?

24         **MS. WILNER:**  No, they did not record race in those

11:10AM  25    stops.

41

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:10AM    1    **THE COURT:** So you're doing it on the back-end based on

2    the tickets, right? So --

3    **MS. WILNER:** Yes.

4    **THE COURT:** -- how would you eliminate people who were

11:11AM    5    stopped and not given a ticket and the officer says you got

6    to take care of that?

7    **MS. WILNER:** The Tinted Windows Class -- and maybe let

8    me just go back to the Class definition is defined as: All

9    Black and/or Latino individuals who received multiple tinted

11:11AM    10    windows tickets from the BPD in a single traffic stop on or

11    after June 28, 2015.

12    So people who were stopped but were not issued a ticket

13    are not members of the Tinted Windows Class.

14    **THE COURT:** Right. But I'm trying to figure out how

11:11AM    15    that determination gets made when you're telling me that the

16    race of the driver's not recorded. There's no record of

17    people who were stopped but weren't ticketed and the argument

18    is that you couldn't be stopping these people based on race

19    because you can't see through the tinted windows. And

11:12AM    20    that -- I think that's a very different claim than your

21    checkpoint claim.

22    So then I'm into a more of a management in terms of is

23    this even a Class or is this -- if you had a policy that said

24    this is what we're trying to accomplish with tinted windows,

11:12AM    25    then it could be directed at the policy but I don't see it as

42

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:12AM 1  that black and white in terms of what the policy says.

2      **MS. WILNER:**  Okay.  So, I think there are a few layers

3  here that I'd like to respond to.

4      First of all, your -- I agreed with your description of

11:12AM 5  the Checkpoints Class but the behavior that you were talking

6  about, the targeting of Black and Latino communities and

7  people for traffic enforcement and ticketing wasn't limited

8  to checkpoints.  So the same officers who are doing those

9  checkpoints were also going to those same neighborhoods where

11:13AM 10 the checkpoints were being run and engaging in multiple

11 tinted windows ticketing there.  And those -- many of those

12 same practices are still continuing today and that's the

13 focus of the injunctive claims for the Traffic Enforcement

14 Class.  And I definitely I know that the Court has concerns

11:13AM 15 about that Class so I want to discuss that a lot.

16     So there is a spectrum and a pattern of behavior here.

17 From all of that spectrum and pattern of behavior for the

18 damages Class, we selected out two groups of people whose

19 claims could and should be litigated together because they

11:13AM 20 are so similar and they all experienced the same harm and

21 that's people who are harmed by checkpoints and Black and

22 Latino individuals were harmed by multiple tinted windows

23 ticketing.

24     Now I do want to say that once the officer stops the car

11:14AM 25 and sees the driver and is issuing a tinted windows ticket,

43

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:14AM  1   that officer does see the race of the driver.

2       **THE COURT:**  Agreed.  But they if they don't record it,

3   we have no way of knowing.

4       **MS. WILNER:**  Oh, I see.  Well, the City does, actually

11:14AM  5   does --

6       **THE COURT:**  I just asked you if they did and you said

7   they didn't so.

8       **MS. WILNER:**  Well, so, it's not quite so

9   straightforward.  The Buffalo Police Department does not

11:14AM  10  require officers to record on the race of -- on the ticket,

11  itself, the race of the person being ticketed.  They could do

12  that but they don't do that.  So it's not on the ticket.

13  But --

14      **THE COURT:**  Nor could it be because you wouldn't be able

11:14AM  15  to discern the race without asking a lot of nosy

16  inappropriate questions.  Always -- I mean, you couldn't

17  always do that.

18      **MS. WILNER:**  Right.  Well, what our police practices

19  expert has said about that is what officers should do is

11:15AM  20  record their perceived -- their impression or their

21  perception of what the person's race is and that what you're

22  actually wanting to do is in that instance is have a record

23  of officers' perceptions.  That's really for the second

24  claim, again, the traffic enforcement claim.

11:15AM  25      But City data actually has matched many of the tickets

44

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 11:15AM | 1 | to a race because the TraCS system in which -- the tickets |
| | 2 | are in the system called TraCS but TraCS is a part of a |
| | 3 | larger system that includes everything that the Buffalo |
| | 4 | Police Department does and that system is called CHARMS.  And |
| 11:16AM | 5 | CHARMS actually has a lot of race data in it from other |
| | 6 | situations in which people encountered the justice system and |
| | 7 | their race was recorded in those other areas because while |
| | 8 | race is not typically recorded for traffic violations, it is |
| | 9 | recorded for misdemeanors and other types of encounters that |
| 11:16AM | 10 | people have with the criminal system. |
| | 11 | So, in fact, you can go on the city of Buffalo's website |
| | 12 | and you can go into their data portal and you can download |
| | 13 | traffic tickets and it has a field in it for the race of the |
| | 14 | person ticketed and that race is populated most of the time. |
| 11:16AM | 15 | What our data -- and I don't want to go into too much |
| | 16 | detail on this because I'm worried I'll get it wrong -- but |
| | 17 | if you look in Dr. Bjerk's report, he used that City data. |
| | 18 | But he also had another method of assigning race to |
| | 19 | individuals.  I don't want to go too much into detail with it |
| 11:17AM | 20 | but it is explained in a lot of detail.  And the two ways |
| | 21 | that he did it matched each other. |
| | 22 | And, so, we are very confident that we are able to if -- |
| | 23 | going back to the question of manageability -- that we are |
| | 24 | able to identify the race of Class members based on the data |
| 11:17AM | 25 | that the City has in its possession.  And, of course, if |

45

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:17AM 1 there is a claim form process and if there is a question

2 about a particular individual, it can always be clarified at

3 the proof of claim stage whether or not a person actually is

4 a member of the defined Class. And, of course, that's

11:18AM 5 something that has to happen regardless.

6 I'm not sure if I was able to, if I, if I got to

7 answering all of your questions about the manageability of

8 this Class.

9 **THE COURT:** Let's move on. Yes, you have.

11:18AM 10 **MS. WILNER:** Okay. So let's talk about the Traffic

11 Enforcement Class. And I appreciate your Honor sharing your

12 hesitations and my job is to clear up those hesitations.

13 This is a very different kind of Class because this

14 Class is not seeking damages for past times. We are seeking

11:18AM 15 declaratory and injunctive relief for ongoing and future

16 violations. So this is a forward-looking Class. And the

17 certification is under Rule 23(b)(2). And so the focus of

18 this Class is on the policies and the practices of the

19 Buffalo Police Department.

11:19AM 20 And it is a broader Class definition. But it's okay

21 that it's a broader Class definition because the policies and

22 practices that are at stake affect a broader group of people.

23 And the injunctive relief that we're ultimately asking

24 for is going to affect and benefit all of that group of

11:19AM 25 people. And there's no particular individualized relief that

46

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:19AM 1   people would be getting as part of this Class.  This is about

2   addressing systemic problems with policies and practices of

3   the police department.  And --

4           **THE COURT:**  Do you see a significant difference between

11:20AM 5   the declaratory component and the injunctive component so

6   saying you can't do X, Y or Z that it's a violation of the

7   Fourth Amendment is one thing.  Enjoining future behavior

8   based on predicting future events is a different task.

9           Do you see the -- do you make that distinction yourself?

11:20AM 10          **MS. WILNER:**  Yes, I do.  They are very different.

11          The standing requirements are the same for the two forms

12  of relief but saying that a constitutional -- that the

13  Constitution has been violated and directing changes in

14  behavior to address the constitutional violation are two

11:20AM 15  different things.

16          But that kind of redress for constitutional violations

17  is commonly done by courts all across the country and in

18  New York.  And we've cited probably six or seven examples in

19  our brief of similar claims for unconstitutional policing

11:21AM 20  practices where courts have redressed those policing

21  practices with injunctive relief and those cases also had

22  similar definitions to the definition in our case.

23          So this is a large Class.  A lot of people are affected

24  by traffic enforcement in the city of Buffalo and because it

11:21AM 25  is prospective, the Class is going to include in it future

47

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 11:21AM | 1 | members.  That's just a nature of the (b)(2) certification |
| | 2 | always.  And so, again, no issues with numerosity. |
| | 3 | And, in fact, in its brief, the City conceded all of the |
| | 4 | 23(a) factors for this Traffic Enforcement Class including -- |
| 11:22AM | 5 | **THE COURT:**  Whether the City challenges or the |
| | 6 | defendants challenge numerosity for any of the Classes? |
| | 7 | **MS. WILNER:**  They didn't.  They didn't.  And for this |
| | 8 | Class they didn't challenge commonality or typicality or |
| | 9 | adequacy, for that matter. |
| 11:22AM | 10 | But commonality is really important for any (b)(2) |
| | 11 | certification because if the Court is going to be issuing an |
| | 12 | injunction, it has to insure that it's addressing the same |
| | 13 | harms and in this case the court would be -- |
| | 14 | **THE COURT:**  Why does the Court need to have a separate |
| 11:22AM | 15 | Traffic Enforcement Class?  So, I do think the standing |
| | 16 | requirement is different in terms of an injunction.  There |
| | 17 | needs to be a possibility of a injury that's not shared by |
| | 18 | the general public and I think that I could order injunctive |
| | 19 | relief without this Class for the other Classes. |
| 11:23AM | 20 | **MS. WILNER:**  I don't believe that's correct, your Honor. |
| | 21 | **THE COURT:**  So, if I find, or the jury finds, a |
| | 22 | violation of the Fourth Amendment and I would have to find |
| | 23 | that there was some form of prospective harm but I would not |
| | 24 | need a separate Class to do that. |
| 11:23AM | 25 | **MS. WILNER:**  I, I think you may, your Honor.  I think |

48

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:23AM 1 you may need the separate Class for the prospective

2 injunctive relief because.

3     **THE COURT:** So, for example, I'll go back to the dairy

4 farmers. You can't do this particular monopsony practice any

11:23AM 5 more and you're not allowed to tie compensation to X, Y and Z

6 any more. You don't need a separate Class for that.

7     **MS. WILNER:** Mm-mm. Well, what I would say to that,

8 your Honor, is the, the checkpoints Class and the Tinted

9 Windows Class are seeking damages for two very specific, very

11:24AM 10 tightly bound policies and practices and the reason for that

11 is because looking at the predominance requirement under

12 (b)(3), the Class has to be very unified in that way in order

13 for the common questions to predominant over the individual

14 issues.

11:24AM 15     But in the (b)(2) universe there is no requirement that

16 common questions predominate over individual issues. All you

17 need is a common question. And the unlawful behavior that

18 the BPD is currently engaged in is broader than checkpoints

19 and tinted windows. It is happening in the same

11:25AM 20 neighborhoods. It's happening to the same people. So, the

21 Class of Black and Latino drivers in Buffalo is still being

22 harmed by racially discriminatory traffic stops, racial

23 profiling, ticketing. And that is why injunctive relief is

24 necessary.

11:25AM 25     So the common questions that we're looking at for this

49

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:25AM  1   Traffic Enforcement Class is whether the City today is

2   continuing to engage in racially discriminatory traffic

3   enforcement and, if so, whether the City's deliberate

4   indifference to that ongoing discrimination has caused

11:25AM  5   practices to continue.  And we've included in this also

6   injunctive relief for the Checkpoints and Tinted Windows

7   Class.

8        I suppose if the preference is to handle, you know,

9   those components, you know, as part of the (b)(3)

11:26AM 10   certification, I don't really have an issue with that.

11        But in terms of the ongoing racial discrimination, we

12   are asking for injunctive relief to correct that harm.  And

13   the question of whether discrimination is happening and

14   whether it is a policy or practice of the City of Buffalo,

11:26AM 15   those questions are important common questions that every

16   single Class member has had.

17        And you had asked about the relevance of the Gennaco

18   Report.  The Gennaco Report is really critical evidence of

19   discriminatory intent and ongoing discrimination.  So, we

11:27AM 20   have a lot of evidence that we intend to present at trial to

21   establish that racial discrimination in traffic enforcement

22   is a current, ongoing practice.

23        **THE COURT:**  But you would agree with me that's not a

24   question I reach in Class Certification?  So I don't need to

11:27AM 25   find that they're not doing a good job training the officers

50

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:27AM   1   and they're not doing a good job in responding to complaints.

          2   None of that is something that I'm going to be inquiring

          3   about right now.

          4       **MS. WILNER:**  No.  You are going to just be inquiring

11:27AM   5   about whether that question is common to all of the Class

          6   members.  And the Gennaco Report supports that it is and it

          7   also supports the common nature of the proof that all of the

          8   Class members are able to rely on the same body of evidence

          9   in order to establish their claims.  So that's really the

11:27AM  10   relevance of the report at the Class Certification stage.

         11       **THE COURT:**  Okay.

         12       **MS. WILNER:**  In terms of standing, which defendants have

         13   challenged, the law in the Second Circuit is that only one

         14   named plaintiff needs to have standing in order for the Class

11:28AM  15   Certification to proceed.  Now, of course, we believe that

         16   all of our named plaintiffs have standing.  They're in the

         17   same position as each other.  They have the same claims as

         18   each other.

         19       What the courts have said is that when individual

11:28AM  20   plaintiffs in police discrimination or unconstitutional

         21   policing case like this, when they have faced repeated past

         22   incidents and that there's also an official policy, or an

         23   equivalent, that those two things together create standing

         24   for prospective relief.

11:28AM  25       And we meet that standard, your Honor.  All of our named

51

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:28AM 1 plaintiffs have described at least one incident where they

2 believe they were subjected to racial discriminatory traffic

3 enforcement.  Many of them have talked about more than one

4 time when they believe they have suffered discrimination in

11:29AM 5 traffic enforcement from the BPD.

6 There is compelling evidence that we plan to submit

7 around statistical disparities, around racial animus within

8 the Buffalo Police Department, around the mayor's admissions

9 to the Menino Survey of theirs that BPD officers treat white

11:29AM 10 people somewhat better than black people and that racism on

11 the police force is partially responsible for police violence

12 in Buffalo.  So -- and we have a lot of other evidence that's

13 similar.

14 The really critical piece of the Gennaco Report is that

11:30AM 15 it underscores the City's policymakers' responsibility for

16 this situation.  Because discrimination is happening and the

17 City is not correcting it.  They are not supervising

18 officers.  They are not monitoring.  They're investigation

19 process is broken.  It is an unbelievable Catch-22 where the

11:30AM 20 commissioners say that the only thing they can do to address

21 discrimination is to adjudicate individual complaints that

22 people file with the Internal Affairs Department but then the

23 Internal Affairs Department's procedures are so lacking and

24 so far beyond any standard, that they're incapable of

11:30AM 25 assessing whether discrimination is occurring.

52

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:30AM  1   The City has refused to collect data or look at data

2   that could help to elucidate this.  They are not supervising

3   their officers.  They're not auditing.  They're not -- the

4   body camera footage that they agreed that they're not going

11:31AM  5   to look at to see if officers are treating people with

6   respect or treating people in a non-discriminatory manner.

7   And, so, those 120 pages or whatever it is of the

8   Gennaco Report records in detail all of the ways that the

9   policymakers within the City of Buffalo have failed to do

11:31AM 10   anything -- anything -- to identify and address and correct

11   ongoing racial discrimination.  And that gives rise to

12   liability under Monell.  And that is also an official policy

13   that provides the basis for standing.  I will refer the Court

14   to our briefs but we cited a number of very similar cases

11:32AM 15   where courts have found that they had standing to bring

16   claims for prospective injunctive relief.

17   And then -- well, let me just stop here.  Are there

18   questions remaining in your mind on standing?

19   **THE COURT:**  There's questions remaining but you helped

11:32AM 20   my questions and you answered with your answers.

21   **MS. WILNER:**  Thank you.

22   Then you had also asked about the injunctive relief and

23   although I don't have it handy, so I'm going to refer the

24   Court to the amended complaint.  The amended complaint sets

11:32AM 25   out specific relief that we would be asking the Court to

53

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 11:32AM | 1 | order.  And the types of relief that we're asking for are |
| | 2 | types of relief that are very commonly ordered in other |
| | 3 | cases.  So whether it's collecting race data for people who |
| | 4 | are ticketed and then actually being able to look at that |
| 11:33AM | 5 | data, whether it's improving training for officers, there are |
| | 6 | some specific things that we've asked for such as not running |
| | 7 | the checkpoints anymore, and ending the multiple tinted |
| | 8 | windows ticketing practices. |
| | 9 | But it's really about changing the policies and |
| 11:33AM | 10 | practices of the Buffalo Police Department so that it is |
| | 11 | possible for the police department to meet its constitutional |
| | 12 | obligations which is to identify when racial discrimination |
| | 13 | is occurring and to take the steps that it needs to prevent |
| | 14 | it.  And it's not to say that the City has to -- and I don't |
| 11:33AM | 15 | think it can -- prevent 100 percent of every incident from |
| | 16 | ever occurring but the City has to have policies and |
| | 17 | practices in place to address the situation.  It can't just, |
| | 18 | you know, put its head in the sand and allow discrimination |
| | 19 | to continue and to say, oh, I didn't, I didn't know about it. |
| 11:34AM | 20 | I've buried my head in the sand, I've chosen not to look and, |
| | 21 | therefore, I don't have to do anything, that's not the way |
| | 22 | the ball works and that's -- |
| | 23 | **THE COURT:**  The City -- |
| | 24 | **MS. WILNER:**  -- not what the Constitution demands. |
| 11:34AM | 25 | **THE COURT:**  If the City said we are going to stop all |

54

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:34AM  1   checkpoints except DUI checkpoints and we're going to have a

2   policy that if you issue a tinted window violation, you can

3   only issue one, how much of your injunctive relief -- other

4   than general don't violate the Fourth Amendment -- how much

11:34AM  5   of your injunctive relief would go by the wayside?

6       **MS. WILNER:**  I don't think very much, your Honor,

7   because a really important part of this Class is the fact

8   that the Buffalo Police Department is continuing to engage in

9   racial profiling with stops and with tickets.  And, so, it's

11:35AM  10  extremely important that there be changes to monitoring

11  supervision and discipline of officers to prevent that racial

12  profiling and racially-motivated stops and ticketing from

13  continuing.  And that's not relief that really flows from

14  either of the Checkpoints Class or the Tinted Windows Class.

11:35AM  15  It's really broader and it's about practices that are

16  happening now.

17      **THE COURT:**  So --

18      **MS. WILNER:**  And prac --

19      **THE COURT:**  So getting back to the pragmatic.

11:35AM  20      **MS. WILNER:**  Yeah.

21      **THE COURT:**  And you know that if the Court issues an

22  injunction, it has to be very specific --

23      **MS. WILNER:**  Yeah.

24      **THE COURT:**  -- as to who it's directed to and what's

11:36AM  25  necessary and it can't be just comply with the Fourth

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:36AM  1  Amendment.

2      **MS. WILNER:**  Right.

3      **THE COURT:**  And it can't be:  Adopt appropriate measures

4  to insure that documentation of all civil traffic stops and

11:36AM  5  vehicle checkpoints is retained.

6      I mean, it has to be very, very specific.

7      **MS. WILNER:**  Yeah.  So, this is not something that --

8  it's in our briefing but I can tell you that's the main thing

9  that our organization does is these kinds of civil rights

11:36AM  10  Class Actions seeking injunctive relief to reform complex

11  governmental systems so that they comply with the

12  Constitution and the law.

13      And so the way that that normally happens there's a

14  couple of paths.  One is that we could get to a point where

11:36AM  15  the defendants and we agree that there is a problem and

16  sometimes this doesn't happen until after the liability

17  issues have determined but once -- it's very common that

18  there is then a collaborative process between the parties and

19  the Court to determine the shape of the injunction that's

11:37AM  20  eventually issued.

21      **THE COURT:**  Well, that's why --

22      **MS. WILNER:**  I --

23      **THE COURT:**  -- I asked if they disavow future

24  checkpoints and they say no tinted window tickets beyond one,

11:37AM  25  how much of that takes care of that.

56

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:37AM   1      But I'm understanding you to say you're looking for much

          2  broader reforms?

          3      **MS. WILNER:**  That's correct.  So that really wouldn't --

          4  that would not provide adequate relief to our Class but what

11:37AM   5  the relief would be, there has to be a lot more detailed

          6  conversation about that.  So, sometimes the courts will ask

          7  each side to make a detailed proposal.  There can be

          8  hearings.  There can be presentation of evidence.  In the

          9  *Floyd* case -- which was the New York City stop and frisk

11:38AM  10  case -- there was a lot of testimony and presentation and a

         11  very detailed injunctive plan that the judge issued after

         12  taking in all the evidence from both sides.

         13      So there's different ways that courts handle this.  But

         14  you have to be able to hear from both sides because there is

11:38AM  15  information that we have from our clients' experience and

         16  there's information that the defendants have from, on their

         17  side, from their administrative oversight of policing.  And

         18  an injunction is only effective when both sides are able to

         19  provide that information to the Court and then relief is

11:38AM  20  fashioned to address the specific practices that are causing

         21  the harm.

         22      And usually there are also a series of benchmarks or

         23  goals that we would meet or expectations that have to be met

         24  in order to determine whether the injunctive relief is

11:39AM  25  achieving the goal of ending the constitutional violation.

57

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 11:39AM | 1 | So it is a step-by-step process but it's one that courts do |
| | 2 | frequently. |
| | 3 | I think I'll conclude and step down, your Honor.  Thank |
| | 4 | you. |
| 11:39AM | 5 | **THE COURT:**  All right.  Let's start with defendants. |
| | 6 | We've got about a little shy of a half hour before noon.  I'm |
| | 7 | happy to break later if you want but I want to give you equal |
| | 8 | opportunity.  So however long you want to take, I will be |
| | 9 | here. |
| 11:39AM | 10 | **MR. RUSS:**  Thank you, your Honor. |
| | 11 | I don't intend on taking that long unless it's to answer |
| | 12 | your questions. |
| | 13 | Thank you.  And may it please the Court. |
| | 14 | Before I get started, I wanted to thank the Court for |
| 11:40AM | 15 | coming from Vermont, for bringing her staff from Vermont.  I |
| | 16 | know it's out of the ordinary and we truly appreciate it. |
| | 17 | I guess the best we could do for you is to get some |
| | 18 | green marble. |
| | 19 | **THE COURT:**  That does look like Vermont marble. |
| 11:40AM | 20 | **MR. RUSS:**  Also, your Honor, congratulations.  I |
| | 21 | understand that you are now chief. |
| | 22 | **THE COURT:**  For the second time, yes. |
| | 23 | **MR. RUSS:**  And I'm sorry that I have no PowerPoint.  I |
| | 24 | have no real excuse other than I'm kind of a dinosaur. |
| 11:40AM | 25 | I'm going to go, actually, backwards.  I'm more |

58

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 11:40AM | 1 | concerned with addressing the Court's musings than I am |
| | 2 | making a formal argument.  So what I will try to do is |
| | 3 | address some of the musings that you have made and then if |
| | 4 | there's something left, I'll do a formal argument. |
| 11:41AM | 5 | But just before I address the musings, I feel compelled |
| | 6 | to say two things:  Even though we are talking about |
| | 7 | discriminatory practices and, you know, for purposes of this |
| | 8 | motion, we are talking about discriminatory practices and |
| | 9 | discriminatory policies, the City defendants, and in |
| 11:41AM | 10 | particular the Mayor and the Former Mayor, do not concede |
| | 11 | discrimination.  It's difficult for me to imagine that our |
| | 12 | Mayor, who just stepped down last week, had been mayor for 19 |
| | 13 | plus years and is Black and one of the police commissioners |
| | 14 | involved during the timeframe of this case is Black, and a |
| 11:42AM | 15 | number of the police officers involved are Black, it's just |
| | 16 | difficult to conceive that the kind of discriminatory animus |
| | 17 | that plaintiffs recite existed. |
| | 18 | And the other thing I feel compelled to say, your Honor, |
| | 19 | is that you had asked for some background on the checkpoints |
| 11:42AM | 20 | and how they operated. |
| | 21 | **THE COURT:**  But you would, you would agree with me, |
| | 22 | women discriminate against women, people over the age of 40 |
| | 23 | can discriminate against other people over the age of 40.  I |
| | 24 | mean, there isn't any preclusion that just because you are a |
| 11:42AM | 25 | member of the alleged targeted Class, that categorically you |

59

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 11:42AM | 1 | couldn't be engaged in discrimination? |
| | 2 | **MR. RUSS:** I do concede that, your Honor. However, I |
| | 3 | state that the way it's been framed in this case is this vast |
| | 4 | conspiracy and in order for plaintiffs' claims to be |
| 11:43AM | 5 | believed, all kinds of people were working together to erect |
| | 6 | the system and carry out this process and it's just, it's not |
| | 7 | supported by the evidence. |
| | 8 | The second thing that the Court should know -- and this |
| | 9 | is about the checkpoints. You had asked to explain how they |
| 11:43AM | 10 | worked and how they operated. Well, plaintiffs left out the |
| | 11 | start. The checkpoints started when the East Side of |
| | 12 | Buffalo -- which I will stipulate is predominantly Black and |
| | 13 | has been since the 1940s -- the east side of Buffalo through |
| | 14 | public meetings, many at churches, others at community |
| 11:43AM | 15 | centers asked the mayor and the police department for a |
| | 16 | greater police presence on the East Side. |
| | 17 | And the first -- the first and motivating principle of |
| | 18 | the checkpoints was traffic safety. There were reports that |
| | 19 | cars were racing through the East Side and bad things were |
| 11:44AM | 20 | happening with cars and we had to do something about the |
| | 21 | traffic on the East Side. That was the start of everything. |
| | 22 | So, I mostly agree with plaintiff's recitation of how the |
| | 23 | checkpoints operated, at least the factual part, but it |
| | 24 | started with a request from the community for a greater |
| 11:44AM | 25 | police presence. Okay. |

60

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:44AM  1    Your musings.  Your first musing was you asked us to

2    discuss summary judgment and how summary judgment might fit

3    into this process.

4        **THE COURT:**  Do you mind if I stop you --

11:44AM  5        **MR. RUSS:**  Sure.

6        **THE COURT:**  -- and go back to -- assume that I, you

7    know, for the sake of argument, that your recitation about

8    how they work and why they were set up works.  I'm trying to

9    understand in Fourth Amendment reasonableness terms.  So,

11:45AM 10    there's a request for a police presence, you start these

11    checkpoints, the checkpoints, I assume based on what I've

12    read, were for public safety not, not so much people are

13    driving too fast but somebody's going to get killed or to get

14    people who have outstanding warrants, that kind of thing.

11:45AM 15    Then what's the thought process with the traffic tickets

16    coming out of it?  How does that get factored into it?

17    Because whether somebody has tinted windows or not doesn't

18    have anything to do with how fast they're driving or how

19    recklessly they're driving and it doesn't have anything to do

11:45AM 20    with whether there's an outstanding warrant or there is an

21    unlicensed firearm in the car or the person's a felon or

22    anything else like that.  So what's that step about?

23        **MR. RUSS:**  So, I think you put your finger on it, your

24    Honor, when you were talking about safety.  If you just stop

11:46AM 25    people and let everyone go with no consequences, what's the,

61

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 11:46AM | 1 | what's the deterrent or what's the remedy for the, for the |
| | 2 | neighborhood?  But if in during the stop you find that there |
| | 3 | are -- you have probable cause, you find that there are |
| | 4 | violations, and then you issue tickets for those violations, |
| 11:46AM | 5 | I think that goes to the purpose of stopping the problem |
| | 6 | traffic. |
| | 7 |     **THE COURT:**  Okay.  I can -- |
| | 8 |     **MR. RUSS:**  In other words if you just stop. |
| | 9 |     **THE COURT:**  No, I understand the consequent part. |
| 11:46AM | 10 |     But to me it sounds a fair amount like stop and frisk, |
| | 11 | where the policy is you're going in, you're going to get |
| | 12 | stopped and you're going to get frisked.  Everybody's going |
| | 13 | to go in.  So it creates an incentive don't come in with a |
| | 14 | gun, don't come in with drugs because this is going to happen |
| 11:47AM | 15 | to you every time you go into the City.  And I'm not seeing |
| | 16 | any kind of concession by the City that that's what this is. |
| | 17 |     And, so, if it's general crime -- or I would say violent |
| | 18 | crime, then it doesn't seem to make sense to issue the |
| | 19 | traffic violations and if it's only about traffic |
| 11:47AM | 20 | enforcement, it seems like overkill in that you would have, |
| | 21 | you know, a secondary inspection and you would be stopping |
| | 22 | people on their way to work and to the grocery store and back |
| | 23 | from school because of an unregistered vehicle or suspended |
| | 24 | license.  And, as I said, it doesn't really seem to make any |
| 11:47AM | 25 | difference whether somebody's got a registered vehicle in |

62

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:48AM | 1 | terms of how careful they drive.  In fact, they might drive
| 2 | more carefully because they don't want to get stopped and
| 3 | have the lack of registration be found.
| 4 |     So, that's the step I'm missing in terms of how does
11:48AM | 5 | this make sense in any kind of objection, you know, and I use
| 6 | the example in my musings of there was a shooting on this
| 7 | particular corner last night, let's get a traffic checkpoint
| 8 | there the next day.  To do what?  To show a police presence?
| 9 | Okay, that's one thing.  But to garner evidence of that
11:48AM | 10 | crime, it's probably too late for that.  So that's where I'm
| 11 | stopped.
| 12 |   **MR. RUSS:**  Yeah, I think you said Broadway and
| 13 | somewhere.
| 14 |     **THE COURT:**  Fillmore or something.
11:48AM | 15 |   **MR. RUSS:**  Let me try three answers to that because I
| 16 | can never do just one.  First one, it is not a stop and frisk
| 17 | or it's not like a stop and frisk because not everyone is
| 18 | detained.
| 19 |     **THE COURT:**  Well they're all initially detained.
11:49AM | 20 |   **MR. RUSS:**  They're all stopped.
| 21 |     **THE COURT:**  Right.
| 22 |   **MR. RUSS:**  But it could be two seconds and they're
| 23 | going.
| 24 |     **THE COURT:**  But we would agree that that stop is a
11:49AM | 25 | detention.  Whether it violates the Fourth Amendment or not,

63

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:49AM  1   it's a seizure.

2      **MR. RUSS:**  I agree that the stop is a detention.  I

3   don't think it's a stop and frisk because it's not applied to

4   everyone single person no matter what.

11:49AM  5      **THE COURT:**  Well let me ask:  Everybody going through

6   that checkpoint has to stop.  So it's not like a -- it's not

7   even like a DUI checkpoint where they're like we're going to

8   stop every fourth car, everybody gets stopped, correct?

9      **MR. RUSS:**  Yes, your Honor.  But some get waved right

11:49AM 10   through so that the stop is a matter of seconds.

11      The second thing I was going to say, your Honor, is that

12   your own description of the deterrence was, oh, I'm going to

13   get stopped and I'm going to get a ticket for such and such

14   and so and so.  That's the deterrence.

11:50AM 15      **THE COURT:**  Okay.

16      **MR. RUSS:**  Even you --

17      **THE COURT:**  Okay.

18      **MR. RUSS:**  Even you said that.

19      And the third -- I'm getting old.  I can't remember.  If

11:50AM 20   it comes back to me, I'll say it.  But...

21      **THE COURT:**  Well I was asking about how would it help

22   after a crime.  Does that prompt you?

23      **MR. RUSS:**  Oh, you did ask that.  And what I was going

24   to say -- and I'm not exactly articulate on this, I

11:50AM 25   understand, but because checkpoints may be inartfully set up

64

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:50AM    1    or set up in sort of some, perhaps, questionable locations,

2    that doesn't mean they're set up for discriminatory purposes

3    and it doesn't mean that because they are set up in certain

4    places, that, you know, automatically there's this violation

11:51AM    5    of the Fourth Amendment.

6    **THE COURT:** Agreed.

7    **MR. RUSS:** Bad judgment is not a violation of the Fourth

8    Amendment, I don't think.

9    You had asked about summary judgment and how does it fit

11:51AM   10    in. I understand that Class Actions are complicated and

11    motion heavy. But I just don't see summary judgment here at

12    all on anything, even the most basic issue were our practices

13    discriminatory? We're going to say no, they're going to say

14    yes. That's a question of fact. And that's before you get

11:51AM   15    to any individual concerns. And I just, I just -- I don't

16    know how.

17    **THE COURT:** Well, there's a robust body of law on the

18    Fourth Amendment as to when you can stop people and when you

19    cannot. And if there isn't a special need and, you know, the

11:52AM   20    best example is the DUI checkpoints which are generally, if

21    they're handled well, are deemed constitutional. I'll be

22    looking at other checkpoints. I mean, the border's kind of

23    not a good example because of the heightened ability of law

24    enforcement near the proximity of the border. But there's

11:52AM   25    plenty of cases about doing that too far from the border and

65

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 11:52AM | 1 | what happens to the analysis under the Fourth Amendment if |
| | 2 | you're not in close proximity to the border.  But you're in |
| | 3 | Montpelier, Vermont and you're checking cars to see if |
| | 4 | somebody is in the country without status.  So it's not like |
| 11:52AM | 5 | it couldn't be resolved on summary judgment. |
| | 6 | **MR. RUSS:**  I agree with you in theory, your Honor.  And |
| | 7 | if this were, you know, one checkpoint or one week or one set |
| | 8 | of checkpoints, then maybe that you can determine whether |
| | 9 | that would violate the Fourth Amendment.  But you have |
| 11:53AM | 10 | hundreds here.  And then within those checkpoints, you have |
| | 11 | potentially hundreds of stops.  So I just -- |
| | 12 | **THE COURT:**  But maybe if I could resolve nothing on |
| | 13 | summary judgment, so be it.  Do you think that that's kind of |
| | 14 | a pivot point for Class Certification? |
| 11:53AM | 15 | **MR. RUSS:**  The Fourth Amendment claims? |
| | 16 | **THE COURT:**  No.  I mean, whether I can -- I wanted you |
| | 17 | to be pragmatic and you're being pragmatic for me by saying |
| | 18 | you're right, this is not something we can just do on summary |
| | 19 | judgment, we're going to have to have a trial and that's |
| 11:54AM | 20 | fine.  But that's not much of a pivot point for Class |
| | 21 | Certification or not, would you agree with me? |
| | 22 | **MR. RUSS:**  I would agree with you but I was endeavoring |
| | 23 | to answer the Court's first question, first musing. |
| | 24 | **THE COURT:**  Okay.  So you think this is not a case in |
| 11:54AM | 25 | which -- |

66

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 11:54AM | 1 | **MR. RUSS:** No. |
| | 2 | **THE COURT:** -- we can do it? |
| | 3 | **MR. RUSS:** No. |
| | 4 | **THE COURT:** Okay. |
| 11:54AM | 5 | **MR. RUSS:** And I'll go further, your Honor. I've had |
| | 6 | Class actions where -- that I've defended where we -- and |
| | 7 | maybe your dairy farmer one was like this -- where you can |
| | 8 | kind of whittle things down but I just don't see that here. |
| | 9 | You mused about general damages. There may be some |
| 11:54AM | 10 | questions of general damages here but it's virtually all |
| | 11 | individual. And the most obvious element or the most obvious |
| | 12 | example of that is, okay, each of these claimants states that |
| | 13 | my Fourth Amendment rights were violated. Well, how does |
| | 14 | that affect that person? What did that cause? How did they |
| 11:55AM | 15 | feel? Did they have job consequences? Did they have |
| | 16 | financial consequences? All that, all those individual kind |
| | 17 | of questions -- which I'll talk more about -- I think so far |
| | 18 | outweigh any notion of general damages. |
| | 19 | The second thing I would say, your Honor -- |
| 11:55AM | 20 | **THE COURT:** Well, let me stop you on that point. Do you |
| | 21 | agree -- and the plaintiffs didn't so you don't have to worry |
| | 22 | about it -- they could do away with all of that, they could |
| | 23 | say all we're seeking is general damages and we weren't |
| | 24 | looking for any individualized harm recovery other than this |
| 11:55AM | 25 | economic component which they say we can easily determine |

67

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:55AM 1  because we've got the records of how many tickets and who

2  they went to and how much they paid and what the impound fees

3  were, they could do away with the whole question of how in

4  particular was your Fourth Amendment violation for you?

11:56AM 5      **MR. RUSS:** I agree with that, your Honor, but I don't

6  see that coming.

7      **THE COURT:** It's not coming to.

8      **MR. RUSS:** And I think -- I'm sorry to refer to your

9  dairy farmer case -- but you had mentioned, you had started

11:56AM 10 to describe damages on that based on the weight of the milk

11 and the volume, whatever. You know, that's a case where

12 there's a formula. And at least as it's pled now, there's no

13 formula. Everything's individual.

14     You had asked about the Traffic Enforcement Class and I

11:56AM 15 know you asked counsel a bunch of questions and I don't

16 necessarily want to repeat those. But what I'd like to add,

17 your Honor is a couple things.

18     You did note that the City has stopped doing these

19 checkpoints and the current Commissioner of Police, Joseph

11:57AM 20 Gramaglia testified under oath that they're stopped, there's

21 no future intent to do them.

22     But I feel -- this is maybe a little obnoxious and I

23 apologize -- but I feel as if plaintiffs don't really know

24 what they want. And I feel, I feel like it's, you know,

11:57AM 25 Donald Trump being asked what he's going to do and he says,

68

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

| | | |
|---|---|---|
| 11:57AM | 1 | well, I have a concept of a plan.  That means you don't have |
| | 2 | a plan.  And I don't think that they know.  What is the |
| | 3 | injunctive relief?  Don't violate the law?  You know, don't |
| | 4 | violate the Fourth Amendment?  I just -- I don't see it. |
| 11:57AM | 5 | **THE COURT:**  Well, let me ask you about the Traffic |
| | 6 | Enforcement Class, obviously the one the Court has the |
| | 7 | biggest problem with, and especially the injunctive relief |
| | 8 | component.  And there is a body of law that's recent from the |
| | 9 | Second Circuit that talks about you can't just say, well, |
| 11:58AM | 10 | Commissioner Jane says she's not going to have -- she's got |
| | 11 | no plans for another checkpoint and that's enough to take |
| | 12 | care of the injury because somebody else can say I'd, you |
| | 13 | know, change that policy in a heartbeat.  And we just had a |
| | 14 | case challenging a facial challenge to a statute in Vermont |
| 11:58AM | 15 | about harassment by electronic means where somebody was |
| | 16 | posting, tagging somebody as a racist and there's apparently |
| | 17 | a group that then attack the business and whether that was a |
| | 18 | violation.  And I found standing because even though the |
| | 19 | Attorney General was like we're not going to do this and we |
| 11:58AM | 20 | don't enforce these, it had happened once and there's no |
| | 21 | guarantee that it won't.  But people do disavow:  We're not |
| | 22 | going to do this again.  And we, you know, a City Council can |
| | 23 | do that. |
| | 24 | And that's not happening in this case, either.  So I'm |
| 11:59AM | 25 | not hearing there will be no more checkpoints.  There will be |

69

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

11:59AM 1   no more than one ticket for tinted windows. So those are all

2   things that are concrete and it's not a statement like don't

3   violate the Fourth Amendment. I mean, I could order those

4   things, if the proof merited it.

11:59AM 5      **MR. RUSS:** I definitely think that you could order those

6   things. And I hesitate to say this but I think some of that

7   relief, we'd probably stipulate to.

8      **THE COURT:** I agree. And I raise that because those are

9   kind of things that -- that's why I asked Ms. Wilner if those

12:00PM 10   two components, how much would be left of injunctive relief

11   and she had, you know, good answers but, yes, that is what

12   happens in some of these cases, without an admission of

13   liability, this isn't going to happen and that's not going to

14   happen.

12:00PM 15      **MR. RUSS:** Right. So --

16      **THE COURT:** That's kind of beyond what we have to do for

17   Class Certification.

18      **MR. RUSS:** That's all right, your Honor. It's, it's

19   more fun than talking to a wall, so no worry.

12:00PM 20      Other things about the injunctive relief Traffic

21   Enforcement Class. I told you the practice has stopped but

22   what happens if you enter an injunction and it's violated,

23   does the Court have to enforce everything, does the Court

24   have to address every claimed violation of the injunction?

12:00PM 25   Does the Court have to involve itself in the operations of

70

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

12:01PM   1    the Buffalo Police Department?

          2        I'm not sure that it's something that the Court would

          3    want to do, let alone be equipped to do and a concrete

          4    specific injunction about one practice, you know, that's

12:01PM   5    easily monitored but this kind of nebulous amorphous concept

          6    of a plan, practice, I don't know how the Court deals with

          7    that and I don't know that the Court wants to deal with that.

          8        You asked some questions and there was some discussion

          9    of the plaintiffs' expert report, Gennaco Report.  And what I

12:01PM   10   wanted to add to the discussion, your Honor, is that that 120

          11   something page report talks about ideal practices and best

          12   practices and what certain police departments do and should

          13   do and what the Buffalo Police Department does and should do.

          14       And I would just say, your Honor, that I don't think it

12:02PM   15   has any relevance to this motion right now, first of all.

          16   And, second of all, if it does, the fact that the Buffalo

          17   Police Department may not use best practices does not equal

          18   constitutional violations.  So, that they could improve their

          19   practices doesn't give rise for some kind of finding of

12:02PM   20   discrimination and result in an injunction.

          21       **THE COURT:**  I think the answer was -- and it was a good

          22   one -- is that all of the Class members could use the same

          23   expert and whether it would be admissible in this particular

          24   case is a whole different issue but they wouldn't need to go

12:03PM   25   out and get their own experts because they would use this

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

12:03PM 1 report.

2     **MR. RUSS:** I'm not going to concede that, your Honor.

3 But let's say that, that was the process. Don't you have to

4 evaluate whether the challenged practices went into the

12:03PM 5 setting up of every checkpoint and each officer's disposition

6 on a certain night in a certain neighborhood, you know, went

7 into the kind of was not a best practices thing, was not a

8 discriminatory? I mean, I understand that the report is

9 probably helpful to kind of tell the background and to show

12:03PM 10 that the police department does have problems. But I don't

11 know how it translates into each individual Class member's

12 claim.

13     **THE COURT:** I agree.

14     **MR. RUSS:** We spent a lot of time talking about the

12:04PM 15 Checkpoint Class and the Tinted Windows Class and the point I

16 want to make, your Honor, and the point I would have tried to

17 make if I had given you a straightforward formal argument is

18 that while there may be some common questions, there are

19 unlimited individual questions on both sides, both on the

12:04PM 20 liability side and on the damages side. And the damages you

21 spent a lot of time talking about and I don't need to go

22 through all of that, I don't think.

23     But just the point that I made about, you know, a

24 violation of the Fourth Amendment, how did that affect that

12:05PM 25 individual person? What happened to that person because of

72

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

12:05PM  1    it?  That's an individual -- that's an individual analysis.

2    There's no way you can do that on a common basis.

3         **THE COURT:**  Well, they can, they can do that.  They can

4    say for each Fourth Amendment violation, we are seeking a

12:05PM  5    allegedly nominal sum of damages of $100 per Class member.

6    They can do that.  That's one way.  And then they say, you

7    know, don't worry about that because we're going to stop our

8    damages after that secondary detention.  So, if you were

9    going to base it on the first detention which we're saying is

12:05PM 10    unconstitutional, the secondary detention unconstitutional,

11    we weren't going to take up whether you get arrested, you get

12    strip searched, whether you're detained for three hours

13    later, whether there's probable cause, whether there's no

14    probable cause, that's all not going to be part of our case.

12:06PM 15    And they can carve out their case that way and arguably they

16    probably would make their case easier if they carved out

17    individual damages, period, that way.  But that's why I

18    started with they're the masters of their complaint and they

19    can decide how to plead it.

12:06PM 20         **MR. RUSS:**  That's not how it's pled.

21         **THE COURT:**  I agree.

22         **MR. RUSS:**  And as the defendant, I have to address how

23    it's pled.  And the pleadings seek those kind of damages

24    which are individual damages.

12:06PM 25         Maybe some aspect of it could be the dairy farmer

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

12:06PM 1   formula like we were stopped once, then we were stopped

2   twice, you know, that's a hundred dollars.  But if you start

3   getting into how long were you stopped the first time, how

4   long were you stopped the second time, what happened, that's

12:07PM 5   just all individual.  And I, I don't know how we do that with

6   the thousands and thousands and thousands of plaintiffs here

7   considered.

8       **THE COURT:**  It's after noon now.  And, like I said,

9   we're here all day and we tried to get an earlier flight

12:07PM 10  based on your time period.  We didn't get one so we can go

11  all day.

12      Would you like to break for lunch and come back because

13  we're going to have a little bit of time for rebuttal so it

14  seems like it might not be a bad idea.

12:07PM 15      **MR. RUSS:**  I want to make the court happy.  So if that

16  is what makes the court happy, I'm happy.

17      **THE COURT:**  We do have court staff.  I could continue

18  but I want to give them a break, as well.  Why don't we come

19  back at five after 1 for resumption, and does that work for

12:07PM 20  everybody?

21      **MR. RUSS:**  Yes, your Honor, thank you.

22      (**WHEREUPON,** luncheon recess taken.)

23      (Open court:)

24      **THE COURT:**  We are back on the record in *Black Love*

1:14PM 25  *Resists in the Rust, et al. v. the City of Buffalo.*

74

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:14PM 1    Reminder to the people on YouTube, that we do not allow

2    any recording.

3    And we are in the defendant's argument.

4    And you may resume.

1:15PM 5    **MR. RUSS:**  Thank you, your Honor.

6    And for the people out there in hyperspace, I'm Hugh

7    Russ representing the defendants.

8    And I'm close to finishing, your Honor.  I did want to

9    make a few more points.  Before I do, I, again, want to thank

1:15PM 10   the Court for coming to Buffalo and bringing its staff to

11   Buffalo.  This really has been helpful, so thank you.

12   I wanted to say a couple more things about damages.

13   Counsel made the point that the plaintiffs' Monell claims

14   could be a general question for the entire Class or Classes.

1:15PM 15   And I think that's probably right whether the City had a

16   policy, custom or procedure that applied, I think is a

17   general question.  But whether it applied in each

18   circumstance and that's -- you know, the police officers at

19   issue were acting out of some general policy or procedure --

1:16PM 20   is an individual question that has to be addressed at every

21   single stop.

22   The Court asked some questions and counsel made some

23   argument concerning whether there was financial motive to

24   issue the tickets and while there have been documents and

1:16PM 25   other evidence seeming to suggest that the City was trying to

75

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:16PM    1    raise revenue through the issuance of more and more traffic

2    tickets, all of the individual officers who testified during

3    depositions said that that was not their motive, that

4    overtime wasn't their motive, that the number of tickets

1:17PM    5    wasn't their motive, that they were just doing their job.

6    So --

7        **THE COURT:** But, but that's -- self-serving testimony

8    can be admissible. There are documents that talk about

9    overtime incentives and the desire to have maximum

1:17PM   10    enforcement of the traffic laws and you need to be issuing

11    those tickets and I think one of the phrases "we're looking

12    for production". So, that will be a question of fact.

13        My concern was much more specific. It's one thing to

14    say in the checkpoints, these officers were allegedly

1:18PM   15    motivated by amping up their production to get overtime.

16    It's another thing to say in the entire City of Buffalo, all

17    the time for every reason, these people were stopping

18    individuals and violating their rights in order to garner

19    more overtime and rise up in their career. And the

1:18PM   20    conversation was about, well, almost every police department

21    probably recognizes productivity and, you know, I mean, how

22    would that be a claim that would be proveable and that's more

23    of a question for a motion to dismiss but that was what I was

24    concerned about. Any thoughts about that?

1:18PM   25        **MR. RUSS:** As usual, your Honor, you have phrased it

76

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:18PM 1 better than I have.  But I think that's the exact concern.

2 And the attendant concern is -- related concern is

3 complimented by the point that the City changed its system of

4 traffic tickets from a state-based system to a City-based

1:19PM 5 system so that it could keep the revenues.  Every City, town,

6 village in New York does that or did that and the City was

7 actually very late in doing that.  So, yes, it is evidence of

8 something but I don't think it's evidence of the Fourth

9 Amendment violation that plaintiffs believe.

1:19PM 10     I was listening to counsel's argument about damages and

11 what damages they were seeking and what damages they weren't

12 seeking and at one point I heard, oh, only general damages

13 but then I heard also individual damages and I don't think

14 they know, first of all, but, second of all, as soon as you

1:19PM 15 go into individual damages, you have individual questions

16 that make a Class inappropriate.

17     I wanted to call the Court's attention to one case in

18 our brief:  *Townes*.  And that stands for the proposition that

19 even if there is an unConstitutional stop, if the discipline

1:20PM 20 meted out, that is the tickets, are valid and reasonable and

21 lawful, then you can't recover damages for the ticket and the

22 attending damages, you can only recover for the

23 unconstitutional stop and so that's going to have to be

24 applied to every, every individual claim and, again, that

1:20PM 25 frustrates the Class treatment.

77

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:21PM 1     **THE COURT:** Do you think, though, that that shifts if

2     the claim is limited to any time there's more than two

3     tickets or two tickets and more for tinted windows? Because

4     I think the argument is, you never need to do more than one.

1:21PM 5     It's unlikely that a driver has a tinted windshield and

6     nothing else. So, it's likely the whole car's tinted because

7     that's the whole purpose. So you can kind of assume that one

8     ticket would serve the whole car. And then you don't really

9     have to get into whether it should have been issued or it

1:21PM 10    shouldn't have been issued because you're talking about the

11    number as opposed to whether it was valid.

12    **MR. RUSS:** I understand that concern, your Honor. I

13    would call the Court's attention to another case in our

14    brief. It's *Torres*. And that involved, rather than moving

1:22PM 15    violations, that involved parking violations. And the Court

16    basically held that multiple parking violations within a

17    relatively short time period were permissible and, you know,

18    I think it's the same, same idea here. Is issuing multiple

19    tinted windows the best judgment? Or the best use of police

1:22PM 20    time? Probably not. But it is permissible and --

21    **THE COURT:** Well, it's certainly permissible but I think

22    that their argument is different than that. They're saying

23    the stop was unlawful, unconstitutional. The secondary

24    inspection: Unconstitutional, unlawful. And anything that

1:22PM 25    flows from it is the fruit of the poisonous tree but we're

78

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:23PM  1   going to limit our claims to two tickets for tinting because

2   one ticket would suffice and we can show that black and

3   Latino drivers caught the two tickets and more and the white

4   drivers were, you know, given one ticket.  So even if that

1:23PM  5   was permissible, that would still be discriminatory and it

6   wouldn't be okay just because you can do it.

7        I mean, there's lots of things you can do, like if you

8   strip search every female who goes to a jail, even if you

9   have the right to strip search visitors to the jail but

1:23PM  10  you're singling out the females, you could still have a

11  constitutional claim.  So I think that they're narrowing that

12  down fairly finally in terms of trying to target what is

13  unconstitutional and what flows from it.

14       Why isn't that -- if the first stop and the second stop

1:24PM  15  are unConstitutional for sake of argument, why wouldn't it be

16  the fruit of the poisonous tree?

17       **MR. RUSS:**  First of all, your Honor, the *Townes* case

18  that I mentioned talks in that language.  So I would

19  encourage the Court to read it.  And the Court says no,

1:24PM  20  that's not the fruit of the poisonous tree.

21       Secondly, your Honor --

22       **THE COURT:**  So I read *Townes* but remind me:  They found

23  no Fourth Amendment violation or they found a Fourth

24  Amendment violation and they said you can't recover for the

1:24PM  25  consequences of it.  You can recover for the violation but if

79

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:24PM 1    the ticket that results or the arrest that results is valid,

2           no recovery for that.  Isn't that how it came out?

3               **MR. RUSS:**  That's exactly how it came out.

4               **THE COURT:**  Okay.

1:24PM 5        **MR. RUSS:**  The second thing I would say, your Honor, is

6           that in the example you mentioned of the strip searching of

7           women, that's a situation -- or I hear that's a situation

8           where every single woman is stopped and strip searched, that

9           there's no discretion involved, some get passed through the

1:25PM 10   system without it, others don't.  And I think the tinted

11          windows situation, it just would require more individual

12          questions.  Why were you -- why did you issue four or why did

13          you issue three or why did you issue two?  And the

14          circumstances of that depend on each situation.  And, again,

1:25PM 15   I don't know how you do that on a Class basis.

16              **THE COURT:**  I think you could possibly do it on the

17          checkpoints.  I'm not persuaded you could do it elsewhere.

18              **MR. RUSS:**  I would think that -- and I'm sorry I keep

19          referring back to your dairy farmer Class action idea -- but

1:26PM 20   if, if the Checkpoint Class were limited to, you know, some

21          similar question, were you stopped or not and then the

22          damages from that might be, you know, $25 per tinted window

23          or something like that, some, some formula, then I could see

24          a Class limited like that.  But to have to evaluate

1:26PM 25   everything that happens and that happened and why it happened

80

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:26PM    1    and who did what and how people felt, that's just not right.

2    **THE COURT:** Well, they're -- plaintiffs are telling the

3    Court: We're not going to do that. We're going to stop at

4    that secondary stop and so we're going to prove the first

1:27PM    5    stop was unconstitutional. The second detention unreasonably

6    prolonged a unconstitutional stop and that's it. We're not

7    going to get into whether the arrest was good or not. We're

8    not going to be seeking to recover for that. Because I asked

9    the same question you're asking: Isn't it a different injury

1:27PM    10    if you're arrested without probable cause versus there's an

11    arrest warrant, it's valid and that's why you're taken into

12    custody and they said we're not going to be doing any of

13    that.

14    So if they limit it that way to the first and the second

1:27PM    15    stop, why wouldn't that be a common question that wouldn't

16    require any kind of individualized inquiry? Because

17    according to them -- and I think there's a concession --

18    everybody's stopped. Everybody that goes through the

19    checkpoint is stopped. It's not like a DUI checkpoint where

1:27PM    20    there's a preexisting we're going to stop every fourth car.

21    It's everybody.

22    **MR. RUSS:** Just on that, your Honor, I think some people

23    were waved through so I don't think everyone was stopped.

24    And when you were asking questions about, well, how do you

1:28PM    25    identify people that didn't get the tinted windows -- that

81

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:28PM    1    were stopped but didn't get the tinted windows?

          2        **THE COURT:** So you think that there was no -- that some

          3    people didn't even have to brake, they were just waved

          4    through.

1:28PM    5        **MR. RUSS:** Well, they had to slow down and come through

          6    slowly but, yes, certainly some were just waved through

          7    (indicating). I had a brilliant answer for you and I lost

          8    it. I apologize.

          9        So, that's a long way of saying, your Honor, that on the

1:28PM   10    damages Classes, there are just way too many individual

         11    questions. There may be some common questions but the

         12    predominance is not common questions. The predominance is

         13    decidedly individual questions.

         14        I wanted to just mention a couple more things. Counsel

1:29PM   15    mentioned something like only 1 percent of the cases are

         16    seeking individual damages and that the, that's the tail

         17    wagging the dog. They still require work and, you know, if

         18    they're thousands and thousands and thousands of people, that

         19    means that thousands and thousands and thousands of discovery

1:29PM   20    demands, maybe depositions. So, just because it may be a

         21    minor part of the damages claimed, you know, does not

         22    eliminate the work involved in getting this case ready.

         23        I know the Court has asked good questions, frankly, and

         24    I've done my best to answer them but if there's anything else

1:30PM   25    that you need at this point, I'm happy to try.

82

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:30PM    1        **THE COURT:**  Nope, thank you.  You did a nice job.

          2        **MR. RUSS:**  Thank you, your Honor.

          3        **THE COURT:**  Any rebuttal argument?

          4        **MR. WILNER:**  Yes, your Honor.  Thank you.

1:30PM    5        So I'd like to start with clarifying some of the points

          6    that were raised just in this last discussion and then I have

          7    a few more points I'd like to address after that that go back

          8    to the conversation that was happening before the break.

          9        So -- and I'll start with the applicability of the

1:31PM   10    *Townes* case which you were just discussing.  *Townes* does not

         11    create a need for individual determinations in this case.

         12    *Townes* is a Fourth Amendment case and it applies only to

         13    Fourth Amendment violations and as your Honor observed and

         14    I'm just making very clear, we are not seeking damages for

1:31PM   15    tickets and arrests.  We're really not seeking damages for

         16    arrests at all but tickets under the Fourth Amendment.

         17        *Townes* does not apply to the Equal Protection Clause and

         18    we know that has to be true because the Supreme Court has

         19    held that racial discrimination is actionable regardless of

1:32PM   20    whether the stop is supported by probable cause.

         21        And, lastly, just in terms of the facts of *Townes*,

         22    *Townes* held that un -- that damages for unlawful detention

         23    are available under the Fourth Amendment.  In that particular

         24    case, Mr. Townes didn't seek damages for unlawful detention.

1:32PM   25    All of the damages that he was seeking were for the

83

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:32PM    1    imprisonment that happened after he was charged and then he

2    was tried, he was in jail for a long time.  The conviction

3    was eventually reversed because the -- I think there was a

4    bad stop and search at the beginning of it.  So the Court

1:32PM    5    held that there was an intervening causation factor that

6    prevented him from being able to recover for those damages

7    that occurred after the prosecution and punishment for those

8    charges.  But the Court absolutely held that damages would be

9    available for the unlawful detention prior to the intervening

1:33PM   10    act of the prosecutor and the judge.

11        And that's what we're seeking in this case:  That

12    unlawful detention window.  So there is no need to get into

13    individualized questions of probable cause for that.

14        The other case that counsel just brought up, the *Torres*

1:33PM   15    case, that was a case about procedural due process violations

16    with parking tickets.  And we haven't raised a procedural due

17    process claim in this case.  *Torres* does not speak to whether

18    multiple ticketing can violate the Equal Protection Clause

19    and, clearly, if multiple ticketing is motivated by racial

1:34PM   20    animus, it can violate the Equal Protection Clause.

21        I think this takes me into the issue of the Tinted

22    Windows Class and your Honor had expressed some doubt about

23    whether perhaps there was sufficient commonality or whether

24    it would be necessary to look into officer level motivations

1:34PM   25    for the tint -- for the Equal Protection Claims.  And, again,

84

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:34PM 1    our primary claim for Class purposes is that the

2    Commissioners who were setting the policy were acting with a

3    racial motivation.  And that that setting of policy allowing

4    the discriminatory tinted windows ticketing to continue when

1:35PM 5    they knew all about the practice, allowing it to go forward,

6    that that harmed our Class members, and our Class members can

7    recover for that harm.

8        And it's not important to decide for that, for that

9    issue whether or not, in addition, there was a separate and

1:35PM 10   additional violation of the Equal Protection Clause by the

11   officer who issued the ticket.  If a racially discriminatory

12   policy is harming all members of the Class, then all members

13   of the Class are entitled to recover for that harm.

14       **THE COURT:**  But the proof of the harm, so the evidence

1:35PM 15   that's going to answer that, as the *Wal-Mart* case talks about

16   evidence that's going to answer questions, where is that

17   evidence going to come from and how is it going to be kind of

18   processed on a Class certification basis?  So, never mind the

19   checkpoints because you are not confining it to the

1:36PM 20   checkpoints, where is that common proof coming from?

21       **MR. WILNER:**  Yeah.  Well, *Arlington Heights* sets out a

22   mosaic of factors that are used to decide discriminatory

23   intent.  A really important aspect of the Arlington Heights

24   standard is statistical disparities so that's one piece of

1:36PM 25   evidence that we're going to be relying on and the

85

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:36PM   1   statistical disparities in terms of multiple tinted windows
         2   tickets are really stark.  The practices were ubiquitous so
         3   they were practices that were known to everybody in the
         4   Buffalo Police Department and the Commissioners all testified
1:36PM   5   that they knew about them.  There is other evidence that we
         6   plan to introduce under Arlington Heights that goes to racial
         7   animus within the Buffalo Police Department, the historical
         8   context, all of those factors.  So this is common evidence
         9   that will get to the question of whether there was a
1:37PM  10   discriminatory intent on behalf of the Monell policymaker.
        11   And if the jury agrees with us that there was such an intent,
        12   then the City is going to be liable for the harm that flowed
        13   from the discriminatory policy.
        14       **THE COURT:**  Okay.
1:37PM  15       **MR. WILNER:**  I wanted to also briefly address the issue
        16   about being waved through checkpoints and want to state
        17   unequivocally that that first passing through a checkpoint is
        18   a seizure for Fourth Amendment purposes.  I don't think
        19   there's any "waved-through" at the checkpoints because
1:38PM  20   everybody who was waved through was still subject to a visual
        21   inspection for details that could be observed at common view
        22   that wouldn't be observable if they weren't slowed down to
        23   either a stop or an extremely slow roll.  As well, none of
        24   the Class members, none of the people passing through the
1:38PM  25   checkpoints being subject to that initial inspection were

86

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:38PM  1  free to leave.  In fact, the policy specifically required

2  that police should chase down and stop anybody who seemed

3  like they were trying to evade a checkpoint.  So it's very

4  clear that even that first passing through the checkpoint was

1:38PM  5  a seizure for Fourth Amendment purposes.

6      **THE COURT:**  So the secondary checkpoint, not an issue.

7  Are there cases that say wave-through is a seizure?

8      **MR. WILNER:**  I would have to look and see if there's

9  specific cases, your Honor, but the general Fourth Amendment

1:39PM  10  standard for a seizure is going to turn on whether the person

11  would been free to leave the police encounter and there --

12  people were not free to leave.  They absolutely were subject

13  to that stop and that was, it was a stop that was made

14  entirely without any kind of individualized suspicion.  It

1:39PM  15  was dragnet policing in black and Latino communities.

16      But if that's a point that would be helpful to have more

17  commentary on it, we can look and see if there are cases that

18  specifically look at that first pass and provide it after the

19  argument.

1:39PM  20      **THE COURT:**  Well, I'm not aware of any case that says a

21  wave-through is a stop.  But I'm also not aware of anything

22  that says if you have to go through the checkpoint to get to

23  your home or to get into a neighborhood or go to the grocery

24  store and instead of coming to a full stop, you're allowed to

1:40PM  25  slowly roll through it, that's not a seizure because we want

87

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:40PM  1    those brakes on, that seems kind of a crazy standard, so.

2        **MR. WILNER:**  Okay.  I'll leave it there, your Honor.

3        I'd like to address some of the points regarding damages

4    and I don't think that we've talked a lot about how general

1:40PM  5    damages would be determined.  I'm not sure if that's a

6    question that the Court may have concerns about.  But we've

7    cited a number of cases in our materials in which general

8    damages were awarded in Class Actions.  The jury has

9    determined the amount of the general damages but it is

1:40PM  10   essentially a trial by formula.

11       So how we would see this working, for example, for the

12   unlawful detentions is that the jury would determine the

13   dollar value of the length of time of the detention and then

14   that formula would be applied to every Class member who

1:41PM  15   passes through the checkpoint.  And there really isn't a lot

16   of authority or examples out there to apply general damages

17   to an Equal Protection violation.  But the principle is the

18   same:  That it would be up to the jury to determine uniform

19   amount to apply that is tied to the inherent harms of the

1:41PM  20   constitutional violation and that is the amount that every

21   Class member would get.

22       **THE COURT:**  So I think our focus was not so much on what

23   the jury would do, although that's a good point, because the

24   jury's going to do what you ask it to do or the Court asks it

1:41PM  25   to do.  And at this point, from plaintiffs' standpoint, there

88

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:42PM 1  isn't any kind of formula, or at least I didn't see one

2  proposed, of this is how we're going to do it.  And that's

3  when I asked, you know, pragmatically what are you going to

4  be seeking and how would that happen and what would it look

1:42PM 5  like?  And I suggested to opposing counsel you could say $100

6  for every stop.  You're suggesting you would potentially tie

7  some monetary amount to the duration of the stop.

8      **MR. WILNER:**  Correct.  And we did in our opening brief

9  in the section of the brief that discusses manageability,

1:42PM 10 there is some discussion of how -- and actually I believe we

11 covered it in our reply brief, as well.  So we have offered

12 some examples of how courts have administered general damages

13 in Class actions in other cases.  The question of individual

14 damages, again, we believe that the primary individual

1:43PM 15 damages in this case are the economic harms that are already

16 known and stored in City records and where those damages are

17 very easily administered.

18     **THE COURT:**  But this is where I really think the

19 defendants have some traction.  You could say the tip of

1:43PM 20 iceberg.  You can say it's a small fraction of what we're

21 doing.  But in terms of court time and the need for

22 evidentiary hearings and whether it fits into Rule 23 and is

23 going to be effective, that's where it doesn't matter if

24 it's, you know, a request for $25.  If we're going to have a

1:44PM 25 jury trial on it, that's going to be where it breaks down.

89

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:44PM    1      So that's the concern is not that it's just a small

2    fragment of what you're requesting, it's the time constraints

3    in that fragment and whether it makes sense if we, I mean,

4    what are we going to have an evidentiary hearing for 6,000,

1:44PM    5    10,000 people?  I mean, that would be unmanageable.

6    **MR. WILNER:**  I agree that that could potentially be

7    unmanageable but that's not a reason to deny Class

8    Certification now.  So, for starters, if we look at the --

9    **THE COURT:**  But their point is -- and I agree you've got

1:44PM    10    the better point -- their point is that takes predominance

11    out.  So if you're talking about 10,000 evidentiary hearings

12    on individual damages and I look at the common, you know, the

13    commonality and the predominance and what can I get resolved

14    as a Class, their argument is this pie is way bigger and so

1:45PM    15    this isn't a Class Action suit.  You're not going to be able

16    to achieve much by proceeding as a Class.

17      I agree with you that courts often do it this way

18    anyways because at least it's easier to manage some parts of

19    the case but that's the concern.

1:45PM    20    **MR. WILNER:**  Yeah.  And I, I absolutely understand the

21    concern.  I mean -- the *Betances* case I think we just

22    submitted in a supplemental briefing, I think the Court in

23    that case was very thoughtful about the different kinds of

24    damages and how they were handled.  The Court in that case

1:45PM    25    absolutely said that it was always appropriate to certify the

90

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:45PM  1   Class at least for the liability phase and *In re Nassau*
        2   *County Strip Search Cases* says the same thing because in
        3   liability, all of the issues are common.  So at least for
        4   liability Class certification, it's definitely appropriate.

1:46PM  5       In *Betances*, the Court then went on to also look at how
        6   it could administer at least those parts of damages that were
        7   common and were general.  I proposed to the Court because
        8   Class certification is flexible and the court always retains
        9   a lot of control over how to manage the proceedings and, for
1:46PM 10   that matter, defendants can move to decertify a Class at any
       11   time.  And in *Betances*, I think they moved four times to
       12   decertify the Class as the Class moved along.

       13       The most efficient thing to do is to certify the Class
       14   based on the overall predominance of the liability and the
1:46PM 15   fact that most damages questions are common, to adjudicate
       16   the common questions which includes liability and the common
       17   damages, and then at that point we'll know a lot more about
       18   whether there even are individual damages claims.  At this
       19   point they don't even know if they will materialize.  But if
1:47PM 20   they do materialize, we'll have a much better idea of how
       21   significant they are, how many people are bringing them on,
       22   and then can decide what to do.  And it may be at that point
       23   that the Class needs to be decertified, if there is an
       24   unmanageable number of individual Classes.

1:47PM 25       But if you're looking at this from a superiority

91

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:47PM  1   perspective, those Class members are so much better off

2   having liability determined which would be probably

3   impossible for them to do on their own without us to

4   represent them in that trial, having their general damages

1:47PM  5   determined, having their economic harms determined.  That

6   leaves a small amount for them to handle on their own as

7   opposed to just abandoning them to have no recourse for those

8   claims.

9       That said, I do want to say I can't stand up here today

1:48PM  10  and disclaim those damages because I would need to have

11  conversations with our clients.  But if the Court feels that

12  this issue really would be an impediment to certification, we

13  certainly would like the opportunity to discuss it with our

14  clients and, you know, reconsider the position that's been

1:48PM  15  taken here today.

16      **THE COURT:**  So I'm not an interventionalist judge and

17  don't get involved.  I point out -- like if you discontinue

18  the practice of issuing two tickets for tinted windows some

19  of the injunctive relief goes out the window.  It's nothing

1:48PM  20  you can't see for yourself.  You decide what you want to do.

21  I've expressed my concerns about that portion of the case.

22      **MR. WILNER:**  Okay.  Thank you very much.

23      I'd like to go back to the traffic enforcement Class and

24  answer, I think a few doubts that I heard from the Court on

1:49PM  25  that Class.  And I'd like to stop -- or, actually, start with

92

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:49PM  1    the Class definition.  And this is not a boundless Class.

2    This is a Class comprised of people who have been or will be

3    subjected to traffic stops, traffic tickets and traffic

4    safety vehicle checkpoints.

1:49PM  5        **THE COURT:**  Think about it this way.  I've got to issue

6    a notice -- and you'll be helping me draft it, along with the

7    defendant if I grant Class certification -- who is that

8    notice going to.

9        **MR. WILNER:**  Yeah.  So for the (b)(2) certification,

1:49PM 10    there is no requirement for individualized notice.

11        **THE COURT:**  But still who's it going to?  It's going to

12    be in the newspaper --

13        **MR. WILNER:**  Yes.

14        **THE COURT:**  -- and it's going to say if you are black or

1:50PM 15    Latino and you plan to drive -- and you have driven in

16    Buffalo or you plan to drive in Buffalo, you may be a Class

17    member?

18        **MR. WILNER:**  The way we usually handle notice for (b)(2)

19    Class actions is notice by publication, as well as usually

1:50PM 20    we'll provide notice to places that are likely to have a

21    proof of contact with Class members so that they can provide

22    notice.  So, for example, the Legal Aid Society that's often

23    representing defendants in tickets, legal, other legal

24    services programs, community organizations that are in the

1:50PM 25    community.  So we would provide notice --

93

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:50PM  1    **THE COURT:**  I'm not --

2    **MR. WILNER:**  That --

3    **THE COURT:**  -- so concerned with where.

4    **MR. WILNER:**  Yes.

1:50PM  5    **THE COURT:**  Would it say:  If you're black or Latino --

6    I'm looking at your --

7    **MR. WILNER:**  Yes.

8    **THE COURT:**  -- definition, that's what it would say?

9    **MR. WILNER:**  Yes.  The notice would provide the Class

1:51PM 10   definition as well as to me it makes sense because the (b)(3)

11   Class members would be each entitled to an individual notice

12   of the certification of the damages Classes and so it would

13   make sense to me to also include specific individual notice

14   to them.  They would also be members of the traffic

1:51PM 15   enforcement Class.  So they would -- it's not required under

16   the rules but it would be no extra cost to provide a

17   specific --

18   **THE COURT:**  And would you agree with me that the Class

19   would then include any black or Latino individual who either

1:51PM 20   drives currently or may want to drive in the future in

21   Buffalo?

22   **MR. WILNER:**  No, that would be an overbroad look at the

23   Class definition.  The Class definition is limited to people

24   who are actually subjected to traffic stops, traffic tickets,

1:51PM 25   and traffic safety vehicle checkpoints.

94

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:51PM  1      **THE COURT:**  Or will be.

2      **MR. WILNER:**  The --

3      **THE COURT:**  Or will be.

4      **MR. WILNER:**  Or will be.  But they don't become a member

1:52PM  5  of the Class until they actually experience the traffic

6  enforcement.  It's a little weird but that's the way that

7  courts normally think about it.  So it's in determinant in

8  the sense that the Class contains future members whose

9  identity is not known now but when they become subject to the

1:52PM  10  particular defined activity, they are known.  And a traffic

11  stop, a traffic ticket, these are things that the City of

12  Buffalo has records of.  So there isn't ever really a

13  question about who is and isn't a member of the Class.  And

14  then, furthermore, all the relief is directed at the

1:52PM  15  defendants, it's directing them to change their practices.

16      **THE COURT:**  So if it was retrospected, it's

17  ascertainable.  I don't see how it's ascertainable if we're

18  talking about future conduct.

19      **MR. WILNER:**  Well, again, the question for

1:53PM  20  ascertainability is whether the definition is based on

21  objective factors.  And these are objective factors.

22      **THE COURT:**  Well -- but they can't be speculative.  Like

23  if the objective factor is:  Are you likely to be offended if

24  your car is stopped without reasonable suspicion, I could say

1:53PM  25  that's objective.  But there's no way of you have to get into

95

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:53PM   1    some subjective analysis:  Is the person going to be

         2    offended?  And when you get into will be subjected to traffic

         3    stops, traffic tickets and traffic safety, you're not talking

         4    about any collected data that the City has produced.  You're

1:53PM   5    talking about somebody who says this hasn't happened to me

         6    but it may happen to me in the future and then I'm going to

         7    be part of the Class.  That seems like it would be everybody.

         8    Anybody who was -- unless they're not committed to never

         9    driving.

1:54PM  10        **MR. WILNER:**  I...

        11        My cocounsel reminds me that in *Floyd* and in *Plaintiffs*

        12    *1 through 21 v. county of Suffolk,* very similar Class

        13    definitions were approved and it was -- it is the same issue

        14    of people now and in the future being subjected to certain

1:54PM  15    policing practices.  So --

        16        **THE COURT:**  Did you know what those, what the future

        17    Class, the language of the future Class in those cases was?

        18        **MR. WILNER:**  I can look it up and maybe I can go -- I

        19    mean, I could go on to address other issues while we look it

1:55PM  20    up.

        21        **THE COURT:**  Why don't you do it as a supplemental.

        22        **MR. WILNER:**  Yes.

        23        **THE COURT:**  Because I haven't seen something that broad.

        24        **MR. WILNER:**  Yes, okay, I think that's a good idea.

1:55PM  25    That will give us a chance to gather together some more

96

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:55PM    1    examples for you.

2    Thank you, your Honor.

3    So I wanted to address the relevance of the Gennaco

4    Report for this traffic enforcement class.  And we have a

1:55PM    5    deliberate indifference *Monell* theory in this Class.  That is

6    one of the main things that we are planning to prove.

7    A major part of our deliberate indifference theory is

8    that the City can did not properly handle complaints of

9    racial discrimination in traffic enforcement that it received

1:55PM    10    through its Internal Affairs Division and through other

11    sources.

12    And another important aspect of our deliberate

13    indifference theory is that the City did not properly audit

14    or supervise or train its officers.  The Gennaco Report is

1:56PM    15    not that the Buffalo Police Department didn't use best

16    practices.  It's that the practices of the Buffalo Police

17    Department in all these areas fall below generally accepted

18    standards and that they did so in a way that's likely to

19    cause discrimination to continue in the future.

1:56PM    20    So, the Gennaco testimony is really there as a core

21    underpinning of establishing the *Monell* deliberate

22    indifference that really is at the heart of the prospective

23    claims.  And this kind of evidence is really traditional and

24    well-trodden path to proving deliberate indifference on the

1:57PM    25    part of police officials and police policymakers.  So that

97

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:57PM    1   would be the purpose of the Monell report.  It's not on Class

          2   certification -- or excuse me, Gennaco Report on Class

          3   certification.  It's really to establish the common body of

          4   evidence.

1:57PM    5      But when we get into the trial of this case, it will be

          6   there to show that the City is deliberately indifferent and

          7   that there is an intent to discriminate that rises to the

          8   level of a municipal policy.

          9      **THE COURT:**  And your deliberate indifference is which

1:57PM   10   claim?

         11      **MR. WILNER:**  It's the Equal Protection Claim, deliberate

         12   indifference to ongoing racial discrimination.

         13      Now the opposing counsel had criticized the injunctive

         14   relief we were seeking as not being specific.  But there

1:58PM   15   isn't a requirement under Rule 23 that injunctive relief be

         16   specifically enumerated in the complaint or at the Class

         17   certification stage.

         18      What Rule 23 requires is that we establish -- and this

         19   is Rule 23(b)(2) -- that defendants have acted or refused to

1:58PM   20   act on grounds that generally apply to the Class.  And the

         21   deliberate indifference *Monell* theory, that's our primary

         22   theory for this claim.  That is exactly refusing to act on

         23   grounds that are generally applicable to the Class.

         24      The other piece of the definition is so that final

1:59PM   25   injunctive relief is appropriate with respect to the Class as

98

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1:59PM   1   a whole.  And if the Court finds or the other -- in this

         2   case, it's an injunction so you would be the fact-finder.  If

         3   the Court finds that the City was deliberately indifferent to

         4   ongoing violations of the Equal Protection Clause, then

1:59PM   5   injunctive relief would be appropriate for the Class as a

         6   whole because the remedy that would be applied would be

         7   reforming those policies and practices to prevent the

         8   discrimination from continuing.

         9       Now it's really difficult at this stage to say what all

1:59PM  10   the pieces of the relief are.  Because remedies are usually

        11   handled in a separate proceeding after the liability stage,

        12   assuming liability is established.  And it's often, as I said

        13   before, a collaborative process.  But if it's not a

        14   collaborative process, typically courts will get briefing

2:00PM  15   from both sides on what they think the injunctive relief

        16   should be.  There's often a hearing.  There may be testimony

        17   or evidence that's presented about the different practices

        18   and how they should be performed and the Court would use that

        19   information in order to fashion an injunction.

2:00PM  20       **THE COURT:**  So, let me make sure I have the right

        21   starting point of how we got here.  I thought the plaintiffs'

        22   position is the traffic enforcement Class is about injunctive

        23   relief and you and I had that debate about whether you need a

        24   separate Class for injunctive relief and I was saying I don't

2:00PM  25   think you do and you were saying I think I do.  And that's

99

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

2:00PM    1    why we're getting into "so what are we talking about".

          2    Because if the argument was one of the many things we request

          3    is injunctive relief, that's one thing.  The Court is asked

          4    routinely to do that in cases, civil rights cases.

2:01PM    5        If it's I want you to certify a Class now for only for

          6    injunctive relief, then there are more specific questions

          7    about for what, for whom, who's in the Class, how do we

          8    determine who's in the Class, and that's how we got there.

          9        **MR. WILNER:**  Mm-mm.  Well, I think it may be helpful to

2:01PM   10    address this as well as part of the supplemental brief

         11    briefing.

         12        **THE COURT:**  Okay.

         13        **MR. WILNER:**  Because it really all goes together and

         14    maybe me saying more on this topic isn't going to help now.

2:01PM   15    But I would like to provide more of that underpinning for the

         16    Court about how these cases worked with those.  What we're

         17    asking for is not something that --

         18        **THE COURT:**  But even if it, you know, mirrors, it's

         19    great if three other people do it, it doesn't mean that I do

2:02PM   20    it.  So it really makes much more sense if you tell me how

         21    it's going to work in this case as opposed to telling me,

         22    Judge So-And-So in the Southern District of New York did

         23    this --

         24        **MR. WILNER:**  Well --

2:02PM   25        **THE COURT:**  -- okay?

100

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

2:02PM 1     **MR. WILNER:**  Yes.  We will definitely keep that in mind.

2     This is a Class that is bringing claims primarily under

3  the Equal Protection Clause for ongoing violations of the

4  Equal Protection Clause that go towards racially

2:02PM 5  discriminatory traffic stops, traffic tickets.  And we, if we

6  establish that, that discrimination is ongoing, that the City

7  has been deliberately indifferent to it, then we will have

8  won the liability case and then the remedies would happen

9  afterwards in order to redress that violation of

2:03PM 10  constitutional rights and it's a forward-looking claim.  So

11  our standing is to -- we have to be focused on harms that are

12  happening now and future harms.

13     Again, there are questions about how the injunctive

14  relief, once it is articulated, would be managed over time.

2:03PM 15  Usually --

16     **THE COURT:**  I'm not actually worried about that --

17     **MR. WILNER:**  Okay.

18     **THE COURT:**  -- now.  There's often recourse for doing

19  that.  Sometimes the parties have an obligation to try to

2:03PM 20  work it out themselves.  That's not something that is

21  particularly novel.

22     **MR. WILNER:**  Okay.  In that case, your Honor, I'd like

23  to leave you with these words from *Floyd v. City of New York*.

24     "If the BPD is engaging in a widespread practice of

2:04PM 25  unlawful stops, then an injunction seeking to curb that

101

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

2:04PM | 1 | practice is not a 'judicial intrusion into a social

2 | institution' but a vindication of the Constitution and an

3 | exercise of the courts' most important function:  Protecting

4 | individual rights in the face of the government's

2:04PM | 5 | malfeasance."

6 | **THE COURT:**  Anything further in this matter?

7 | **MR. RUSS:**  No, your Honor.  I would simply again thank

8 | the Court for coming here, and for its musings.  And I would

9 | suggest that as the Court reviews what has happened today and

2:04PM | 10 | the briefs and everything else, and look at the transcript

11 | and look at how we either did address or didn't address the

12 | Court's concerns.  Thank you.

13 | **THE COURT:**  All right.  Well, we love coming to Buffalo.

14 | It's a good food town, nice midwestern charm.  We've been

2:04PM | 15 | here before, as the court reporter knows.  So no harm in us

16 | coming to Buffalo.  I'm going to give you an opportunity to

17 | respond to the plaintiffs' supplemental authority or brief.

18 | So, you know, you'll have 14 days after it comes.  Don't wait

19 | too long to give it to me.  It's not like the decision's

2:05PM | 20 | going to be issued tomorrow but do it in a timely fashion.

21 | Anything else that we can address?

22 | **MR. WILNER:**  No, thank you, your Honor.

23 | **MR. RUSS:**  No, your Honor, thank you.

24 | **THE COURT:**  Thank you.

2:05PM | 25 | (**WHEREUPON,** proceedings adjourned.)

102

BLRR, et al vs. City of Buffalo, et al - 18-CV-719

1

2

3

4                     *          *          *

5              CERTIFICATE OF REPORTER

6

7          In accordance with 28, U.S.C., 753(b), I

8     certify that these original notes are a true and correct

9     record of proceedings in the United States District Court

10    of the Western District of New York before the

11    Honorable Christina Clair Reiss on October 23, 2024.

12

13

14    S/ Diane S. Martens

15    Diane S. Martens, FCRR, RPR
      Official Court Reporter

16

17

18

19

20

21

22

23

24

25

## Addendum B

Issues presented on this appeal include, but are not limited to:

(1)     Whether the District Court erred in certifying the Damages Classes by failing to properly analyze the claims asserted in light of the commonality requirement of Rule 23(a)? Specifically, did the District Court abuse its discretion by analyzing commonality at only a very high level of generality and failing to assess whether Plaintiffs showed that their claims could be realistically resolved by common evidence?

(2)     Did the District Court err in certifying the Damages Classes by failing to properly analyze the claims under the predominance requirement of Rule 23(b)(3)? Can a class be certified, even though it does not meet the predominance requirement, simply because post-trial procedural tailoring could ostensibly alleviate the difficulties managing individualized damages issues?

Both of these issues require that the Court review the District Court's decision for abuse of discretion.